**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL LUNA, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| MARVELL TECHNOLOGY GROUP, LTD., SEHAT SUTARDJA, MICHAEL SASHKIN, and SUKHI NAGESH, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Daniel Luna ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by MARVELL TECHNOLOGY GROUP, LTD. ("Marvell" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Marvell; and (c) review of other publicly available information concerning Marvell.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of Marvell securities between November 20, 2014 and September 10, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Marvell is a fabless semiconductor company, and ships over one billion chips a year. The Company has design centers located in China, Europe, Hong Kong, India, Israel, Japan, Malaysia, Singapore, Taiwan and the U.S.   Marvell's purported expertise in microprocessor architecture and digital signal processing drives multiple platforms including high volume storage solutions, mobile and wireless, networking, consumer and green products.

3.      The Company competes in a crowded (and deteriorating) semiconductor market. The semiconductor market is rife with intellectual property challenges brought by competitors and other intellectual property rights holders, and therefore companies such as Marvell must adequately reserve for the likely chance of litigation, and the incumbent expenses and losses. Unbeknownst to investors, however, Marvell allegedly failed to adequately reserve for this litigation risk. Additionally, the Company failed to maintain adequate controls over its financial

reporting, and allowed for severe misstatements of key accounting metrics to seep into its financial statements.

4.      On September 11, 2015, the Company reported a quarterly loss of $382.4 million for its fiscal second quarter, whereas analysts on average had predicted a quarterly profit of $11.9 million. The Company also announced an internal probe by its Audit Committee into Marvell's key accounting practices including its revenue recognition, litigation reserves, and internal controls. Marvell revealed that it would be unable to timely file its quarterly report due to the fact that its Audit Committee was examining "certain revenue recognition issues in the second quarter of fiscal 2016 and any associated issues with whether senior management's operating style during the period resulted in an open flow of information and communication to set an appropriate tone for an effective control environment." According to the Company, the investigation was focused on the approximately 7-8% of revenue recognized in the second quarter of fiscal 2016 that, based upon the original customer request date, would have been received and earned in the third quarter of fiscal 2016 and is now no longer available for receipt in that quarter.  The Company explained that that increase was indicative of softening demand for certain products, especially the storage end market.

5.      On this news shares of Marvell fell $1.71 per share, over 16%, to close on September 11, 2015 at $8.84 per share, on unusually high volume.

6.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had engaged in inappropriate revenue recognition practices; (2) that the Company's senior management encouraged a closed and ineffective

control environment; (3) that, as a result, the Company's key accounting metrics were misstated; (4) that the Company lacked adequate internal controls at all relevant times; (5) and that, as a result of the foregoing, Defendants' statements about Marvell's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. The Company's shares are also traded within this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff Daniel Luna, as set forth in the accompanying certification, incorporated by reference herein, purchased Marvell common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Marvell is a Bermuda corporation with its principal executive offices located at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda.

14.     Defendant Sehat Sutardja ("Sutardja") was, at all relevant times, Chief Executive Officer ("CEO") of Marvell.

15.     Defendant Michael Rashkin ("Rashkin") was, at all relevant times, Chief Financial Officer ("CFO") of Marvell until May 22, 2015.

16.     Defendant Sukhi Nagesh ("Nagesh") was, at all relevant times, Interim CFO of Marvell after May 22, 2015.

17.     Defendants Sutardja, Rashkin, and Nagesh are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Marvell's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations

which were being made were then materially false and/or misleading.   The Individual

Defendants are liable for the false statements pleaded herein, as those statements were each

"group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period began on November 20, 2014. On that day, Marvell issued a

press release entitled, "Marvell Technology Group Ltd. Reports Third Quarter of Fiscal Year

2015 Financial Results." Therein, the Company, in relevant part, stated:

**Key Third Quarter of Fiscal 2015 Financial Highlights**

- Revenue: Q3 FY 2015, $930 Million
- GAAP Net Income: Q3 FY 2015, $115 Million
- GAAP Diluted EPS: Q3 FY 2015, $0.22
- Non-GAAP Net Income: Q3 FY 2015, $155 Million
- Non-GAAP Diluted EPS: Q3 FY 2015, $0.29
- Free Cash Flow: Q3 FY 2015, $167 Million

**Fourth Quarter of Fiscal 2015 Financial Outlook**

Marvell's financial outlook does not include the potential impact of future share
repurchases, pending litigation matters, business combinations, asset acquisitions
or other investments that may be completed after November 19, 2014.

- Revenue is expected to be in the range of $880 Million to $900 Million.
- GAAP Gross Margin is expected to be in the range of 50.1% +/- 100 bps.
  Non-GAAP Gross Margin is expected to be in the range of 50.5% +/- 100 bps.
- GAAP Operating Expenses are expected to be in the range of $365 Million +/-
  $10 Million. Non-GAAP Operating Expenses to be in the range of $320
  Million +/- $10 Million.
- GAAP Diluted EPS expected to be in the range of $0.16 +/- $0.02. Non-
  GAAP Diluted EPS expected to be in the range of $0.24 +/- $0.02.

**Third Quarter of Fiscal 2015 Summary**

Revenue for the third quarter of fiscal 2015 was $930 million, down approximately 3% from $962 million in the second quarter of fiscal 2015, ended August 2, 2014, and approximately flat from $931 million in the third quarter of fiscal 2014, ended November 2, 2013.

GAAP net income for the third quarter of fiscal 2015 was $115 million, or $0.22 per share (diluted), compared with GAAP net income of $139 million, or $0.27 per share (diluted), for the second quarter of fiscal 2015, and $103 million, or $0.21 per share (diluted), for the third quarter of fiscal 2014.

Non-GAAP net income was $155 million, or $0.29 per share (diluted), for the third quarter of fiscal 2015, compared with non-GAAP net income of $181 million, or $0.34 per share (diluted), for the second quarter of fiscal 2015 and $163 million, or $0.32 per share (diluted), for the third quarter of fiscal 2014.

*** *

GAAP gross margin for the third quarter of fiscal 2015 was 51.1 percent, compared to 50.3 percent for the second quarter of fiscal 2015 and 50.1 percent for the third quarter of fiscal 2014.

Non-GAAP gross margin for the third quarter of fiscal 2015 was 51.0 percent, compared to 50.6 percent for the second quarter of fiscal 2015 and 50.3 percent for the third quarter of fiscal 2014.

*** *

Cash flow from operations for the third quarter of fiscal 2015 was $195 million, compared to the $157 million reported in the second quarter of fiscal 2015 and the $177 million reported in the third quarter of fiscal 2014. Free cash flow for the third quarter of fiscal 2015 was $167 million, compared to the $137 million reported in the second quarter of fiscal 2015 and the $157 million reported in the third quarter of fiscal 2014. Free cash flow as presented above is defined as cash flow from operations, less capital expenditures and purchases of technology licenses reported under investing and financing activities in the consolidated statement of cash flows.

19.    On December 4, 2014, Marvell filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal third quarter.  The Company's Form 10-Q was signed by Defendant Rashkin, and reaffirmed the Company's statements in the press release on November 20, 2014. The Form 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications"), signed by defendants Sutardja and Rashkin, who certified the following:

1. I have reviewed this Quarterly Report on Form 10-K for the period ended November 1, 2014 of Marvell Technology Group, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

> b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

> c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the

registrant's auditors and the audit committee of the registrant's board of directors
(or persons performing the equivalent functions):

> a) All significant deficiencies and material weaknesses in the design or
> operation of internal control over financial reporting which are reasonably
> likely to adversely affect the registrant's ability to record, process,
> summarize and report financial information; and

> b) Any fraud, whether or not material, that involves management or other
> employees who have a significant role in the registrant's internal control
> over financial reporting.

20.     On February 19, 2015, Marvell issued a press release entitled, "Marvell

Technology Group Ltd. Reports Fourth Fiscal Quarter and Fiscal Year 2015 Financial Results."

Therein, the Company, in relevant part, stated:

**Key Fourth Quarter of Fiscal 2015 and Fiscal Year 2015 Financial Highlights**

- Revenue: Q4 FY 2015, $857 Million; FY 2015, $3.7 Billion
- GAAP Net Income: Q4 FY 2015, $82 Million; FY 2015, $435 Million
- GAAP Diluted EPS: Q4 FY 2015, $0.16; FY 2015, $0.84
- Non-GAAP Net Income: Q4 FY 2015, $131 Million; FY 2015, $611 Million
- Non-GAAP Diluted EPS: Q4 FY 2015, $0.25; FY2015, $1.15
- Free Cash Flow: Q4 FY 2015, $135 Million; FY 2015, $650 Million

**First Quarter of Fiscal 2016 Financial Outlook**

Marvell's financial outlook does not include the potential impact of future share
repurchases, pending litigation matters, business combinations, asset acquisitions
or other investments that may be completed after February 18, 2015.

- Revenue is expected to be in the range of $810 Million to $830 Million.
- GAAP Gross Margin is expected to be in the range of 50.1% +/- 100 bps.
  Non-GAAP Gross Margin is expected to be in the range of 50.5% +/- 100 bps.
- GAAP Operating Expenses are expected to be in the range of $360 Million +/-
  $10 Million. Non-GAAP Operating Expenses to be in the range of $320
  Million +/- $10 Million.
- GAAP Diluted EPS expected to be in the range of $0.09 +/- $0.01. Non-
  GAAP Diluted EPS expected to be in the range of $0.18 +/- $0.01.

**Fourth Quarter of Fiscal 2015 and Fiscal Year 2015 Summary**

Revenue for the fourth quarter of fiscal 2015 was $857 million, down approximately 8 percent from $930 million in the third quarter of fiscal 2015, ended November 1, 2014, and down approximately 8 percent from $932 million in the fourth quarter of fiscal 2014, ended February 1, 2014.

For the fiscal year ended January 31, 2015, revenue was $3.7 billion, an increase of 9 percent from revenue of $3.4 billion for the fiscal year ended February 1, 2014.

GAAP net income for the fourth quarter of fiscal 2015 was $82 million, or $0.16 per share (diluted), compared with GAAP net income of $115 million, or $0.22 per share (diluted), for the third quarter of fiscal 2015, and $97 million, or $0.19 per share (diluted), for the fourth quarter of fiscal 2014.

For the fiscal year ended January 31, 2015, GAAP net income was $435 million, or $0.84 per share (diluted), compared with GAAP net income of $315 million, or $0.63 per share (diluted), for the fiscal year ended February 1, 2014.

Non-GAAP net income was $131 million, or $0.25 per share (diluted), for the fourth quarter of fiscal 2015, compared with non-GAAP net income of $155 million, or $0.29 per share (diluted), for the third quarter of fiscal 2015 and $151 million, or $0.29 per share (diluted), for the fourth quarter of fiscal 2014.

For the fiscal year ended January 31, 2015, non-GAAP net income was $611 million, or $1.15 per share (diluted), compared with non-GAAP net income of $530 million, or $1.02 per share (diluted) for the fiscal year ended February 1, 2014.

\*\*\*

Cash flow from operations for the fourth quarter of fiscal 2015 was $155 million, compared to the $195 million reported in the third quarter of fiscal 2015 and the $100 million reported in the fourth quarter of fiscal 2014. Cash flow from operations for fiscal year 2015 was $742 million, compared to $448 million in fiscal year 2014. Free cash flow for the fourth quarter of fiscal 2015 was $135 million, compared to the $167 million reported in the third quarter of fiscal 2015 and the $82 million reported in the fourth quarter of fiscal 2014. Free cash flow for fiscal year 2015 was $650 million, compared to $356 million in fiscal year 2014. Free cash flow as presented above is defined as cash flow from operations, less capital expenditures and purchases of technology licenses reported under investing and financing activities in the consolidated statement of cash flows.

21.    On March 26, 2015, Marvell filed its Annual Report with the SEC on Form 10-K for the 2015 fiscal year ended January 31, 2015.  The Company's Form 10-K was signed by

Defendants Sutardja and Rashkin, and reaffirmed the Company's statements previously announced on February 19, 2015.  The Form 10-K contained certifications pursuant to SOX, signed by Defendants Sutardja and Rashkin and was substantially similar to the certification described in ¶19, *supra*.

22.     On May 21, 2015 Marvell issued a press release entitled, "Marvell Technology Group Ltd. Reports First Quarter of Fiscal 2016 Financial Results."  Therein, the Company, in relevant part, stated:

**First Quarter of Fiscal 2016 Financial Highlights**

- Revenue: Q1 FY 2016, $724 Million
- GAAP Net Income: Q1 FY 2016, $14 Million
- GAAP Diluted EPS: Q1 FY 2016, $0.03
- Non-GAAP Net Income: Q1 FY 2016, $71 Million
- Non-GAAP Diluted EPS: Q1 FY 2016, $0.13
- Free Cash Flow: Q1 FY 2016, $44 Million

**Second Quarter of Fiscal 2016 Financial Outlook**

Marvell's financial outlook does not include the potential impact of future share repurchases, pending litigation matters, business combinations, asset acquisitions or other investments that may be completed after May 20, 2015.

- Revenue is expected to be in the range of $710 Million to $740 Million.
- GAAP Gross Margin is expected to be in the range of 49.5% +/- 100 bps.  Non-GAAP Gross Margin is expected to be in the range of 50.0% +/- 100 bps.
- GAAP Operating Expenses are expected to be in the range of $350 Million +/- $10 Million.  Non-GAAP Operating Expenses to be in the range of $305 Million +/- $10 Million.
- GAAP Diluted EPS expected to be in the range of $0.02 +/- $0.01.  Non-GAAP Diluted EPS expected to be in the range of $0.11 +/- $0.01.

**First Quarter of Fiscal 2016**

Revenue for the first quarter of fiscal 2016 was $724 million, down approximately 16 percent from $857 million in the fourth quarter of fiscal 2015, ended January 31, 2015, and down approximately 24 percent from $958 million in the first quarter of fiscal 2015, ended May 3, 2014.

GAAP net income for the first quarter of fiscal 2016 was $14 million, or $0.03 per share (diluted), compared with GAAP net income of $82 million, or $0.16 per share (diluted), for the fourth quarter of fiscal 2015, and $99 million, or $0.19 per share (diluted), for the first quarter of fiscal 2015.

Non-GAAP net income was $71 million, or $0.13 per share (diluted), for the first quarter of fiscal 2016, compared with non-GAAP net income of $131 million, or $0.25 per share (diluted), for the fourth quarter of fiscal 2015 and $144 million, or $0.27 per share (diluted), for the first quarter of fiscal 2015.

*** 

Cash flow from operations for the first quarter of fiscal 2016 was $59 million, compared to the $142 million reported in the fourth quarter of fiscal 2015 and the $235 million reported in the first quarter of fiscal 2015.  Free cash flow for the first quarter of fiscal 2016 was $44 million, compared to the $121 million reported in the fourth quarter of fiscal 2015 and the $211 million reported in the first quarter of fiscal 2015.  Free cash flow as presented above is defined as cash flow from operations, less capital expenditures and purchases of technology licenses reported under investing and financing activities in the consolidated statement of cash flows.

23.     On June 4, 2015, Marvell filed its Quarterly Report with the SEC on Form 10-Q for the 2016 fiscal first quarter ended May 2, 2015.  The Company's Form 10-Q was signed by Defendant Nagesh, and reaffirmed the Company's statements previously announced on May 21, 2015.  The Form 10-Q contained certifications pursuant to SOX, signed by Defendants Sutardja and Nagesh, and was substantially similar to the certification described in ¶19, *supra*.

24.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had engaged in inappropriate revenue recognition practices; (2) that the Company's senior management encouraged a closed and ineffective control environment; (3) that, as a result, the Company's key accounting metrics were misstated; (4) that the Company lacked adequate internal controls at all relevant times; (5) and that, as a

result of the foregoing, Defendants' statements about Marvell's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### <u>Disclosures at the End of the Class Period</u>

25.     On September 11, 2015, Marvell issued a press release entitled, "Marvell Technology Group Ltd. Reports Preliminary Second Quarter of Fiscal 2016 Financial Results." Therein, the Company reported a quarterly loss of $382.4 million for its fiscal second quarter, whereas analysts on average had predicted a quarterly profit of $11.9 million. The Company also disclosed it would be unable to timely file its quarterly report due to an internal probe by its Audit Committee into Marvell's accounting practices and internal controls. With respect to the internal probe, the Company, in relevant part, stated:

> 'The Company also announced that the Audit Committee of the Company's Board of Directors is conducting an independent investigation of certain accounting and internal control matters in the second quarter of fiscal 2016. Senior management has cooperated fully with the Audit Committee's investigation, and is fully committed to supporting the Audit Committee in this process.
>
> The investigation consists of a review of certain revenue recognition issues in the second quarter of fiscal 2016 and any associated issues with whether senior management's operating style during the period resulted in an open flow of information and communication to set an appropriate tone for an effective control environment. More specifically, the investigation has focused on the approximately 7 to 8 percent of revenue recognized in the second quarter of fiscal 2016 that, based upon the original customer request date, would have been received and earned in the third quarter of fiscal 2016 and is now no longer available for receipt in that quarter. Such percentage represents an increase over the prior four quarters and is indicative of softening demand for certain of the Company's products. This was particularly the case in the storage end market where, as a result of a weaker global economy and a slow-down in the PC market, the Company saw weaker than expected demand for HDD products as the overall total available market declined. The Audit Committee's investigation to date has revealed no material issues regarding the Company's 2016 second quarter financial results, and the Company believes the investigation will have no material impact on its previously issued financial statements.
>
> The Audit Committee is also reviewing certain aspects of the Company's internal control over financial reporting, including controls for the establishment of reserves for litigation and whether senior management's operating style resulted

in an open flow of information and communication to set an appropriate tone for an effective control environment. The Company's review of such internal controls is ongoing and may ultimately affect management's conclusion of the effectiveness of internal control over financial reporting as of the end of the second quarter of fiscal 2016. For these reasons the Company has experienced a delay in the completion of its financial statements, Management's Discussion and Analysis of Financial Condition and Results of Operations and other related components of the Quarterly Report.

The Audit Committee and Company management are also discussing potential enhancements to the Company's internal controls and remedial actions to address the items discussed above and the adequacy of financial reporting resources. As a result, the Company is not providing any guidance as to the expected results for the third quarter of fiscal 2016 at this time.

At the conclusion of the Audit Committee's investigation, Marvell will announce the scheduling of a conference call to discuss full financial results for the second fiscal quarter of 2016.

26.     On this news shares of Marvell fell $1.71 per share, over 16%, to close on September 11, 2015 at $8.84 per share, on unusually high volume.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Marvell's securities between November 20, 2014 and September 10, 2015, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Marvell's securities were actively traded on the Nasdaq Stock Market (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff

believes that there are hundreds or thousands of members in the proposed Class. Millions of Marvell shares were traded publicly during the Class Period on the NASDAQ. As of May 28, 2015, Marvell had 517.6 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Marvell or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Marvell; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

33.     The market for Marvell's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Marvell's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Marvell's securities relying upon the integrity of the market price of the Company's securities and market information relating to Marvell, and have been damaged thereby.

34.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Marvell's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Marvell's business, operations, and prospects as alleged herein.

35.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about Marvell's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

36.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

37.     During the Class Period, Plaintiff and the Class purchased Marvell's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

38.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Marvell, his/her control over, and/or

receipt and/or modification of Marvell's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Marvell, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

39.     The market for Marvell's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Marvell's securities traded at artificially inflated prices during the Class Period.   On February 13, 2015, the Company's stock closed at a Class Period high of $16.46 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Marvell's securities and market information relating to Marvell, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of Marvell's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Marvell's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Marvell and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41.     At all relevant times, the market for Marvell's securities was an efficient market for the following reasons, among others:

(a)     Marvell stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Marvell filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Marvell regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Marvell was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for Marvell's securities promptly digested current information regarding Marvell from all publicly available sources and reflected such information in Marvell's stock price. Under these circumstances, all purchasers of Marvell's securities during the Class Period suffered similar injury through their purchase of Marvell's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Marvell who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Marvell's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Marvell's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Marvell's financial well-being and prospects, as specified herein.

48.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Marvell's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Marvell and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their

responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Marvell's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Marvell's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or

indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Marvell's securities during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Marvell was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Marvell securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Marvell within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.    As set forth above, Marvell and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  September 11, 2015                 **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## MARVELL TECHNOLOGY GROUP LTD. SECURITIES LITIGATION

I, ___Daniel Luna_____, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase Marvell Technology Group Ltd., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Marvell Technology Group, Ltd. during the Class Period set forth in the Complaint are as follows:

   (See Attached Transactions)

5. I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: __9/11/2015_____

DocuSigned by:

*Daniel Luna*

52AEB000172E4B7...

Daniel Luna

**Daniel Luna's Transactions in**
**Marvell Technology Group Ltd (MRVL)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 7/24/2015 | Bought | 500 | $12.4500 |