1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| DANIEL LUNA, | Case No.  15-cv-05447-RMW |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| MARVELL TECHNOLOGY GROUP LTD, et al., | Re: Dkt. Nos. 68, 70, 71, 72 |
| Defendants. | |

This is a putative securities class action against Marvell Technology Group, Ltd. and three of its executives. Lead plaintiff Plumbers and Pipefitters National Pension Fund seeks to represent the class of all persons who purchased Marvell securities between November 20, 2014 and December 7, 2015. *See* Dkt. No. 57. Each of the four defendants moves to dismiss. Dkt. Nos. 68, 70, 71, 72. Plaintiff opposes defendants' motions. Dkt. No. 77. The court heard argument on July 29, 2016. The consolidated complaint is dismissed with leave to amend.

## I.       BACKGROUND

Marvell Technology Group, Ltd. produces storage, communications, and consumer semiconductor products. Compl. ¶ 2. Marvell is a publicly-traded Bermuda corporation with its U.S. headquarters in Santa Clara, California. *Id.* ¶ 15. Defendant Sehat Sutardja co-founded Marvell in 1995 and served as the company's CEO throughout the class period. *Id.* ¶ 16.

1

Defendant Michael Rashkin joined Marvell in 1999 and was named interim CFO in December 2013. *Id.* ¶¶ 17, 59. Mr. Rashkin then served as full-time CFO from February 17, 2014 until his retirement on March 21, 2015. *Id.* Defendant Sukhi Nagesh joined Marvell in 2011 and served as interim CFO between March 22, 2015 and October 15, 2015. *Id.* ¶ 18.

Plaintiff alleges that defendants made material misrepresentations about Marvell's key business metrics in press releases and SEC filings during the class period. *See id.* ¶¶ 25-62. Specifically, plaintiff alleges that defendants 1) misrepresented Marvell's financials by failing to record domestic royalties owed to Carnegie Mellon University, 2) misrepresented Marvell's financials by prematurely recognizing revenue from "pull-in" transactions, and 3) falsely certified that Marvell had adequate internal controls in place. *Id.* ¶ 3. According to plaintiff, these misrepresentations "caused Marvell securities to trade at artificially inflated levels throughout the Class Period." *Id.* ¶ 125. Plaintiff contends that class members suffered harm when Marvell's stock price dropped in response to a series of "partial disclosures that revealed the truth regarding the prospects of the Company." *Id.* ¶ 126. Plaintiff claims that defendants are liable for the alleged misrepresentations under section 10(b) of the Exchange Act and SEC Rule 10b-5 and are also liable as "controlling persons" under section 20(a) of the Exchange Act. *Id.* ¶¶ 166-172.

Marvell moves to dismiss plaintiff's section 10(b) and Rule 10b-5 claims, arguing that plaintiff has failed to adequately allege 1) a material misrepresentation, 2) scienter of any defendant, and 3) a causal relationship between the alleged misstatements and losses suffered by the putative class members. *See* Dkt. No. 72. Each of the individual defendants joins Marvell's motion to dismiss, *see* Dkt. Nos. 68 at 2, 70 at 2 n.2, 71 at 1 n.1, and brings a separate motion to dismiss for failure to adequately allege scienter, *see generally* Dkt. Nos. 68, 70, 71. All four defendants also move to dismiss plaintiff's section 20(a) claims for failure to adequately plead a predicate violation of section 10(b) and Rule 10b-5. *See* Dkt. Nos. 72 at 25, 68 at 22-23, 70 at 25, 71 at 14-15. Mr. Nagesh and Mr. Rashkin further argue that plaintiff has failed to adequately allege that they are "controlling persons" within the meaning of section 20(a). *See* Dkt. Nos. 68 at 23-25, 71 at 15.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

## II.     ANALYSIS

Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe." 15 U.S.C. § 78j(b). The SEC's Rule 10b-5 makes it unlawful for any person, in connection with the purchase or sale of a security, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). The elements of a securities fraud claim are "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008)). At the pleading stage, plaintiff "must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *Reese v. Malone*, 747 F.3d 557, 568 (9th Cir. 2014) (citing *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012)). Rule 9(b) requires that plaintiff "state with particularity the circumstances constituting fraud or mistake," while the PSLRA requires that plaintiff plead both falsity and scienter with particularity. Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b).

Section 20(a) of the Exchange Act makes certain "controlling persons" liable for violations of section 10(b) and its implementing regulations. *See* 15 U.S.C. § 78t(a). "[A] defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (quoting *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

1   F.3d 920, 945 (9th Cir. 2003)). The section 20(a) inquiry "is normally an intensely factual

2   question;" such claims "may be dismissed summarily, however, if a plaintiff fails to adequately

3   plead a primary violation of section 10(b)." *Id.* at 990.

4        When faced with a motion to dismiss a securities fraud action, "courts must, as with any

5   motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual

6   allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

7   322 (2007) (citing *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507

8   U.S. 163, 164 (1993)). "[C]ourts must consider the complaint in its entirety, as well as other

9   sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

10  documents incorporated into the complaint by reference, and matters of which a court may take

11  judicial notice." *Id.* (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). Courts are

12  not required to accept allegations that "contradict matters properly subject to judicial notice or by

13  exhibit." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

14  Defendants request that the court take judicial notice of several documents, including SEC filings

15  and court documents. The court will consider the documents that are relevant to resolution of the

16  instant motions to the extent such documents are central to plaintiff's allegations or otherwise

17  subject to judicial notice.

18       **A.  CMU Litigation Reserve Claims**

19       In 2009, Carnegie Mellon University filed a patent infringement action against Marvell in

20  the Western District of Pennsylvania. Compl. ¶ 4. On December 26, 2012, a jury awarded CMU a

21  $0.50 per chip royalty on Marvell's worldwide sales of certain semiconductor chips, resulting in a

22  total damages award of $1,169,140,271.00. *Id.* Marvell disclosed the jury's verdict in an SEC

23  filing the next day, noting that Marvell intended to "vigorously challenge the judgment through all

24  appropriate post trial motions and appeal processes," and that no liability had yet been accrued in

25  Marvell's financial statements. *See* Dkt. No. 73-1, RJN Ex. 1 at 2.

26       In May 2014, the district court entered judgment against Marvell in the amount of

27  $1,535,889,387.60, which included supplemental and enhanced damages. *See* Dkt. No. 73-24,

28

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California

RJN Ex. 24; *see also* Compl. ¶ 4. Marvell disclosed that it planned to appeal the judgment and that while company believed that "the low end of the possible range of loss is zero," it could not reasonably estimate the upper range of the possible loss "as a number of factors could significantly change the assessment of damages." Dkt. No. 73-9, RJN Ex. 9 at 20.

Marvell appealed the judgment to the Federal Circuit, arguing that CMU's patents were invalid and not infringed as a matter of law. *See* Dkt. No. 73-27, RNJ Ex. 27. Marvell also appealed several aspects of the district court's damages award, including the award of royalties on foreign chips, the calculation of the royalty rate, the enhancement for willfulness, and the award of pre-suit damages. *Id.* On August 4, 2015, the Federal Circuit affirmed in part the CMU judgment against Marvell:

> We affirm the judgment of infringement and validity. As to the monetary relief: We affirm the rejection of Marvell's laches defense to pre-suit damages. We reverse the grant of enhanced damages under the governing willfulness standard, which does not require that Marvell have had a reasonable defense in mind when it committed its past infringement. We reject Marvell's challenge to the royalty (past and continuing) with one exception.
>
> That exception involves an issue of extraterritoriality—whether the royalty, in covering all Marvell sales of certain chips made and delivered abroad, improperly reaches beyond United States borders. We conclude that the royalty properly embraces those Marvell-sold chips that, though made and delivered abroad, were imported into the United States, and we affirm the judgment to the extent of $278,406,045.50 in past royalties (50 cents for each of the 556,812,091 chips the jury could properly find were imported), plus an amount to be calculated on remand that brings that figure forward to the time of judgment, and the ongoing royalty order to the extent it reaches imported Marvell-sold chips. But as to the Marvell chips made and delivered abroad but never imported into the United States, we conclude that a partial new trial is needed to determine the location, or perhaps locations, of the "sale" of those chips. To the extent, and only to the extent, that the United States is such a location of sale, chips not made in or imported into the United States may be included in the past-royalty award and ongoing-royalty order.

Dkt. No. 73-29, RJN Ex. 29 at 3-4; *see also* Compl. ¶ 94.

On September 11, 2015, Marvell disclosed a "litigation accrual of approximately $394 million recognized by the Company under ASC Topic 450, 'Contingencies,' in connection with the Carnegie Mellon University and certain other pending litigation." Dkt. No. 73-12, RJN Ex. 12 at Ex. 99.1 at 4; *see also* Compl. ¶ 88. Marvell also referenced its ongoing accrual of litigation

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California

reserve in connection with the CMU royalties in its December 7, 2015 disclosures. Dkt. No. 73-15, RJN Ex. 15 at Ex. 99.1; *see also* Compl. ¶ 139. On February 17, 2016, Marvell disclosed that it had settled the CMU litigation for $750 million and no ongoing royalty. Dkt. No. 73-16, RJN Ex. 16; *see also* Compl. ¶ 139.

Plaintiff's theory is that defendants violated Generally Accepted Accounting Principles—specifically Accounting Standards Codification 450—by not accruing a loss contingency for the domestic portion of the CMU patent judgment. *See* Compl. ¶¶ 83-87. ASC 450 states that "estimated loss from a loss contingency is recognized only if the available information indicates that (1) it is probable that an asset has been impaired or a liability has been incurred at the reporting date and (2) the amount of the loss can be reasonably estimated." *See id.* ¶ 84. Plaintiff contends that because "Marvell made ***no meaningful arguments*** against applying the royalty rate to chips that enter or entered the United States" and thus defendants knew that "it was probable that the royalty award would be applied to at least all domestic transactions." *Id.* ¶ 29 (emphasis in complaint). Plaintiff also contends that the amount of the loss could be reasonably estimated because defendants were tracking ongoing royalties and could have calculated the domestic portion of the royalty award. *Id.* ¶¶ 93-95. Plaintiff alleges that, as a result of defendants' failure to accrue a litigation reserve for domestic royalties owed to CMU, Marvell overstated its net income, earnings per share, and margin metrics in its financial results disclosed on November 20, 2014 (3Q15), February 19, 2015 (4Q15), and May 21, 2015 (1Q16). *See id.* ¶¶ 26-29, 33-34, 56-58.

Although the court declines to dismiss plaintiff's CMU litigation reserve claims as time-barred, the court dismisses plaintiff's claims for failure to adequately plead a material misstatement, scienter, and loss causation.

### 1.  Statute of Limitations

Section 10(b) claims "may be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658. "'[D]iscovery' as used in this statute encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known," and the

1  statute requires "'discovery' of scienter-related 'facts.'" *Merck & Co. v. Reynolds*, 559 U.S. 633,

2  648 (2010). In this case, plaintiff alleges that defendants misstated Marvell's financials in late

3  2014 and 2015 as a result of Marvell's failure to accrue a CMU litigation reserve for domestic

4  royalties. *See* Compl. ¶¶ 1, 3, 87. Plaintiff relies on the contents of the briefs filed in Marvell's

5  2014 appeal to show the falsity of the financial statements, as well as defendants' scienter. The

6  cases that are now consolidated in this action were all filed in 2015. Plaintiff's claims, therefore,

7  fall within 2 years of plaintiff's discovery of the alleged violations.

8        Defendants assert that the facts underlying plaintiff's CMU litigation reserve claim—the

9  2012 trial and jury verdict, Marvell's active "tracking" of ongoing royalties, and the Federal

10  Circuit decision that was the basis for Marvell's appeal of the extraterritorial royalties award—

11  were all publicly disclosed by May 24, 2013 at the latest. According to defendants, a reasonably

12  diligent plaintiff would have known by then that Marvell was not accruing a reserve for domestic

13  royalties. Defendants contend that there is no logical way for plaintiff to distinguish the obligation

14  to accrue a reserve after the jury's verdict and the obligation to accrue a reserve after the court's

15  entry of judgment. The court is not persuaded by this argument.

16        Plaintiff claims that Marvell's post-judgment disclosures were misleading because

17  defendants knew that Marvell's appeal was not likely to succeed with respect to the domestic

18  portion of the judgment. *See, e.g.*, Compl. ¶ 86 ("defendants were aware during the Class Period

19  that an adverse outcome on the U.S. portion of the judgment was *probable* (*i.e.*, the Court of

20  Appeals would not reverse the District Court judgment) and defendants had the ability to *precisely*

21  *estimate* the amount of damages attributable to the U.S. portion of the CMU patent judgment")

22  (emphases in complaint). Defendants have not shown that plaintiff could have discovered the facts

23  constituting the alleged violation—including the likelihood of success on appeal and defendants'

24  knowledge of that likelihood—before the appeal briefs were filed. Therefore, the court declines to

25  dismiss on statute of limitations grounds. *See Merck*, 559 U.S. at 654 (affirming finding that

26  plaintiff's suit was timely where "plaintiffs did not discover, and [defendant had] not shown that a

27  reasonably diligent plaintiff would have discovered, 'the facts constituting the violation,' more

28   

<div align="center">7</div>

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

than 2 years before filing).

### 2. Material Misrepresentation

The parties agree that GAAP requires Marvell to accrue a reserve for any litigation loss that is probable and can be reasonably estimated. Defendants argue, however, that plaintiff does not plead facts to support plaintiff's contention that the loss of the domestic royalties awarded to CMU was both probable and capable of reasonable estimation. Having reviewed the allegations of the complaint, the court concludes that plaintiff has not adequately alleged a material misrepresentation based on Marvell's failure to accrue a reserve for the domestic royalties.

"'GAAP is not a set of rules ensuring identical treatment of identical transactions; rather, it tolerates a range of reasonable treatments, leaving the choice among alternatives to management.'" *In re Oak Tech. Sec. Litig.*, No. 96-20552 SW, 1997 WL 448168, at *9 (N.D. Cal. Aug. 1, 1997) (quoting *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1457 (N.D. Cal. 1996)). Plaintiff appears to concede that the existence of an adverse judgment alone does not imply that a litigation loss is "probable" loss, as plaintiff "does not allege that defendants knew it was probable that the extraterritorial portion of the judgment would be upheld" on appeal. *See* Dkt. No. 77 at 16. Rather, plaintiff acknowledges that "[]under GAAP, an assessment of the probability of a loss contingency incorporates an analysis of several factors," including the "nature of the litigation, claim, or assessment;" "progress of the case;" "strategy by the defendant to respond to the case;" and "experience of the entity in similar cases and the experience of other entities in similar cases."[1] Compl. ¶ 90.

Nor may plaintiff may rely solely on Marvell's eventual accrual of a reserve to show that Marvell's financial statements were misleading: "The fact that an allegedly fraudulent statement

---

[1] In its opposition brief, plaintiff claims that because the Federal Circuit reverses in only 10% of cases, defendants knew or should have known the loss was probable "in the absence of extreme circumstances, such as the existence of binding precedent that was ignored by the District Court." Dkt. No. 77 at 16. Plaintiff does not rely on the Federal Circuit's reversal rate in the complaint, and defendants dispute the accuracy of plaintiff's statistics. *See* Dkt. No. 84 at 5 and n.4. In any case, the court is not convinced that a low reversal rate at the Federal Circuit is sufficient by itself to sustain allegations of an impermissible judgment by defendants because a loss contingency assessment requires analysis of several factors.

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California

and a later statement are *different* does not necessarily amount to an explanation as to why the earlier statement was false. For example, both the valuation of assets and the setting of loan loss reserves are based on flexible accounting concepts, which, when applied, do not always (or perhaps ever) yield a single correct figure." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (emphasis in original), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). "In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood . . . . [P]laintiff may need to draw on contemporaneous statements or conditions to make that demonstration." *Id.* Here, the complaint lacks factual allegations explaining why defendants' decision not to accrue a reserve was fraudulent, rather than a permissible judgment call.

Plaintiff relies on two factual allegations to show the falsity of defendants' determination that no reserve need be accrued: 1) "Marvell made no meaningful argument against the domestic royalty" on appeal and 2) an "amicus brief filed by Google and other technology companies before the Federal Circuit actually assumed 'that Marvell must pay Carnegie Mellon some reasonable royalty' for those chips sold domestically." Compl. ¶¶ 5, 91. The record shows, however, that Marvell made both invalidity and non-infringement arguments on appeal. *See generally* Dkt. No. 73-27, RNJ Ex. 27 (Marvell's Appeal Brief). If Marvell had won its appeal on either of these issues, Marvell would not have been liable for any royalties—domestic or foreign. At the hearing, plaintiff described Marvell's invalidity and non-infringement arguments as part of a "run-of-the-mill, kitchen sink" appeal. But some standard invalidity and non-infringement appeals undoubtedly succeed. Plaintiff does not allege any contemporaneous facts demonstrating that defendants must have known that Marvell would lose.[2] The amici, furthermore, took "no position

---

[2] In fact, as part of its assessment of the district court's willfulness finding, the Federal Circuit determined that Marvell's invalidity argument was objectively reasonable, noting that the "the district court itself referred to Marvell's invalidity defense as a 'close call' at the summary-judgment stage." Dkt. No. 73-29, RJN. Ex. 29 at 27 (quoting *Carnegie Mellon Univ. v. Marvell*

United States District Court
Northern District of California

on the validity and infringement of Carnegie Mellon's patent claims" in the briefs cited by

plaintiff. Dkt. No. 73-28, RJN Ex. 28 at 1, 3. The amici were interested in challenging only the

award of extraterritorial royalties and assumed that some domestic royalty would be awarded for

that reason—not because they believed that Marvell's other arguments were likely to fail, and

their statements are therefore not relevant to whether the loss was probable. *See id.* Marvell had a

strong argument against the award of extraterritorial royalties that eventually prevailed on appeal,

but the strength of that argument does not necessarily imply that Marvell's other arguments on

appeal were weak.

Furthermore, Marvell also challenged the award of a royalty—rather than a flat licensing

fee—and the rate of the royalty awarded. *See generally* Dkt. No. 73-7, RJN. Ex. 27 at 45-50, 60-

66. If Marvell had prevailed on any of these damages arguments, the amount owed to CMU would

have changed. As with Marvell's invalidity and non-infringement arguments, plaintiff does not

explain why or how defendants should have known in advance that Marvell would lose on these

issues at the Federal Circuit.

With no other specific factual allegations as to falsity, plaintiff "fail[s] to meet the

particularity requirements of Rule 9(b) and the Reform Act." *Oak Tech*, 1997 WL 448168, at *9

(finding "conclusory allegation that Defendants should have recognized a loss earlier"

insufficient); *see also Caprin v. Simon Transp. Servs.*, 112 F. Supp. 2d 1251, 1256 (D. Utah 2000),

*aff'd sub nom. Caprin v. Simon Transp. Servs., Inc.*, 99 F. App'x 150 (10th Cir. 2004) (finding

that plaintiffs had not pleaded "facts demonstrating that STS employed impermissible judgment

when calculating its reserves" because the "application of accounting principles often 'tolerate a

range of reasonable treatments, leaving the choice among alternatives to management'") (quoting

*Oak Tech*, 1997 WL 448168, at *9); *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96,

100 (3d Cir. 1983) (affirming dismissal of complaint based on "complete absence of any

disclosure of the manner in which, in establishing reserves for bad debts in the financial

---

*Tech. Grp., Ltd.*, No. CIV. 09-290, 2011 WL 4527353, at *1 (W.D. Pa. Sept. 28, 2011)).

statements relied upon, the defendants knowingly departed from reasonable accounting practices"); *Siegel v. Lyons*, No. C-95-3588 DLJ, 1996 WL 634206, at *2 (N.D. Cal. Sept. 16, 1996) (dismissing claims that defendants "fraudulently overstated [] financial performance by reporting inadequate reserves for bad debts" where plaintiff failed to allege facts showing that "reserve figure was the result of fraud, rather than a permissible business judgment"); *cf. Maiman v. Talbott*, No. SACV090012AGANX, 2010 WL 11421950, at *4 (C.D. Cal. Aug. 9, 2010) (denying motion to dismiss plaintiff's claims that defendants "falsely characterized" level of loan reserves because plaintiffs provided "specific data underlying those statements to show that they were misleading when made").

Plaintiff argues that there is at least a question of fact as to Marvell's GAAP compliance, citing four cases from outside this circuit. In three of these cases, however, plaintiffs made specific factual allegations that explained why and how the alleged GAAP violations were fraudulent. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir.), *opinion modified on denial of reh'g*, 409 F.3d 653 (5th Cir. 2005) ("plaintiffs' claim that the Company improperly recognized unearned revenue in violation of SOP 97-2 is supported by sworn expert analysis"); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 665 (8th Cir. 2001) ("the investors alleged that defendants published statements with knowledge of facts indicating crucial information in the statements was based on discredited assumptions"); *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 273 (S.D.N.Y. 2010) (noting that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim," but finding claims actionable where complaint included detailed factual allegations to show scienter).

In *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997), the Third Circuit found that plaintiffs had adequately pleaded a material misrepresentation under both Rule 12(b)(6) and Rule 9(b) by alleging that defendants overstated the company's earnings by failing to properly match their operating expenses with sales in accordance with GAAP. 114 F.3d at 1420-22. The decisions to accrue a loss reserve requires more detailed analysis than matching expenses; therefore, more detailed allegations are required to explain how defendants violated

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

1    GAAP in this case. To the extent *In re Burlington Coat Factory* implies that general allegations of

2    GAAP violations are sufficient to meet the heightened pleading requirements for falsity, it is

3    inconsistent with the law of this circuit. *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th

4    Cir. 2005) ("a general allegation that the practices at issue resulted in a false report of company

5    earnings is not a sufficiently particular claim of misrepresentation") (quoting *Greebel v. FTP*

6    *Software, Inc.*, 194 F.3d 185, 203 (1st Cir. 1999)).

7          Moreover, even if plaintiff had alleged facts to show that defendants made an

8    impermissible accounting judgment, the court is doubtful that defendants' fully-disclosed decision

9    not to accrue a reserve could give rise to a material misrepresentation as a matter of law. *See In re*

10   *BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1367 & n.16 (N.D. Ga. 2005) (finding that, as a

11   matter of law, "no reasonable investor could have been misled" by BellSouth's failure to accrue

12   litigation reserve where "BellSouth timely disclosed in public filings the Florida PSC's decision,

13   the status of the company's appeals, updated current amounts subject to potential refund, and that

14   that the company had not accrued a reserve in connection with the matter"). In this case,

15   defendants disclosed the total amount of the potential loss, the status of Marvell's appeal, and

16   Marvell's decision not to accrue a reserve for any part of the award. Under these circumstances,

17   the court is not persuaded that a reasonable investor would have viewed Marvell's financial

18   statements "as having significantly altered the 'total mix' of information made available" because

19   they did not account for a reserve. *Matrixx*, 563 U.S. at 38 (quoting *Basic Inc. v. Levinson*, 485

20   U.S. 224, 231-32 (1988)). In sum, the court finds that plaintiff has failed to allege any

21   misstatement—much less a material misstatement—with respect to Marvell's CMU litigation

22   reserve.

23                              **3.  Scienter**

24          Relatedly, plaintiff fails to adequately allege defendants' scienter with respect to the CMU

25   litigation reserve claims. The PSLRA requires plaintiff to "state with particularity facts giving rise

26   to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-

27   4(b)(2). "The inference must be that 'the defendant[ ] made false or misleading statements either

28                                        12

United States District Court
Northern District of California

1   *intentionally* or with *deliberate recklessness.*'" *Reese*, 747 F.3d at 569 (emphasis in original)

2   (quoting *Zucco*, 552 F.3d at 991). "Deliberate recklessness means that the reckless conduct

3   'reflects some degree of intentional or conscious misconduct.'" *Id.* (quoting *S. Ferry LP, No.2 v.*

4   *Killinger*, 542 F.3d 776, 782 (9th Cir. 2008)). The court must inquire "whether *all* of the facts

5   alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual

6   allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323 (emphasis in

7   original). A complaint survives a motion to dismiss "only if a reasonable person would deem the

8   inference of scienter cogent and at least as compelling as any opposing inference one could draw

9   from the facts alleged." *Id.* at 324.

10          Even accepting plaintiff's contention that defendants' made an impermissible accounting

11   judgment and therefore materially misstated Marvell's financials, the complaint lacks allegations

12   of facts giving rise to a strong inference of scienter. "[T]he mere publication of inaccurate

13   accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *Lloyd*

14   *v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (quoting *DSAM Glob. Value Fund v.*

15   *Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002)); *see also In re BellSouth Corp. Sec. Litig.*,

16   355 F. Supp. 2d at 1375 (finding that "simply challenging the accounting judgment of the

17   company . . . is insufficient to establish scienter" on a motion to dismiss). Plaintiffs do not allege

18   "specific contemporaneous statements or conditions that demonstrate the intentional or the

19   deliberately reckless false or misleading nature of the statements when made." *Metzler Inv. GMBH*

20   *v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (quoting *Ronconi*, 253 F.3d at 432).

21   The complaint lacks, "for example," allegations "that a company's external auditors counseled

22   against a practice or that a company's CFO was aware that the practice was improper." *Lloyd*, 811

23   F.3d at 1207 (citing *Metzler*, 540 F.3d at 1068-69). Plaintiff makes a general allegation that the

24   "Individual Defendants participated in the drafting, preparation and/or approval of the various

25   public, shareholder and investor reports and other communications complained of," Compl. ¶ 21,

26   but plaintiff does not allege the role of the individual defendants in determining whether to accrue

27   a reserve or "what knowledge they had of GAAP principles," *Lloyd*, 811 F.3d at 1207.

28

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

1   Furthermore, any inference that defendants intended to deceive investors is negated by

2   Marvell's full disclosure of the CMU judgment and the company's decision not accrue a reserve.

3   *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("detailed risk

4   disclosure in the Debenture Prospectus negates an inference of scienter"); *In re Taleo Corp. Sec.*

5   *Litig.*, No. C 09-00151 JSW, 2010 WL 597987, at *10 (N.D. Cal. Feb. 17, 2010) ("fact that

6   Defendants applied [an accounting rule] in such a consistent and transparent manner raises a

7   plausible inference that Defendants' error was innocent").

8   Taken collectively, plaintiff's allegations do not create an inference at least as strong as

9   inference that defendants believed the reserve was not required.

10   **4.   Loss Causation**

11   Plaintiff also fails to allege loss causation for its CMU litigation reserve claims. "[T]he

12   plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the

13   defendant's misrepresentations, rather than some intervening event." *Lloyd v*, 811 F.3d at 1209

14   (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343-44 (2005)). "The burden of pleading loss

15   causation is typically satisfied by allegations that the defendant revealed the truth through

16   'corrective disclosures' which 'caused the company's stock price to drop and investors to lose

17   money.'" *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014)).

18   The alleged misrepresentation need not be the "the *sole* reason for the investment's decline in

19   value," but plaintiff's allegations must provide "some indication that the drop in [defendant's]

20   stock price was causally related to [the defendant's] financial misstatement[s]." *Metzler*, 540 F.3d

21   at 1062 (alterations in original) (quoting *In re Daou*, 411 F.3d at 1025, 1026). Plaintiff need not

22   allege an actual "admission or finding of fraud," but plaintiff may not "plead loss causation

23   through 'euphemism' and thereby avoid alleging the necessary connection between defendant's

24   fraud and the actual loss." *Id.* at 1064.

25   Plaintiff alleges that Marvell's stock price dropped in response to the following

26   disclosures:

27   • Marvell's September 11, 2015 disclosure of a litigation accrual in connection with the

28   

14

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California

CMU litigation.[3] Compl. ¶ 88.

- Marvell's September 11, 2015 disclosure that the Audit Committee was "reviewing certain aspects of the Company's internal control over financial reporting, including controls for the establishment of reserves for litigation . . . ." Compl. ¶¶ 133-34, 88.

- Marvell's October 26, 2015 disclosure that "PwC, the Company's auditor for over 15 years had abruptly resigned" after indicating that, if PwC were to continue as auditor, it would have to expand the scope of the 2016 audit to cover Marvell's process and controls for establishing litigation reserves. *Id.* ¶¶ 135, 137.

- Marvell's December 7, 2015 disclosure that "two government agencies, the U.S. Attorney's Office and the SEC are investigating its accounting and other issues." *Id.* ¶ 140-41.

These disclosures are not sufficient to plead loss causation because they do not reveal any

inaccuracy in Marvell's prior financial statements.

      As noted above, that fact that Marvell eventually accrued a reserve in connection with the

CMU litigation—after resolution of its appeal to the Federal Circuit—is not sufficient to show that

Marvell was required to do so earlier. Similarly, the announcement of an investigation into

Marvell's controls for establishing litigation reserves, "'standing alone and without any

subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of

anything, and therefore does not qualify as a corrective disclosure.'" *Lloyd*, 811 F.3d at 1209-10

(quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 890 n.3 (9th Cir. 2014), *as amended* (Sept. 11,

2014)). Likewise, PwC's statement that Marvell's next audit should cover the company's controls

for establishing litigation reserves does not constitute a corrective disclosure because plaintiff does

not allege that PwC ever concluded that Marvell's decision not accrue a reserve was in error. *See*

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (finding that

Department of Education's "expression of concern" about enrollment practices "does not

constitute a corrective disclosure" of alleged fraud); *Metzler*, 540 F.3d at 1064 (rejecting "notion

---

[3] In different sections of the complaint, plaintiff suggests that Marvell disclosed the accrual of a CMU litigation reserve on September 11, 2015 and on December 7, 2015. *Compare* ¶ 88, *with* ¶ 139. The SEC filings submitted by defendants indicate that Marvell first disclosed its accrual of the CMU litigation reserve in September 11, 2015. *See* Dkt. No. 73-12, RJC Ex. 12 at 4 ("Cost of goods sold includes a litigation accrual of approximately $394 million recognized by the Company under ASC Topic 450, "Contingencies," in connection with the Carnegie Mellon University and certain other pending litigation.").

United States District Court
Northern District of California

United States District Court
Northern District of California

that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct"). The court concludes, therefore, that plaintiff has failed to allege loss causation with respect to its litigation reserve claims.

### B.  Pull-In Transaction Claims

Plaintiff alleges that Marvell's key business metrics were fraudulently inflated during the class period because defendants prematurely recognized revenue that should have been earned in subsequent periods. Compl. ¶¶ 6, 36-37. Plaintiff's allegations are based on the results of an investigation by Marvell's Audit Committee. *Id.* ¶¶ 36-37, 132, 138, 142-45.

On September 11, 2015, Marvell disclosed that the Audit Committee was reviewing "certain revenue recognition issues in the second quarter of fiscal 2016 and any associated issues with whether senior management's operating style during the period resulted in an open flow of information and communication to set an appropriate tone for an effective control environment." Dkt. No. 72-12, RJN Ex. 12 at Ex. 99.1 at 1-2. Specifically, the Audit Committee focused on "7 to 8 percent of revenue recognized in the second quarter of fiscal 2016 that, based upon the original customer request date, would have been received and earned in the third quarter of fiscal 2016 and is no longer available for receipt in that quarter." *Id.* On December 7, 2015, Marvell disclosed that the Audit Committee was also investigating the effect of pull-in transactions recognized in 4Q15 and 1Q16.[4] Dkt. No. 72-15 at 11, RJN Ex. 15 at Ex. 99.1. According to plaintiff, Marvell's premature recognition of pull-in transactions during the class period concealed softening demand in the HDD segment of the market for storage products—one of Marvell's most important market segments. Compl. ¶¶ 74-75.

On March 1, 2016, the Audit Committee announced that it had completed its investigation, concluding that "revenue related to pull-in transactions during the subject period was for most such transactions properly recognized in accordance with Marvell's revenue recognition policy and generally accepted accounting principles," but that there were certain transactions for which

---

[4] Marvell's fiscal year 2015 ended on January 31, 2015. *See* Compl. ¶ 6 n.2; Dkt. No. 72 at 4. Therefore, the expanded audit investigation period covered November 2014 through July 2015.

16

"Marvell's internal controls were not fully followed and revenue from certain pull-in and distributor transactions was recognized prematurely." Dkt. No. 72-17 at 6-7, RJN Ex. 17 at Ex. 99.1. The Audit Committee identified "a limited number of transactions that had the effect of recognizing revenue prematurely, generally involving the extension of payment terms beyond Marvell's customary terms." *Id.*

Although plaintiff has adequately alleged material misstatement and loss causation, plaintiff's pull-in transaction claims are dismissed for failure to adequately plead scienter.

### 1.  Material Misrepresentation

#### a.  Specific Transactions

Defendants argue that plaintiff's claims must be dismissed for failure to identify specific pull-in transactions. The Ninth Circuit, however, has held that where a complaint "'identifies the circumstances of the alleged fraud so that defendants can prepare an adequate answer,'" the details of specific transactions are not required. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (quoting *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) ("It is not fatal to the complaint that it does not describe in detail a single specific transaction (i.e. shipment) in which Merisel transgressed as above, by customer, amount, and precise method.")).[5] In this case, plaintiff alleges that Marvell's Audit Committee identified specific transactions in its report. Defendants should be able to investigate the transactions identified by the Audit Committee and prepare an adequate answer.

Defendants rely on *In re Connetics Corp. Sec. Litig.*, No. C 07-02940 SI, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008), in which the district court noted that "[r]ecent authority suggests that for an allegation of channel stuffing to be pled with sufficient particularity, it must

---

[5] Defendants object that the Ninth Circuit decided *Cooper* under pre-PLSRA pleading standards. Although the PLSRA heightened the pleading standard for scienter, Rule 9(b) already required that allegations of falsity be plead with particularity. *See, e.g.*, *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1165 (9th Cir. 2009) (noting that "inquiry into whether plaintiffs have pled falsity with the requisite particularity under the PSLRA is nearly identical to that under Federal Rule of Civil Procedure 9(b)"). The court is unaware of binding authority abrogating the Ninth Circuit's holding in *Cooper* as to the specificity required to plead misrepresentation based on improper revenue recognition.

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California

United States District Court
Northern District of California

allege specific transactions, specific shipments, specific customers, specific times, or specific dollar amounts." 2008 WL 3842938, at *9 (internal quotation marks omitted). In the cases cited in *Connetics*, however, plaintiffs failed to allege any "corroborating details" that would allow defendants to identify the challenged transactions. *In re ICN Pharm., Inc., Sec. Litig.*, 299 F. Supp. 2d 1055, 1062 (C.D. Cal. 2004); *see also Greebel*, 194 F.3d at 204 ("The allegations in the complaint do not include such basic details [as amounts, products, dates, customers, or salespeople involved]. We do not say that each of these particulars *must* appear in a complaint, but their complete absence in this case is indicative of the excessive generality of these allegations."); *In re Ashworth, Inc. Sec. Litig.*, No. 99CV0121-L(JAH), 2000 WL 33176041, at *6 (S.D. Cal. July 18, 2000) ("The Complaint fails to allege any specific facts to substantiate these allegations, such as a detailed example where these events occurred."). In this case, as in *Connetics* itself, there is "no dispute between the parties that defendants' financial statements were misstated." 2008 WL 3842938 at *10 (noting that only the element of scienter is at issue). Accordingly, this court declines to dismiss plaintiff's pull-in transactions claims based on failure to identify specific transactions.

### b.   Materiality

Defendants also argue that plaintiff's allegations do not show that it is "substantially likely that a reasonable investor would have viewed this information 'as having significantly altered the total mix of information made available.'" *Matrixx*, 563 U.S. at 38 (quoting *Basic*, 485 at 224) (internal quotation marks omitted). "'[D]etermining materiality in securities fraud cases should ordinarily be left to the trier of fact,'" but "'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Reese*, 747 F.3d at 568 (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010)).

Plaintiff relies on the scope of the Audit Committee's investigation to show materiality by alleging that "as much as 8% of [Marvell's] quarterly revenue as the result of channel stuffing," and that "[w]ithout the artificial boost from channel stuffing, Marvell would have been forced to disclose significantly lower revenues in its Storage market." Compl. ¶ 74. Plaintiff also relies on

18

Marvell's eventual disclosure of "weaker than expected demand for HDD products . . . ." *Id.* at 75 (emphasis omitted). Plaintiff also cites subsequent events to confirm the materiality of the misstated financials—including the drop in Marvell's stock price, the resignation of Marvell's long-time auditor, the terminations of Marvell's co-founders, and the government investigations into Marvell's accounting practices.

Defendants, on the other hand, argue that the financial misstatements cannot be material because "all that is known about the volume of pull-ins in 4Q15 and 1Q16 is that it is *smaller* than 8%" and because Marvell disclosed at the end of 2Q16 that some amount of revenue from pull-ins would no longer be available receipt in the next quarter. Dkt. No. 72 at 14. Defendants also claim that Marvell "disclosed softening demand trends throughout the relevant time period." *Id.* at 14-15. Defendants further argue that the allegations of the complaint do not connect subsequent events—such as resignations and terminations—to the prematurely recognized revenue. *Id.* at 15-17.

Whether plaintiff will be able to establish materiality remains to be seen, but the allegations in the complaint "suffice to raise a reasonable expectation that discovery will reveal evidence satisfying the materiality requirement" for the transactions identified by the Audit Committee. *Reese*, 747 F.3d at 568 (quoting *Matrixx*, 563 U.S. at 46). There is no "bright-line rule" for determining materiality,[6] *Basic*, 485 U.S. at 236, and "not every mixture with the true will neutralize the deceptive," *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991). Plaintiff relies heavily on the Audit Committee's findings, but even if plaintiff is not able to connect subsequent events to the pull-in transactions, the complaint contains more than "conclusory allegations of law and unwarranted inferences" of materiality. *Reese*, 747 F.3d at 568;

---

[6] Defendant Sukhi Nagesh argues that the premature revenue recognition is quantitatively immaterial as matter of law. *See* Dkt. No. 82 at 4 (citing *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 766 (N.D. Cal. 1997) (finding 5% shortfall immaterial as a matter of law)). Defendant's position is inconsistent with the Supreme Court's guidance in *Basic* and *Matrixx*, as well as guidance from the SEC guidance. *See* 17 C.F.R. Part 211, Release No. SAB 99 (Aug. 12, 1999) ("misstatements are not immaterial simply because they fall beneath a numerical threshold").

19

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

*see also Washtenaw Cty. Emps Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 107 (D. Mass. 2014) ("Here, one can argue that the Plaintiffs rely too much on Avid's voluntary disclosure of errors [in revenue recognition]. This should not lead, however, to the dismissal of the case.").

### 2.  Loss Causation

Plaintiff's reliance on the Audit Committee's March 1, 2016 disclosure is also sufficient to plead loss causation: "The Audit Committee stated that it identified a limited number of transactions that had the effect of ***recognizing revenue prematurely***, generally involving the ***extension of payment terms beyond Marvell's customary terms***."[7] Compl. ¶ 145 (emphasis in complaint). Not only has plaintiff alleged investigation of the pull-in transactions at issue, but also that defendants subsequently made a "corrective disclosure." *Lloyd*, 811 F.3d at 1210 (noting that "any other rule would allow a defendant to escape liability" by waiting until the market reacted to the announcement of an investigation before revealing that the representations subject to investigation were false). Defendants argue that the Audit Committee "identified no fraudulent activity in the course of [its] investigation." Dkt. No. 73-17 at 6, RJN Ex. 17, at Ex. 99.1. This court declines to rely on the accuracy of the Audit Committee's assessment in dismissing plaintiff's claims.

### 3.  Scienter

The allegations in the complaint, however, do not give rise to a strong inference of defendants' scienter with respect to the alleged pull-in transaction misstatements.

#### a.  GAAP Violations

Plaintiff argues that "[v]iolations of GAAP standards can also provide evidence of scienter." *In re Daou Sys., Inc.*, 411 F.3d at 1016. However, "[t]o support even a reasonable inference of scienter, much less a strong inference, the complaint must describe the violations with

---

[7] Defendants argue that plaintiff's loss causation arguments relying on Marvell's March 1, 2016 SEC filing must be disregarded because plaintiff made no mention of the disclosures in the section of its opposition on loss causation. *See* Dkt. No. 87 at 1. Defendants are correct that plaintiff did not discuss the March 1, 2016 disclosures on pages 39-40 of the brief, but plaintiff did reference these specific disclosures in its opposition. *See* Dkt. No. 77 at 1, 27. Moreover, defendants are not prejudiced because they addressed the disclosures in their motion. *See* Dkt. Nos. 72 at 24.

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California

1  sufficient particularity." *Id.*; *see also Lloyd*, 811 F.3d at 1207 ("the mere publication of inaccurate

2  accounting figures, or a failure to follow GAAP, without more, does not establish scienter")

3  (quoting *DSAM Glob. Value Fund*, 288 F.3d at 390)). The complaint lacks allegations showing

4  that "defendants knew specific facts at the time that rendered their accounting determinations

5  fraudulent." *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046 (N.D. Cal.

6  2009) (quoting *Rudolph v. UTStarcom*, 560 F.Supp.2d 880, 889 (N.D. Cal. 2008)).

### b.  Significant Pressure

8      Plaintiff relies on the Audit Committee's March 1, 2016 finding that Marvell's senior

9  management applied significant pressure on finance and sales personnel to meet revenue targets.

10  *See* Compl. ¶¶ 144-45. "However, 'there is nothing inherently improper in pressing for sales to be

11  made earlier than in the normal course.'" *Curry v. Hansen Med., Inc.*, No. 5:09-CV-05094-JF

12  HRL, 2011 WL 3741238, at *6 (N.D. Cal. Aug. 25, 2011) (quoting *Greebel*, 194 F.3d at 202-03)).

13  As previously noted, the Audit Committee indicated in the same disclosure that it had "identified

14  no fraudulent activity." Dkt. No. 73-17 at 6, RJN Ex. 17, at Ex. 99.1. While the court does not

15  accept the Audit Committee's finding of no fraud as true, the Committee's finding of "significant

16  pressure" applied by management does not raise an inference of fraud that is as compelling as the

17  inference that the individual defendants were unaware of the premature recognition of revenue or

18  were merely pressing for sales to be made earlier.

### c.  Core Operations Theory

20      Plaintiff alleges that the "pressure and control exerted by senior management set an

21  improper 'tone at the top.'" Compl. ¶ 38. "Where a complaint relies on allegations that

22  management had an important role in the company but does not contain additional detailed

23  allegations about the defendants' actual exposure to information, it will usually fall short of the

24  PSLRA standard. In such cases the inference that defendants had knowledge of the relevant facts

25  will not be much stronger, if at all, than the inference that defendants remained unaware." *S.*

26  *Ferry*, 542 F.3d at 784. Allegations under a "core operations" theory may only "independently

27  satisfy the PSLRA" if there are particular allegations suggesting that "defendants had actual access

28   

*United States District Court*
*Northern District of California*

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

to the disputed information," or where "it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786 (citations omitted).

Plaintiff alleges that Dr. Sutardja was a "micro manager and had his fingers in everything," leaving "little room for mid-level managers to make decisions," and that "[a]pproximately 50% of Marvell's sales were made to three customers and one distributor, who were taken care of personally by Marvell co-founder and defendant Sutardja's wife, Dai." Compl. ¶¶ 54-55. But the complaint does not tie Dr. Sutardja or these "three customers and one distributor" to the pull-in transactions identified by the Audit Committee as improper. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("Missing are allegations linking specific reports and their contents to the executives . . . ."); *In re Cadence Design*, 654 F. Supp. 2d at 1048 (finding general allegation that defendants "'spent time' with customers" and had roles in approval process not sufficiently particular to raise strong inference that defendants "possessed the relevant facts"). The complaint contains no allegations whatsoever to show that Mr. Rashkin or Mr. Nagesh had actual access to information regarding the identified transactions—"Sarbanes–Oxley certifications are not sufficient, without more, to raise a strong inference of scienter." *Zucco*, 552 F.3d at 1004 (quoting *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747-748 (9th Cir. 2008)).

Nor does this case fit into the "exceedingly rare category of cases" where it would be "absurd" to suggest that defendants were without knowledge of the improper revenue recognition. *See S. Ferry*, 542 F.3d at 785 n.3 (citing *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008), in which the Ninth Circuit accepted plaintiff's inference that "high-level managers must have known about the orders because of their devastating effect on the corporation's revenue"). The premature recognition of 7-8% of revenue cannot plausibly be described as "core" to Marvell's operations.

#### d. Resignations and Terminations

Plaintiff claims that Dr. Sutardja and his wife were fired one month after the Audit Committee announced the results of its investigation, and that Mr. Rashkin, Mr. Nagesh, and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Marvell's auditor resigned during the pendency of the investigation. Dkt. No. 77 at 35-40. As

2   defendants point out, most of plaintiff's allegations about resignations and terminations do not

3   appear in the complaint. In any case, "resignations, terminations, and other allegations of

4   corporate reshuffling may in some circumstances be indicative of scienter," but only where

5   plaintiff pleads additional facts. *Zucco*, 552 F.3d at 1002. For example, "[w]here a resignation

6   occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead

7   facts refuting the reasonable assumption that the resignation occurred as a result of restatement's

8   issuance itself in order for a resignation to be strongly indicative of scienter." *Id.* "For other

9   resignations occurring during the relevant time period, a plaintiff must allege sufficient

10  information to differentiate between a suspicious change in personnel and a benign one." *Id.*

11  "Absent allegations that the resignation at issue was uncharacteristic when compared to the

12  defendant's typical hiring and termination patterns or was accompanied by suspicious

13  circumstances, the inference that the defendant corporation forced certain employees to resign

14  because of its knowledge of the employee's role in the fraudulent representations will never be as

15  cogent or as compelling as the inference that the employees resigned or were terminated for

16  unrelated personal or business reasons." *Id.*

17          Defendants contend that Mr. Rashkin reasonably retired at age 70 after sixteen years of

18  service and that Mr. Nagesh was in fact promoted from interim CFO to Senior VP, Corporate

19  Development and Strategy, Financial Planning and Analysis and Investor Relations at Marvell.

20  Defendants suggest there are any number of reasons other than fraud—including corporate

21  mismanagement—for PwC's resignation as auditor or the Board's termination of Dr. Sutardja and

22  Ms. Dai. Plaintiff does not allege any facts, other than the general timing of the departures, to

23  suggest that they "were connected to any purported wrongdoing or fraudulent activity." *In re*

24  *Downey Sec. Litig.*, No. CV08-3261-JFW (RZX), 2009 WL 736802, at *11 (C.D. Cal. Mar. 18,

25  2009); *see also In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal.

26  2005) (finding that "notable departures" of executives—whether they were terminated or

27  resigned—"are not in and of themselves evidence of scienter"). Under these circumstances, an

28                                              23

1  inference of fraud is not as compelling as the inference that the departures were prompted by

2  personal or business reasons unrelated to fraud—for example, the Audit Committee's

3  identification of "tone at the top" and other management issues.

4        The cases cited by plaintiff do not suggest that resignations and terminations are sufficient

5  to establish scienter in the absence of other allegations connecting the departures to the alleged

6  fraud. *See, e.g.*, *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 (N.D. Cal. 2009)

7  (defendants' departures add "one more piece to the scienter puzzle" where plaintiff alleged that

8  defendants "received critical reports from the Company's auditing firm, and that the revenue

9  detection problems were well known throughout the Company"); *In re Sipex Corp. Sec. Litig.*, No.

10  C 05-00392 WHA, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005) (finding that the Board's

11  adoption of a variety of "house-cleaning" and other remedial measures, including terminations of

12  certain employees, combined with its announcement of a restatement of the company's financials,

13  established "a strong inference that the company itself believes that fraud led to materially

14  misleading financials"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248, 1273-74

15  (N.D. Cal. 2000) (finding strong inference of scienter based on public statements by new CEO

16  stating that executives were fired because they knew or should have known of fraudulent

17  accounting practices).

**e. Holistic Review**

19        None of plaintiff's allegations describe "specific contemporaneous statements or

20  conditions that demonstrate the intentional or the deliberately reckless false or misleading nature

21  of the statements when made." *Metzler*, 540 F.3d at 1066 (quoting *Ronconi*, 253 F.3d at 432); *cf.*

22  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d at 705 (finding overwhelming inference drawn

23  from holistic view of allegations that defendant executives, "[i]n three consecutive quarters, . . .

24  received accurate reports at quarter-end indicating that VeriFone had not met its financial targets"

25  and each time "addressed these 'unacceptable' results by providing [company's supply chain

26  controller] with accounting adjustments necessary to conform results to expectations"). Therefore,

27  even read together, plaintiff's myriad allegations fail to raise an inference of scienter that is at least

28

United States District Court
Northern District of California

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

1    as compelling as the alternative explanation—that whether or not they were good managers, the

2    individual defendants did not engage in fraud.

3       **C.  Adequacy of Internal Controls Claims**

4       Plaintiff fails to allege a material misstatement, scienter, and loss causation with respect to

5    its adequacy of internal controls claims. Plaintiff points to Marvell's Form 10-K for the year ended

6    January 31, 2015, which states: "Based on our evaluation, management has concluded that ***we***

7    ***maintained effective internal control over financial reporting*** as of January 31, 2015 based on

8    the COSO criteria." Compl. ¶ 45 (emphasis in complaint).

9               **1.   Material Misrepresentation**

10      Plaintiff has failed to plead the falsity of any defendants' evaluation of Marvell's internal

11   controls. A "plaintiff must set forth an explanation as to why the statement or omission

12   complained of was false or misleading." *In re GlenFed*, 42 F.3d at 1548. On March 1, 2016,

13   Marvell disclosed the Audit Committee's findings that there were "tone at the top" issues, that

14   there was significant pressure on sales and finance personnel to meet revenue targets, that revenue

15   had been recognized prematurely, and that Marvell lacked a well-structured process for

16   establishing litigation reserves. Compl. ¶¶ 142-44. Although these disclosures indicate that

17   Marvell's controls were not adequate and had in fact failed, none of the Audit Committee's

18   findings "clearly contradict[s]" the statements made by defendants in Marvell's Form 10-Ks—that

19   defendants evaluated the controls and concluded that they were effective. *In re Invision Techs.,*

20   *Inc. Sec. Litig.*, No. C04-03181 MJJ, 2006 WL 538752, at *6 (N.D. Cal. Jan. 24, 2006); *see also*

21   *Morgan v. AXT, Inc.*, No. C 04-4362 MJJ, 2005 WL 2347125, at *15 (N.D. Cal. Sept. 23, 2005)

22   ("Plaintiff has not alleged particularized facts to support his claim that Defendant Young's

23   averments that he had examined the Company's internal disclosure controls and believed they

24   were adequate, were false.").

25               **2.   Scienter**

26      Moreover, plaintiff does not allege facts giving rise to an inference of scienter more

27   compelling than the inference that defendants were simply wrong in their assessment of the

28                                                25

United States District Court
Northern District of California

1   company's internal controls. "Sarbanes–Oxley certification is only probative of scienter if the

2   person signing the certification was severely reckless in certifying the accuracy of the financial

3   statements." *Glazer*, 549 F.3d at 747. An admission that "the controls were inadequate is perhaps

4   an indication of incompetence, but incompetence, even gross incompetence, is no basis for a

5   securities fraud claim." *In re Loudeye Corp. Sec. Litig.*, No. C06-1442MJP, 2007 WL 2404626, at

6   *7 (W.D. Wash. Aug. 17, 2007) (quoting *In re Watchguard Sec. Litig.*, 2006 WL 2927663, at * 10

7   (W.D. Wash. Oct.12, 2006)). Plaintiff has not alleged facts to show that defendants were severely

8   reckless in their assessment of Marvell's internal controls. *See In re Maxwell Techs., Inc. Sec.*

9   *Litig.*, 18 F. Supp. 3d 1023, 1040-41 (S.D. Cal. 2014) ("Plaintiff has not presented the necessary

10  information about accounting principles and internal controls to allow this Court to evaluate

11  whether the individual defendants should have been or must have been aware of the violations.").

12              **3.   Loss Causation**

13          Similarly, plaintiff fails to adequately allege a causal connection between class members'

14  losses and any misstatements as to the adequacy of Marvell's internal controls. As previously

15  discussed, the announcement of an investigation into Marvell's internal controls, "'standing alone

16  and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the

17  pertinent truth of anything, and therefore does not qualify as a corrective disclosure.'" *Lloyd*, 811

18  F.3d at 1209-10 (quoting *Loos*, 762 F.3d at 890 n.3). Plaintiff does not identify any subsequent

19  disclosure that reveals the "truth" about defendants' evaluation of Marvell's internal controls.

20          **D.  Section 20(a) Claims**

21          Plaintiff asserts that defendants acted as controlling persons under section 20(a) of the

22  Exchange Act. Because plaintiff has not adequately alleged a section 10(b) violation, plaintiff's

23  claims under section 20(a) are also dismissed. *See Zucco*, 552 F.3d at 990, 1008 (affirming

24  dismissal of section 20(a) claims where plaintiffs failed to allege violation of section 10(b)). The

25  court does not reach the parties' arguments with respect to plaintiff's allegations that individual

26  defendants were "control persons" within the meaning of the statute.

27

28                                           26

### III.     CONCLUSION

For these reasons, the consolidated complaint is dismissed with thirty days leave to amend.

**IT IS SO ORDERED.**

Dated: October 12, 2016



Ronald M. Whyte
United States District Judge

15-cv-05447-RMW
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FC

United States District Court
Northern District of California