SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
jstigi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310-228-3700
Facsimile:    310-228-3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TAREK C. SORENSEN, Cal. Bar No. 261528
tsorensen@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

Attorneys for THE AUDIT COMMITTEE OF
THE BOARD OF DIRECTORS OF MARVELL
TECHNOLOGY GROUP, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LUNA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARVELL TECHNOLOGY GROUP, LTD., et al.,<br><br>　　　　　Defendants. | Case No. 3:15-cv-05447-WHA<br><br>Assigned to Hon. William Alsup<br><br>**THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF MARVELL TECHNOLOGY GROUP, LTD.'S OPPOSITION TO LEAD PLAINTIFF PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND'S MOTION TO COMPEL DOCUMENTS CONCERNING MARVELL'S AUDIT COMMITTEE INVESTIGATION [DKT. 169]**<br><br>DATE:　　Sept. 21, 2017<br>TIME:　　8:00 a.m.<br>CTRM:　　8, 19th Floor<br>JUDGE:　　Hon. William Alsup |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND RELEVANT BACKGROUND ........................................................5

II.  ISSUES TO BE DECIDED ..................................................................................................7

III. THE COURT SHOULD DENY THE MOTION ...................................................................7

    A.   Plaintiff's Failure to Follow Local Rule 37-2 Requires Denial of the Motion ..........7

    B.   The Sheppard Mullin Work Product Is Privileged/Protected Work Product .............8

    C.   Plaintiff Has Not Shown a Substantial Need For the Sheppard Mullin Work Product or the Inability to Obtain the Equivalent of Said Discovery by Other Means ..................................................................................................................11

    D.   Work Product Protection Has Not Been Waived as to the Sheppard Mullin Work Product ..........................................................................................................12

        1.   The Audit Committee And Marvell Are Not Relying On The Audit Committee's Investigation as a Defense In This Litigation .........................13

        2.   The Presentation of The Audit Committee's Investigation Was Neither Selective Nor Misleading ..................................................................16

    E.   Compelling Production of the Sheppard Mullin Work Product is Not Proportional to the Needs of this Case ......................................................................17

IV.  CONCLUSION .....................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dukes v. Wal-Mart Stores, Inc.*
   2013 WL 1282892 (N.D. Cal. Mar 26, 2013) ................................................................. 13

*Export Development Canada v. E.S.E. Electronics, Inc.*
   2017 WL 2500906 (N.D. Cal. Jun. 9, 2017) ..................................................................... 8

*In re Fresh & Processed Potatoes Antitrust Litig.*
   2014 WL 1413676 (D. Idaho Apr. 11, 2014) .................................................................... 6

*Fujikara Ltd. v. Finisar Corp.*
   2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ..................................................................... 8

*In re Grand Jury Subpoena (Torf)*
   357 F.3d 900 (9th. Cir. 2003) ........................................................................................... 9

*Heriot v. Byrne*
   257 F.R.D. 645 (N.D. Ill. 2009) ..................................................................................... 10

*Hickman v. Taylor*
   329 U.S. 495 (1947) ................................................................................................. 11, 12

*McIntyre v. Main St. & Main Inc.*
   2000 WL 33117274 (N.D. Cal. Sep. 29, 2000) ........................................................ 14, 15

*Oracle America, Inc., v. Innovative Technology Distributors, LLC*
   2011 WL 2559825 (N.D. Cal. Jun. 28, 2011) ................................................................. 16

*SNK Corp. of America v. Atlus Dream Entertainment Co., Ltd.*
   188 F.R.D. 566 (N.D. Cal. 1999) ................................................................................... 15

*Somers v. Digital Realty Trust Inc.*
   2017 WL 2954909 (N.D. Cal. Jul. 11, 2017) ................................................................... 8

*In re Trasylol Products Liability Litig.*
   2009 WL 2575659 (S.D. Fla. Aug. 12, 2009) .................................................................. 9

*In re United Mine Workers of America Employee Benefit Plans Litig.*
   159 F.R.D. 307 (D.D.C. 1994) ........................................................................................ 7

*United States v. Adlman*
   134 F.3d 1194 (2d Cir. 1998) .......................................................................................... 9

*United States v. Alejandro*
   2017 WL 2056019 (C.D. Cal. May 8, 2017) ............................................................ 16, 17

-4-

**Other Authorities**

Federal Rule of Civil Procedure 26(b) .................................................................................... *passim*

Federal Rule of Evidence 502(a) ..................................................................................................13

Norther Distirct of California Civil Local Rule 37-2 ..........................................................6, 7, 8, 17

The Audit Committee of the Board of Directors ("Audit Committee") of defendant Marvell Technology Group, Ltd. ("Marvell") respectfully submits its opposition to lead plaintiff Plumbers and Pipefitters National Pension Fund's Motion to Compel Documents Concerning Marvell's Audit Committee Investigation ("Motion").  It also joins in the opposition filed by Marvell.

## I.    INTRODUCTION AND RELEVANT BACKGROUND

In late August 2015, the Audit Committee retained Sheppard, Mullin Richter & Hampton LLP ("Sheppard Mullin") to advise and assist it in investigating (among other things) certain aspects of Marvell's sales and accounting practices.  (Declaration of John P. Stigi III ("Stigi Decl.") ¶ 2.) The Audit Committee's investigation was prompted by concerns expressed by Marvell's former independent accountants, PricewaterhouseCoopers LLP, that led, within two weeks, to the inability of Marvell to file on a timely basis its Form 10-Q for the second quarter of fiscal year 2016.  (*Id.*) Sheppard Mullin retained KPMG US LLP ("KPMG") to serve as its forensic accounting consultant to assist in the investigation.  (*Id.* ¶ 3.)  Sheppard Mullin (often with KPMG) interviewed witnesses, reviewed documents and drafted internal memoranda, and KPMG prepared accounting analyses on Sheppard Mullin's behalf (collectively, the "Sheppard Mullin Work Product").  (*Id.* ¶ 4.)  The disclosure of the Audit Committee's investigation was, as expected at the outset, followed immediately by the filing of civil lawsuits (including this litigation), as well as an investigation by the Securities & Exchange Commission ("SEC").  (*Id.* ¶ 5.)

The claims that remain in this case relate to alleged "pull-in" transactions.  *See* May 17, 2017 Order (Dkt. No. 138) at 2 n.2.  Specifically, plaintiff alleges that Marvell committed securities fraud during the fiscal quarters ended November 1, 2014, January 31, 2015, and May 2, 2015 by "prematurely recognizing revenue that should have been earned and recognized in the subsequent period." Consolidated Amended Class Action Complaint ("Amended Complaint") (Dkt. No. 104) ¶¶ 3, 30, 44, 60.  Pull-in transactions were one of several issues investigated by the Audit Committee. (Stigi Decl. ¶ 2.)

On March 1, 2016, Marvell publicly disclosed the Audit Committee's conclusions from its investigation.  *See* Dkt. No. 138, at 2, 3.  That same day, Sheppard Mullin, on behalf of the Audit Committee, and as necessitated by the ongoing SEC investigation, presented the conclusions to the

-5-

SEC through use of a PowerPoint presentation (the "Presentation"). (Stigi Decl. ¶ 6.) At the SEC's request, Sheppard Mullin additionally produced certain documents identified by the SEC, many of which were referenced in the Presentation ("SEC Documents"). (*Id.* ¶ 7.)

Plaintiff served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") on the Audit Committee, seeking a broad array of documents. (*See* Stigi Decl. ¶ 8 & Ex. 1.) In its Objections and Responses to Plaintiffs' Subpoena to Produce Documents ("Objections") the Audit Committee objected to the Subpoena and each of its requests on the grounds of attorney-client privilege and the work product doctrine, among others. (*See id.* ¶ 9 & Ex. 2.) Notwithstanding those objections, the Audit Committee produced the Presentation and the SEC Documents to plaintiff. (*Id.* ¶ 10.) Through this Motion plaintiff seeks to additionally compel production of the Sheppard Mullin Work Product, arguing that: (1) documents generated by or shared with Marvell's independent auditors or forensic accountants are not protected by the attorney-client privilege or the work product doctrine; (2) Marvell waived attorney work product protection by referencing the findings of the Audit Committee in the litigation; and (3) Marvel waived attorney work product protection when it produced documents and made a detailed presentation to the SEC.

Plaintiff's Motion should be denied. As a threshold matter, absent from plaintiff's Motion are any of the requirements of Local Rule 37-2, and, as a result, it is impossible to discern the scope of the documents plaintiff seeks or any explanation on a request by request basis of why plaintiff contends there is a justifiable need to invade the core work product of Sheppard Mullin's attorneys in this case, other than that it would like to take a short cut and benefit from Sheppard Mullin's thinking about pull-ins and many other issues not at issue in this case. The Court can and should deny plaintiff's Motion for this reason alone.

More importantly, however, plaintiff's motion should be denied because the Sheppard Mullin Work Product (which includes work done by KPMG at Sheppard Mullin's direction) is protected by the work product doctrine and there has been no waiver. Marvell is not raising the Audit Committee's findings as a defense. The Audit Committee has already produced the Presentation and the SEC Documents that it provided to the SEC to plaintiff. There is no basis under the Federal

1  Rules of Evidence to extend that waiver to work product the Audit Committee did not disclose to
2  the SEC.  For all of these reasons, plaintiff's Motion should be denied.

## II.   ISSUES TO BE DECIDED

1. Should the Motion be denied for plaintiff's failure to comply with N.D. Local Rule 37-2?
2. Is the Sheppard Mullin Work Product privileged and/or protected work product under Rule 26(b)(3)(A)?
3. Has plaintiff met its burden of demonstrating its substantial need for the Sheppard Mullin Work Product and the inability to obtain its equivalent by other means to overcome the work product protection?
4. Has plaintiff met its burden of demonstrating a waiver of attorney-client privilege and work product protection over the Sheppard Mullin Work Product?
5. Does plaintiff meet its burden of demonstrating the relevance and proportionality of requiring production of the Sheppard Mullin Work Product?

## III.  THE COURT SHOULD DENY THE MOTION

Federal Rule of Civil Procedure 26(b)(2) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  The thrust of plaintiff's Motion is that Marvell cannot claim privilege as to the Sheppard Mullin Work Product because Marvell and the Audit Committee's actions have waived said privilege, and plaintiff should therefore be able to obtain Sheppard Mullin attorney's and their consultants' thoughts and mental impressions.  As an initial matter, plaintiff's Motion should be denied on procedural grounds.  In any event, none of Marvell's or the Audit Committee's actions have waived the Audit Committee's (or Sheppard Mullin's) attorney-client privilege or work product objections protections and plaintiff's Motion should be denied for this reason as well.

### A.   Plaintiff's Failure to Follow Local Rule 37-2 Requires Denial of the Motion

A motion to compel compliance with a subpoena must "set forth each request in full, followed immediately by the objections and/or responses thereto.  For each such request, the moving

-7-

1  papers must detail the basis for the party's contention that it is entitled to the requested discovery
2  and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are
3  satisfied." N.D. Cal. Civ. L. R. 37-2; *see Fujikara Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3
4  (N.D. Cal. Oct. 5, 2015).  A motion should be denied if it fails to comply with these basic procedural
5  requirements.  *E.g.*, *Somers v. Digital Realty Trust Inc.*, 2017 WL 2954909, at *8 (N.D. Cal. Jul. 11,
6  2017) (denying motion to compel based on plaintiff's failure to comply with N.D. Cal. Civ. L. R.
7  37-2); *Export Development Canada v. E.S.E. Electronics, Inc.*, 2017 WL 2500906, at *2 (N.D. Cal.
8  Jun. 9, 2017) (improper to "entertain any motion to compel" compliance with Fed. R. Civ. P. 45
9  subpoena that "does not address the[] requirements" of N.D. Cal. Civ. L. R. 37-2).

10  Here, plaintiff's Motion failed to comply with any of the procedural requirements of Local
11  Rule 37-2.  It does not set out the requests at issue, or the Audit Committee's responses and
12  objections thereto; it does not state why the documents are relevant, or attempt to explain why each
13  request is proportional to the needs of the case.  Plaintiff's Motion illustrates why requiring compli-
14  ance with Rule 37-2 is imperative; although the Motion cherry picks discrete types of documents it
15  seeks to make its requests sound relevant and targeted, plaintiff's requests are vastly overbroad and
16  not proportional the needs of this case.  As but one example, plaintiff seeks "all *documents or data*
17  *provided by Marvell* or its employees to the Audit Committee" (Mot. at 8:15 (emphasis in original)),
18  even though the Audit Committee's investigation was wide-ranging and not limited to pull-ins or
19  even to revenue recognition issues.  Although plaintiff agreed to narrow its requests in meet-and-
20  confer discussions, this narrowing is not reflected in plaintiff's Motion, and it is certainly not
21  reflected in its [Proposed] Order as noted in Marvell's Opposition.  Because of plaintiff's failure to
22  set forth this information in the manner required by Rule 37-2, it is impossible for the Audit
23  Committee, Sheppard Mullin, or this Court to determine the scope of what plaintiff seeks.

24  Thus, although the Motion could be denied on the merits as set forth below, it should be
25  denied for these flaws alone.

26  **B.    The Sheppard Mullin Work Product Is Privileged/Protected Work Product**

27  The federal work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3).
28  It states, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. Rule Civ. P. 26(b)(3). In the Ninth Circuit, materials qualify for protection under the work-product doctrine if they have "two characteristics: (1) they must be 'prepared in anticipation of litigation or trial,' and (2) they must be prepared 'by or for another party or for that other party's representative.'" *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 907 (9th. Cir. 2003) (citing *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989)).

As to the first prong, a document is prepared "in anticipation of litigation" if, in "light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis added); *see Grand Jury Subpoena (Torf)*, 357 F.3d at 908 (applying the "because of" standard of the Second Circuit). As long as documents are created "because of" litigation, the work-product doctrine protects those documents even if they were created for both litigation and business purposes, *i.e.*, dual-purpose documents. *Adlman*, 134 F.3d at 1202 ("Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it is created in order to assist with a business decision."). Moreover, a document may be prepared in anticipation of litigation even though at the time the document was prepared no actual litigation existed. *See Adlman*, 134 F.3d at 1195. Finally, a document is "prepared in anticipation of litigation even if the litigation that caused its preparation was investigation by a government agency, and not a traditional civil suit," because "investigation by a government agency often represents more than a remote possibility of future litigation and provides a reasonable grounds for anticipating litigation." *In re Trasylol Products Liability Litig.*, 2009 WL 2575659, at *5 (S.D. Fla. Aug. 12, 2009).

Here, the Sheppard Mullin Work Product created by Sheppard Mullin and its consultant KPMG was created in anticipation of litigation and in fact almost entirely *during* the pendency of litigation. When the Audit Committee became aware of the possibility of accounting concerns, it immediately retained Sheppard Mullin to assist in an investigation *both* because of the need to meet its regulatory filing requirements *and* the obvious threat of litigation (both private and by the SEC)

-9-

1  that would almost certainly result (as it did within weeks).  (Stigi Decl. ¶¶ 2, 5.)  This litigation, as
2  well as an SEC investigation, began promptly thereafter and was ongoing at the time that the Audit
3  Committee and its representatives were conducting the bulk of their work, which was not completed
4  until March 2016.  (*Id.* ¶¶ 5-6.)  That Sheppard Mullin made a presentation to the SEC regarding its
5  findings (which, as noted above, the Audit Committee has produced to plaintiff) confirms that the
6  Audit Committee's investigation was conducted in anticipation of litigation and a SEC investiga-
7  tion.  Plaintiff's unsubstantiated assertion to the contrary (*see* Mot. 2:23-3:1) does not rebut the
8  Audit Committee's work product objection.[1]

9  As to the second prong, the Sheppard Mullin Work Product was created by the Audit
10 Committee's representatives or for the Audit Committee's representatives.  Most of the documents,
11 including internal witness interview memoranda and internal Sheppard Mullin analyses were
12 created by Sheppard Mullin attorneys, specifically listed as representatives under Rule 26(b)(3).
13 (*See* Stigi Decl. ¶ 4.)  Other documents were created at Sheppard Mullin's behest by KPMG.  (*Ibid.*)
14 An accounting consultant serves as a party's representative under Fed. R. Civ. P. 26(b)(3) when it
15 prepares documents "as the agent of the party or the party's attorney."  *Heriot v. Byrne*, 257 F.R.D.
16 645, 664 (N.D. Ill. 2009) (collecting cases).  As plaintiff's Amended Complaint recognizes, KPMG
17 was retained by Sheppard Mullin to assist it with the investigation as a forensic investigator.[2]  (*See*
18 *generally* Dkt. 104, ¶ 131 n.38; *see also* Stigi Decl. ¶ 3.)  Therefore, KPMG was acting as Sheppard
19 Mullin's agent when it prepared its analyses.  (*See generally* Stigi Decl. ¶ 4.)

---

[1] Plaintiff's reliance upon district court cases from Maryland and Puerto Rico (*see* Mot. at 3:2-8) to support their throwaway and unsupported statement that the investigation was not conducted in anticipation of litigation are unavailing.  Not only were the documents at issue here created by Sheppard Mullin and its agents rather than the corporate officers of Marvell, but, as stated *supra*, the Ninth Circuit recognizes dual-purpose documents as protected under the attorney work product doctrine so long as they were created because of the prospect of litigation.

[2] Because KPMG was not hired as an independent auditor, but instead was hired as Sheppard Mullin's consultant and agent, plaintiff's argument that "work performed by an independent auditor in the scope of its audit is not subject to a claim of privilege" is inapposite.  (*See* Mot. at 7:13-8:7.)

1    Thus, because the Sheppard Mullin Work Product was created in anticipation of litigation
2 either by the Audit Committee's representatives or for the Audit Committee's representatives it
3 qualifies as work product under Federal Rule of Civil Procedure 26(b)(3) and is not discoverable.

4 **C.  Plaintiff Has Not Shown a Substantial Need For the Sheppard Mullin Work Product or the Inability to Obtain the Equivalent of Said Discovery by Other Means**

6    It has long been the rule that an attorney's work product cannot be subpoenaed absent
7 "adequate reasons to justify production."  *Hickman v. Taylor*, 329 U.S. 495, 512 (1947).  Federal
8 Rule of Civil Procedure 26(b)(3)(A)(ii) has codified that rule as to all qualified work product no
9 matter who the author, by requiring that work product not be compelled unless the requesting party
10 shows a "substantial need" and the inability, "without undue hardship, [to] obtain their substantial
11 equivalent by other means."

12    Here, plaintiff has not even attempted to make such a showing.  Plaintiff's silence is telling.
13 It plainly does not have "substantial need" of the Sheppard Mullin Work Product, as whether the
14 Audit Committee, Sheppard Mullin and KPMG did a good or bad job in interviewing witnesses,
15 analyzing accounting information and reaching conclusions (as potentially reflected in the Sheppard
16 Mullin Work Product) is simply not at issue in this case.  Nor does plaintiff suggest that any witness
17 has become unavailable.  Rather, plaintiff is more than capable of obtaining the equivalent of the
18 Sheppard Mullin Work Product by other means as it can itself depose the witnesses interviewed by
19 Sheppard Mullin in the course of the investigation and itself hire the services of a forensic
20 accountant.

21    Plaintiff's attempt to compel production of the Sheppard Mullin Work Product is particularly
22 troubling with respect to those documents authored by Sheppard Mullin attorneys, including Shep-
23 pard Mullin's internal witness interview memorandum and internal legal analyses because these
24 documents naturally contain the *highly-protected* "mental impressions" of Sheppard Mullin attor-
25 neys.  *See Hickman*, 329 U.S. at 510; (*see also* Stigi Decl. ¶ 4).  As stated above, and noted in
26 *Hickman*, the "facts" obtained by Sheppard Mullin in these interviews can just as easily be obtained

by plaintiff's counsel.[3]  *Hickman*, 329 U.S. at 513.  Instead, the sole rationale for requiring production of these types of documents here would be to permit plaintiff's counsel to use the work product of Sheppard Mullin attorneys to help them prepare their case and "make sure that [they] ha[ve] overlooked nothing."  *See id*.  This remains as improper today as it was in 1947 when *Hickman* was decided.

Thus, plaintiff has failed to establish its entitlement to the Sheppard Mullin Work Product under Rule 26(b)(3)(A)(ii) and the Motion should be denied.

### D. Work Product Protection Has Not Been Waived as to the Sheppard Mullin Work Product

Plaintiff argues that "Marvell and its Audit Committee's '[w]aiver of work product to the SEC also waives work product to others.'"  (Mot. at 6:7-9 (quoting *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 208, 211 (N.D. Cal. 1992))).  To be clear, neither Marvell nor the Audit Committee has withheld from plaintiff any documents or information disclosed to the SEC.  Though plaintiff's Motion suggests otherwise, the Audit Committee has already produced to plaintiff the Presentation and the SEC Documents, and Marvell produced the entire SEC Production, which consisted of nearly two million pages, with its initial disclosures.  (*Stigi Decl.* ¶ 10.)

Plaintiff takes its waiver claim several steps further, however, contending that the Audit Committee also waived work product protection "as to the factual underpinnings of its investigation" by producing its conclusions and documents to the SEC. (Mot. at 5:7-10.)  Specifically, plaintiff contends that "[t]he communication of the details and substance of the Quan and other witness

---

[3] Plaintiff's reliance upon *Hickman* for the proposition that facts obtained during an interview are not protected by the attorney client privilege or work product doctrine, and its assertion that the presence of non-Sheppard Mullin personnel in the room during some interviews has waived the attorney-client privilege as to those interviews, completely misses the point. (*See* Mot. at 5:17-23 n.4.)  The Audit Committee's argument is not that its internal memoranda, interview notes, and analyses are attorney-client privileged communications (although it is not waiving that objection to their production as some certainly qualify as privileged communications as well), nor that the facts obtained in witness interviews are themselves privileged.  Rather, the Audit Committee objects to the production of these materials because they contain the mental impressions of Sheppard Mullin's attorneys and are otherwise protected work product under Rule 26(b)(3)(A).

1  interviews to the SEC constituted a waiver of any existing work product protection for the under-
2  lying documents summarizing the details provided to the Audit Committee by these crucial fact
3  witnesses." (Mot. at 6:22-25.)  Plaintiff provides no authority for its broad waiver argument. Nor
4  can it.

5  Under Federal Rule of Evidence 502(a), disclosing communications or information pro-
6  tected by the attorney-client privilege or work-product doctrine to a federal office or agency (such
7  as the SEC) waives protections applicable to undisclosed communications or information "only if:
8  (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information
9  concern the same subject matter; and (3) they ought in fairness to be considered together." This rule
10 was enacted to address the widespread concern that any disclosure of protected material would
11 "operate as a subject matter waiver of all protected communications or information." 2007 Adv.
12 Comm. Notes to Fed. R. Evid. 502.

13 Two of the elements required under Rule 502(a)(3) for the broader waiver plaintiff seek are
14 lacking here:  (1) Marvell's waiver is not intentional because it is not relying upon the Audit
15 Committee's conclusions as a defense in this litigation, so it is not using the investigation as a sword
16 and a shield (as discussed in Marvell's Opposition and *infra*); and (2) the materials need not in
17 fairness be considered together because neither the Audit Committee nor Marvell selectively
18 presented the conclusions of the Audit Committee's investigation to plaintiff or the SEC in a
19 misleading manner.  Accordingly, the Court should find that the waiver by disclosure to the SEC
20 does not extend beyond the disclosed (and already produced) materials.

21         **1.**        **The Audit Committee And Marvell Are Not Relying On The Audit Committee's Investigation as a Defense In This Litigation**
22

23 Even if a party waives work product or privilege by disclosing portions of an otherwise
24 confidential and protected communication, the waiver does not extend to undisclosed portions of
25 the communication if the party does not rely on the protected communication in litigation. *See, e.g.*,
26 *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *9 (N.D. Cal. Mar 26, 2013). This is true
27 even if the privilege holder raises an affirmative defense that appears to rely upon protected
28 information, because privilege and work product are still not waived as to any protected materials

the privilege holder agrees it will not use. In *McIntyre v. Main St. & Main Inc.*, 2000 WL 33117274, at **1-3 (N.D. Cal. Sep. 29, 2000) (cited by plaintiff), the defendant conducted an internal investigation and also hired outside counsel to perform and external investigation after receiving notice of plaintiff's claims. *Id.* at **1-2. Plaintiff argued defendant waived the attorney-client privilege and work product protections applicable to its investigations by raising the adequate investigation affirmative defense. *Id.* at *3. The court rejected these arguments. With respect to the internal investigation, the court refused to find waiver, even though defendant wrote plaintiffs a letter that provided "considerable detail regarding defendant's findings of fact and conclusions," because defendant wrote the letter for purposes of responding to a settlement demand. *Id.* at *4. The court also refused to find that defendant waived protections applicable to its external investigation because defendant indicated it would not further rely on the external investigation in the litigation against plaintiffs. *Id.* at *5.

Here, neither Marvell nor the Audit Committee is relying on Audit Committee's conclusions as a defense in this litigation. Rather, Marvell cited to the investigation only to address plaintiff's misleading and selective reference to the investigation in the Amended Complaint. Specifically, plaintiff cited to portions of the Audit Committee conclusions in the Amended Complaint but cherry-picked those portions of the Audit Committee's conclusions that provided the best soundbites, and as a result presented those conclusions in an incomplete and misleading manner. *See e.g.,* Dkt. No. 104 ¶¶ 7, 37, 52, 127, 134, 141, 145. In response, Marvell was required to address the Audit Committee's actual conclusions in its Motion to Dismiss, stating, "[t]he Amended Complaint relies almost entirely on Marvell's Audit Committee findings, but the Audit Committee concluded there was no fraudulent activity, that Marvell's disclosures about revenues were not misleading, that revenue for most pull-in transactions was properly recognized . . . , and that there was no lack of validity in the underlying transactions." Marvell's Motion to Dismiss (Dkt. No. 116) at 11-12.

This counterpoint would not have been necessary if plaintiff had not first misleadingly quoted selective portions of the Audit Committee's conclusions in its Amended Complaint. More importantly, pointing out that some of the facts alleged in the Amended Complaint are presented in

a misleading manner *does not* equate to asserting the Audit Committee's conclusions as a defense.[4] As emphasized in Marvell's Opposition, the key question is whether Marvell intends to use the Audit Committee's conclusions as a defense (*see McIntyre*, 2000 WL 33117274, at *11); it has stated affirmatively that it will not unless plaintiff attempts to rely on misleading, incomplete statements of those conclusions.  Meanwhile, as the Court (Whyte, J.) has noted, even if Marvell had the intention to rely on the Audit Committee's conclusions to rebut plaintiff's evidence (it does not), what the Audit Committee concluded about the events in question *after the fact* is not dispositive.  *See* October 12, 2016 Order (Dkt. No. 98) at 20, 21.  Marvell cannot (and has stated it will not) point to the Audit Committee's hearsay conclusions *in March 2016* as proof that securities fraud did not occur.

Plaintiff also contends that "because defendants have each asserted a good faith reliance on legal and financial professionals defense [citations], defendants have also waived any privilege as to the subject matter of that advice."  (Mot. at 5:24-28.)  The good faith referenced obviously relates to contemporaneous advice of accountants and others approving revenue-related disclosures for the three quarters at issue; it cannot logically have anything to do with the Audit Committee conclusions or the Sheppard Mullin Work Product created many months later.  Because the Audit Committee investigation did not end or even begin until months *after* the last alleged false statement was made, Marvell is not, and could not possibly be, relying on the Audit Committee findings finalized in March 2016 to justify revenue recognition and disclosure decisions made no later than  June 2015.

Finally, none of the authority cited by plaintiff (*see* Mot. at 3:17-5:4; 5:24-28) contemplates a subject matter waiver where the privilege holder has not relied on the protected materials in the litigation; those cases are beside the point once that central percept is removed as several of them make clear.  *See*, *e.g.*, *SNK Corp. of America v. Atlus Dream Entertainment Co., Ltd.*, 188 F.R.D. 566, 574-76 (N.D. Cal. 1999) (in malicious prosecution action where defendant alleged reliance on

---

[4] Plaintiff argues to the contrary that Marvell has relied upon the Audit Committee's conclusions and asserted them as an affirmative defense.  However, notably absent from the Motion is a citation to the record supporting plaintiff's assertion that Marvell relied upon the Audit Committee's conclusions to support an affirmative defense.  This is because when the documents themselves are reviewed it is clear that Marvell is not relying upon the Audit Committee's conclusions in any way.

advice of counsel as an affirmative defense, fairness favored allowing plaintiff discovery to test the defense except where work product materials would "have minimal, if any, relevance to the issues raised by Atlus's advice of counsel defense or any claim in this case"; in that case, "the policies and values underlying the preservation of the attorney-client privilege and work product doctrine outweigh any need . . . to allow [plaintiff] to discover privileged information"); *Oracle America, Inc., v. Innovative Technology Distributors, LLC*, 2011 WL 2559825, at \*\*1-2 (N.D. Cal. Jun. 28, 2011) (directing privilege holder to disclose any protected materials it sought to rely on in the litigation, but allowing privilege holder to "preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition"); *In re Fresh & Processed Potatoes Antitrust Litig.*, 2014 WL 1413676, at \*\*7-8 (D. Idaho Apr. 11, 2014) (recognizing that a defendant waives privilege by putting the advice of counsel "'at issue' . . . only if the advice of counsel is truly at issue vis-à-vis the defendant's affirmative defenses" and "the Court [should] not order production of the withheld documents" defendants have not put at issue).

### 2. The Presentation of The Audit Committee's Investigation Was Neither Selective Nor Misleading

A second requirement for the Court to find a broader waiver is also missing: the waiver can be extended to undisclosed materials only if fairness also requires that result. Fed. R. Evid. 502(a)(3). Plaintiff does not argue that the Audit Committee's presentation to the SEC was selective or misleading or otherwise claim that fairness requires that result. In fact the opposite is true here. For example, it is unfair to extend the waiver beyond the disclosed information where the disclosure included protected information "that [was] 'unhelpful' to [the disclosing party's] position." *United States v. Alejandro*, 2017 WL 2056019, at \*4 (C.D. Cal. May 8, 2017).

In *Alejandro*, the defendants moved to suppress evidence from a purportedly unlawful search. *Id*. at \*1. After the government produced discovery detailing credibility concerns (including a note from one of the United States Attorneys who indicated she believed the arresting deputy "had committed perjury and lied"), the defendants subpoenaed two United States Attorneys for testimony concerning the truthfulness of the deputy. *Id*. at \*\*1, 3. The government moved to quash the subpoena. Prior to the hearing, the court examined the government's documents and found that the

government did not make "an incomplete disclosure in order to gain an unfair advantage." *Id*. at *4. Instead, the government "disclosed privileged work product that [was] *unfavorable* to its position." *Id*. (emphasis in original). The court noted that work product waivers "should be limited to those cases where a party has cherry-picked *favorable* materials to disclose while holding back unfavorable materials." *Id*. (emphasis added). Because "[n]othing in the Government's production of documents [was] one-sided," the court refused to find a subject matter waiver. *Id*. The same result occurred in *In re United Mine Workers of America Employee Benefit Plans Litig*., where the court refused to find subject matter waiver based on the disclosure of documents that were "unhelpful to plaintiffs' position." 159 F.R.D. 307, 312 (D.D.C. 1994). The court held that a subject matter waiver in those circumstances "would provide the defendants with a substantial strategic windfall" and "undermine the adversary system rather than . . . promote it." *Id*.

Here, the same rationale is applicable. The Audit Committee did not "cherry-pick" the information it disclosed to the SEC. Rather, as plaintiff acknowledges throughout the Amended Complaint (*e.g*., Dkt. 104 ¶¶ 7, 37, 52, 127, 134, 141, 145), the Audit Committee conclusions included material "that [was] *unfavorable* to [Marvell's] position." *See generally Alejandro*, 2017 WL 2056019, at *4 (emphasis in original). The Audit Committee's production to both the SEC and plaintiff was neither selective nor one-sided. Accordingly, the Court cannot order the production of work product materials not disclosed to the SEC because to do so would result in a "substantial strategic windfall" to plaintiff. *See United Mine Workers*, 159 F.R.D. at 312.

\*       \*       \*

Thus, plaintiff's argument that the attorney-client and/or work product privilege has been waived is unfounded and the Motion should be denied.

### E. Compelling Production of the Sheppard Mullin Work Product is Not Proportional to the Needs of this Case

Finally, Rule 26(b)(2)'s discovery standard contains a proportionality requirement. Under Local Rule 37-2, plaintiff was required to address the proportionality of its request for the Sheppard Mullin Work Product in light of the facts and circumstances of this case. Plaintiff failed to do so for good reason. The Amended Complaint does *not* include a claim challenging any aspect of the

Audit Committee's investigation or Marvell's disclosures related thereto. Rather, the claims remaining in this case relate solely to whether the alleged pull-ins resulted in misleading statements being made to investors with scienter in violation of the securities laws. To prove its claims against Marvell, plaintiff will need to prove that the statements at issue were misleading to investors *at the time that they were made* (at the latest May 2015) and that Marvell's officers knew or were deliberately reckless in not knowing of the misleading nature of their statements and the effect they would have on investors *at the time that they were made* (again, May 2015). This type of contemporaneous evidence is what is required in securities class actions because fraud-by-hindsight is not actionable. Thus, to the Audit Committee's best knowledge, all of the documents selected for review by Sheppard Mullin and KPMG, to the extent relevant and not privileged, are available from Marvell, and plaintiff has the ability to take the depositions of all of those individuals interviewed by Sheppard Mullin and KPMG. (*See* Stigi Decl. ¶ 10.) Requiring the production of the Sheppard Mullin Work Product in addition would be out of proportion to the needs of the case.

## IV.   CONCLUSION

For the foregoing reasons, the Audit Committee respectfully requests that the Court deny the Motion.

Dated: August 30, 2017                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: ____*/s/ John P. Stigi III*____
JOHN P. STIGI III
TAREK C. SORENSEN
Attorneys for
THE AUDIT COMMITTEE OF
THE BOARD OF DIRECTORS OF
MARVELL TECHNOLOGY GROUP, LTD.