ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
    – and –
JONAH H. GOLDSTEIN (193777)
SCOTT H. SAHAM (188355)
MATTHEW I. ALPERT (238024)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jonahg@rgrdlaw.com
scotts@rgrdlaw.com
malpert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LUNA, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  vs.<br><br>MARVELL TECHNOLOGY GROUP, LTD., et al.,<br><br>  Defendants. | Case No. 3:15-cv-05447-WHA<br><br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS CONCERNING MARVELL'S AUDIT COMMITTEE INVESTIGATION<br><br>DATE: September 21, 2017<br>TIME: 8:00 a.m.<br>CTRM: 8, 19th Floor<br>JUDGE: Hon. William Alsup |

**[REDACTED]**

1304489_1

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION .................................................................................................. 1 | |
| II. | THE COMPANY'S CONTINUED OFFENSIVE UTILIZATION OF THE AUDIT COMMITTEE'S FINDINGS WAIVED ANY WORK PRODUCT OR PRIVILEGE PROTECTION ................................................................................. 3 | |
| III. | MARVELL'S BOARD IS NOT A LEGAL ENTITY DISTINCT FROM MARVELL ............................................................................................................... 9 | |
| IV. | BECAUSE PLAINTIFF'S MOTION EXPRESSLY SEEKS ONLY A FINDING OF WAIVER AND THE COMPANY FAILED TO PRODUCE A PRIVILEGE LOG LOCAL RULE 37-2 IS INAPPLICABLE ................................................... 10 | |
| V. | PLAINTIFF IS NOT SEEKING THE MENTAL IMPRESSIONS OF LEGAL COUNSEL ............................................................................................................ 11 | |
| VI. | CONCLUSION .................................................................................................... 12 | |

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA — - i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
   No. 15-cv-03424-JCS, 2016 U.S. Dist. LEXIS 179966
   (N.D. Cal. Dec. 29, 2016) ..................................................................................................4

*Chia v. Cambra*,
   281 F.3d 1032 (9th Cir. 2002),
   *vacated on other grounds sub nom.*,
   538 U.S. 902 (2003) ..........................................................................................................8

*Curry v. Hansen Med., Inc.*,
   No. C 09-5094 CW, 2012 U.S. Dist. LEXIS 112449
   (N.D. Cal. Aug. 10, 2012) ..................................................................................................9

*Ellis v. Bradbury*,
   No. C-13-1266 MMC, 2013 U.S. Dist. LEXIS 127580
   (N.D. Cal. Sept. 6, 2013) ...................................................................................................9

*In re Bartoni-Corsi Produce*,
   130 F.3d 857 (9th Cir. 1997) ..............................................................................................9

*In re Weatherford Int'l Sec. Litig.*,
   No. 11 Civ. 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 176278
   (S.D.N.Y. Dec. 16, 2013) .................................................................................................11

*McIntyre v. Main St. & Main Inc.*,
   No. C-99-5328 MJJ (EDL), 2000 U.S. Dist. LEXIS 19617
   (N.D. Cal. Sept. 29, 2000) .........................................................................................4, 5, 7

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
   54 F.3d 1424 (9th Cir. 1995) ..............................................................................................9

*Wadler v. Bio-Rad Labs., Inc.*,
   212 F. Supp. 3d 829 (N.D. Cal. 2016) ...........................................................................7, 8

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17-cv-00939-WHA (JSC), 2017 U.S. Dist. LEXIS 88411
   (N.D. Cal. June 8, 2017) ..................................................................................................11

*Waymo LLC V. Uber Techs., Inc.*,
   No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 132596
   (N.D. Cal. Aug. 18, 2017) .............................................................................................2, 3

*Williamson v. United States*,
   512 U.S. 594 (1994) ...........................................................................................................8

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING
MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - ii -

|   | **Page** |
|---|---|

**STATUTES, RULES AND REGULATIONS**

Northern District of California, Civil Local Rules
    Local Rule 37-2 ........................................................................................................... 3, 10

Federal Rules of Evidence
    Rule 502(a) ..................................................................................................................... 11
    804(b)(3) ........................................................................................................................... 9

Federal Rules of Civil Procedure
    Rule 26 ............................................................................................................... 1, 4, 5, 6
    Rule 26(g) .......................................................................................................................... 5

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING
MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - iii -

## I. INTRODUCTION

Despite defendant Marvell and its Audit Committee's (collectively the "Company") attempts to obfuscate the core issue presented, Plaintiff's motion still boils down to one question: Did the Company, by repeatedly raising the Audit Committee's failure to find fraud as a defense, *waive* its right to shield from discovery fact-based documents (including interview summaries and accounting work papers) that allegedly support this finding? The answer is a resounding "yes" as the Company has and will most certainly continue to use the Audit Committee's self-serving finding of no fraud as a key defense and thus has waived any work product or privilege protection. The Company's assertion that "Marvell cannot (and has stated it will not) point to the Audit Committee's hearsay conclusions in March 2016 as proof that securities fraud did not occur" is plainly contradicted by the record in which the Company affirmatively:

- questioned the executive director of the plaintiff at her August 22, 2017 deposition regarding whether she was "aware that the audit committee found no evidence of any fraud," or that the Audit Committee found "that most revenue related to pull-in transactions was properly recorded" (Dkt. No. 175-2 (Ex. 1, Inscoe Depo.) at 112:16-20, 113:4-6);

- listed in its Rule 26 Disclosures witnesses including the defendant CEO who the Company identified as having specific knowledge of and could testify to the finding of the Audit Committee;

- disclosed the entirety of the Audit Committee investigation, including witness interviews to its new auditor Deloitte, who relied on the Audit Committee investigation in blessing Marvell's financials, an act that is at the heart of the Company's defense to this case. Lead Plaintiff Plumbers and Pipefitters National Pension Fund's Motion to Compel Documents Concerning Marvell's Audit Committee Investigation and Memorandum of Points and Authorities in Support Thereof (Dkt. No. 169) ("Motion"), Ex. 2;

- relied upon the Audit Committee's finding at the Motions to Dismiss to argue that there was no fraudulent activity, the pull-in transactions were valid and did not impact the revenue received by the Company. May 4, 2017 Transcript of Proceedings ("Hrg. Tr.") at 29:12-18; 41:2-16; and

- presented the Audit Committee's findings in a 140-page presentation to the Securities and Exchange Commission ("SEC"). Motion, Ex. 1 at SMRH_LUNA_0000093.

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - 1 -

1   None of these direct and offensive uses of the Audit Committee's findings as a sword against
2   Plaintiff's securities fraud claims are immunized or somehow justified by Marvell's excuse that it
3   needed to do so to complete the record or correct Plaintiff's purportedly misleading use of the Audit
4   Committee's specific factual admissions that: (1) the Company used undisclosed side agreements,
5   extended payment terms and other concessions to facilitate end-of-quarter pull-in transactions; (2)
6   such concessions violated Marvell's own revenue recognition policy; and (3) the pull-in transactions
7   were the result of significant pressure by senior management to meet revenue targets. *See* Marvell
8   July 21, 2016 10-K (Dkt. No. 117-10, Ex. 10) at 111-13; Defendant Marvell Technology Group,
9   Ltd.'s Opposition to Lead Plaintiff Plumbers and Pipefitters National Pension Fund's Motion to
10  Compel Documents Concerning Marvell's Audit Committee Investigation (Dkt. No. 175) ("Marvell
11  Opp.") at 3; The Audit Committee of the Board of Directors of Marvell Technology Group, Ltd.'s
12  Opposition to Lead Plaintiff Plumbers and Pipefitters National Pension Fund's Motion to Compel
13  Documents Concerning Marvell's Audit Committee Investigation (Dkt. No. 174) ("Audit Committee
14  Opp.") at 14. As this Court has explicitly recognized, the "slick practice" of using privilege as a
15  sword and a shield cannot be countenanced, and as a result, plaintiff is entitled to the documents that
16  support or underlie the Audit Committee's finding. *See Waymo LLC V. Uber Techs., Inc.*, No. C 17-
17  00939 WHA, 2017 U.S. Dist. LEXIS 132596, at *8-*9 (N.D. Cal. Aug. 18, 2017) (Alsup, J.).

18  Seeking to ignore the plain evidence demonstrating that the Company blatantly waived any
19  work product or privilege protection, the vast majority of the Audit Committee's Opposition seeks to
20  address whether or not these materials were at one time in the past protected by the work product
21  doctrine or the attorney-client privilege. These arguments completely fail to address the only
22  question before this Court as plaintiff's motion specifically stated that "[r]egardless of the validity of
23  Marvell's privilege assertion, ***the court need not reach the issue for the purposes of resolving this***
24  ***motion*** as any such privilege or work product claim has already been ***waived***." Motion at 3.[1]

---

[1] Indeed the "issue presented" to the Court for resolution in plaintiff's motion is "[w]hether Marvell and its Audit Committee have ***waived*** any attorney-client privilege and/or work product protection that may have once covered documents including ***interview summaries*** and ***accounting work papers*** reviewed or prepared as part of Marvell's Audit Committee investigation of internal

The Audit Committee's additional assertion that Plaintiff did not comply with Local Rule 37-2 is misplaced as the pending motion is not "a motion to compel further responses" but a motion seeking a ruling that the Company waived any privilege or work product protection that may have at one time applied to materials that form the basis for the Audit Committee's finding. It was for this very reason that the Audit Committee chose not to go through what it claimed would be a burdensome effort to provide a privilege log to the Plaintiff as is required by paragraph 18 of this Court's Standing Order. The Audit Committee's failure to provide a privilege log makes clear that it was acutely aware that an examination of documents by specific request would not be necessary or possible as it had not revealed with specificity which particular documents it was withholding.[2]

## II. THE COMPANY'S CONTINUED OFFENSIVE UTILIZATION OF THE AUDIT COMMITTEE'S FINDINGS WAIVED ANY WORK PRODUCT OR PRIVILEGE PROTECTION

Marvell's counsel's questioning at a recent deposition confirms that the Company is continuing to utilize the findings of its Audit Committee as a sword and a shield. On August 22, 2017, Marvell examined the Executive Director of the Plaintiff at her deposition as follows:

> Q. Are you aware that the audit committee found that most revenue related to pull-in transactions was properly recorded?
>
> \* \* \*
>
> Q. Are you aware that the audit committee found no evidence of fraud?

Dkt. No. 175-2 (Ex. 1, Inscoe Depo.) at 112:16-113:6. This questioning further illustrates that Marvell seeks to shield from discovery the basis for its Audit Committee's findings while simultaneously asserting these findings as a defense to this case. Marvell cannot have it both ways and the continued assertion of this defense constitutes a further waiver of the work product and attorney-client privilege. *Cf. Waymo*, 2017 U.S. Dist. LEXIS 132596, at *8-*9 (rejecting "slick

---

control issues including pull-in and extended payment term transactions." Motion at 1. (Here, as elsewhere, emphasis has been added, or citations omitted, unless otherwise noted.)

[2] Plaintiff acquiesced to Marvell's Audit Committee's request to resolve this matter in absence of a privilege log because it believed the most efficient and expeditious resolution of this dispute – in a case with a December 29, 2017 discovery cutoff – would be to obtain a ruling regarding waiver which could be applied to all of the pending discovery that has been thwarted based upon the Company's claim of work product or privilege.

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - 3 -

practice" of using privilege as interchangeable sword and shield whenever "convenient" or "advantageous" for the withholding party); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2016 U.S. Dist. LEXIS 179966, at *32 (N.D. Cal. Dec. 29, 2016) ("Where Symmetry presented its counsel's investigation and legal conclusion as a sword . . . it cannot also rely on the work product doctrine as a shield to bar discovery of documents prepared or gathered during that investigation and that serve as a basis for that legal conclusion, nor other material related to the same subject matter.").

Under the "sword and shield" or subject-matter waiver rule, Marvell has waived any work product or attorney-client privilege protections otherwise covering its Audit Committee's fraud investigation. Motion at 3-5. In an attempt to avoid the clear waiver that has already occurred, Marvell and its Audit Committee rely heavily on a decision from this District, *McIntyre v. Main St. & Main Inc.*, No. C-99-5328 MJJ (EDL), 2000 U.S. Dist. LEXIS 19617, at *8-*11 (N.D. Cal. Sept. 29, 2000) ("*McIntyre*").[3] Under the heading, "Waiver of the Attorney-Client Privilege and Work Product Doctrine," the *McIntyre* court set forth the applicable rule: "Plaintiffs are correct that defendant cannot rely on the investigation by outside counsel as part of its defense, while at the same time shielding the investigation from discovery. ***Any use of the investigation in its defense would waive the privilege***." *McIntyre*, 2000 U.S. Dist. LEXIS 19617, at *9. Marvell does not dispute that *McIntrye* correctly states the subject-matter waiver rule, but argues "***the key question***" in applying the subject-matter waiver rule "is whether Marvell intends to use the Audit Committee's conclusions as a defense" in this case. Audit Committee Opp. at 15. The two oppositions then purport to answer this question in the negative. *Id.*; *see also* Marvell Opp. at 3. But, the Company's answer is flatly contradicted by the record, which under *McIntyre* goes well beyond just "any use of the investigation in its defense," and constitutes a flat waiver of the privilege.

As to the key question triggering subject-matter waiver, Marvell has repeatedly used its Audit Committee's fraud investigation to attack Plaintiff's allegations in this case, as Plaintiff demonstrated with reference to numerous examples. Motion at 2. Defendants' Rule 26 disclosures

---
[3] *See* Marvell Opp. at 3; *see also* Audit Committee Opp. at 15.

further demonstrate that the key factual predicate guiding the Court's *McIntrye* analysis is present in this case. For example, Marvell's disclosures identify individuals "as likely to have discoverable information that Marvell may ***use to support its defense***" (Marvell Initial Disclosures at 2), and then state that Sehat Sutardja has knowledge about "Marvell's Audit Committee investigation" that will support Marvell's defenses. *Id.* at 3. Marvell reinforces its Audit Committee investigation defense by targeting another witness to testify about "***Marvell's Audit Committee investigation and conclusions***." *Id.* at 3.

Thus, unlike the defendant in *McIntyre,* who merely identified the disputed investigation on a "privilege log" and in the context of "settlement" discussions (*McIntyre*, 2000 U.S. Dist. LEXIS 19617, at *5, *9) the defendants in this case have identified the disputed investigation on the face of their Rule 26 "defense" disclosures,[4] in addition to their repeated attacks on Plaintiff's allegations elsewhere on these grounds. *See* Motion at 2. Yet, Marvell's reliance on the fraud investigation as a "sword" in this case cuts even deeper, and directly into the heart of the veracity of the financial disclosures at issue in this case.

Marvell's defense on this point, simply stated, is that its new auditor "Deloitte came in and ***blessed the financials***" at issue in this case,[5] even after facts about alleged pull-in fraud became public. In Marvell's Rule 26 disclosures, Marvell admits that its defense will rest in part on all documents "received, reviewed, and prepared by Deloitte in the context of its financial audits and reviews for Marvell." Marvell Initial Disclosures, ¶3. This admission demonstrates that Marvell's "blessed financials" defense relates directly to the Audit Committee's fraud investigation at issue in this Motion, as the evidence shows.

---

[4] *See* Rule 26(g) (effect of signing disclosures).

[5] *See* May 4, 2017 Hrg. Tr. at 46:11-16 (attacking Plaintiff's allegations on that basis). At the same time, Marvell stated: "We now have the Audit Committee's conclusions, which came out in March of 2016" – and – "There was no fraudulent activity. These were all valid transactions and nothing affects the revenues received by the company." *Id.* at 29:12-18. Later Marvell repeated its assertion: "None of this affects the revenue received by the company" (*id.* at 41:2-16) and the Court interceded: "***THE COURT: Wait, wait, wait. That's the public disclosure or that's the truth?*** [Defense Counsel]: It's both, your Honor. ***The public disclosure is true***." *Id*.

1. ████████████
2. ████████████
3. ████████████
4. ████████████
5. ████████████
6. ████████████
7. ████████████
8. ████████████
9. ████████████
10. ████████████
11. ████████████
12. ████████████
13. ████████████
14. ████████████
15. ████████████
16. ████████████
17. ████████████
18. ████████████
19. ██████████

Given the Company's affirmative use of the Audit Committee finding, in its defense in deposition, in its Rule 26 Disclosures which identified witnesses to testify specifically as to the

---

[6] Defendant Sutardja relies on the same defense. Marvell's co-defendant in this case (Sehat Sutardja) joined all of Marvell's Rule 26 disclosures. Sutardja Rule 26 Disclosures at 1-2. His "disclosures represent a good faith effort to identify information that [he] reasonably believes may be used to support his defense." *Id*. at 1. Sutardja thus agreed that he would defend himself by relying on "***Marvell's Audit Committee investigation***" by testifying about that subject (Marvell Initial Disclosures at 3) while incorporating every aspect of the Audit Committee's investigation in his defense, as Marvell did.

[7] ████████████

1  Audit Committee's investigation and before the Court on Motions to Dismiss, Plaintiff respectfully
2  submits that *McIntyre* mandates a finding of subject-matter waiver and compels disclosure of
3  materials that form the basis of the Audit Committee's conclusion that it identified no fraud.

4      Moreover, the numerous other authorities that Marvell purports to distinguish on the same
5  false "percept" (Audit Committee Opp. at 15) mandate the same result.  For example, contrary to
6  Marvell's arguments (*id.*) its waiver actions are similar to the defendant's actions in *Wadler v. Bio-*
7  *Rad Labs., Inc.*, 212 F. Supp. 3d 829, 834 (N.D. Cal. 2016) ("*Bio-Rad*"), where the court compelled
8  disclosure on several grounds, including on the basis of the subject-matter waiver rule.  *Id.* at 851
9  (discussing "sword and shield" rule); *id.* at 854 (applying rule to compel disclosure).  The same
10 result is mandated here for similar reasons.

11      In the *Bio-Rad* case, as in this one, a large corporate defendant produced ***to the plaintiff*** a 41-
12 page summary of an investigation that its outside counsel conducted into its alleged misconduct.  *Id.*
13 at 834.  Outside counsel in that case predictably "***found no evidence***" that its client engaged in
14 misconduct.  *Id.* [REDACTED]
15 [REDACTED]
16 [REDACTED]
17 [REDACTED]
18 [REDACTED]
19 [REDACTED]
20 [REDACTED]
21 [REDACTED]
22 [REDACTED]
23 [REDACTED]
24 [REDACTED]

25      Marvell is following the same strategy that the defendants followed in the *Bio-Rad* case –
26 give the plaintiff and the SEC the polished "presentation" by outside counsel to support its defense
27 and withhold much of the key documentation that Plaintiff needs to negate that defense.  These kinds
28

of "extensive disclosures" of the investigation's contents give "rise to an implied waiver as to communications that are relevant to these allegations." 212 F. Supp. 3d at 853-54.

In sum, Marvell has made exhaustive use of its fraud investigation in this case thus triggering the subject-matter waiver or "sword and shield" rule.[8] Marvell has repeatedly "lived by the sword" that its Audit Committee fashioned to attack the Plaintiff's allegations in this case. Marvell cannot be heard to complain about suffering the subject-matter waiver consequences, and the law is clear that it must. This Court should compel disclosure as a result.

Finally, the Company apparently believes that it retains the right to use the Audit Committee's self-serving finding that it "identified no fraudulent activity" without a waiver of privilege or work product because the Plaintiff will "open the door" by offering evidence of the Audit Committee's admissions (including that the Company used side agreements, extended payment terms and other concessions to facilitate end of quarter pull-in transactions that violated Marvell's own revenue recognition policy and which were the result of significant pressure by senior management to meet revenue targets) to prove its case. *See* Dkt. No. 117, Ex. 10 at 111-13. That Plaintiff has proffered Marvell's Audit Committee's specific factual admissions against interest, does not excuse the Company from producing documents that form the basis for the Audit Committee's ultimate self-serving "finding" that no fraud was identified, because "[s]elf-inculpatory statements have long been recognized as bearing strong indicia of reliability" that self-serving statements do not. *Chia v. Cambra*, 281 F.3d 1032, 1038 (9th Cir. 2002), *vacated on other grounds sub nom.*, 538 U.S. 902 (2003) (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)). This

---

[8] The *Bio-Rad* case also addresses Marvell's feigned confusion over its own defenses in this case. Despite making repeated representations to the contrary, Marvell argues that even though "the key question is whether Marvell intends to use the Audit Committee's conclusions as a defense," the answer to that question favors Marvell because Marvell "has stated affirmatively" that it does not or will not use the fraud investigation in its defense. Audit Committee Opp. at 15. The Audit Committee cites ***absolutely nothing*** in support of ***that*** allegation. The very first, and the only time that Marvell has ever claimed it will not rely on the Audit Committee's fraud investigation in this case, is in support of its opposition to the Motion at issue ***now***. Courts reject this kind of gamesmanship. *See, e.g.*, *Bio-Rad*, 212 F. Supp. 3d at 853 ("The Court finds no authority suggesting that an express and intentional disclosure of privileged communications in litigation does not result in waiver unless it is made in connection with an attempt to prevail on the merits of that party's position rather than simply attempting to gain an advantage on an evidentiary matter.").

is why Federal Rule of Evidence 804(b)(3) recognizes that statements against interest can be admissible even if hearsay as they are more likely to be probative then a statement in the declarant's interest. Moreover, Plaintiff clearly has a "substantial need" for discovery regarding the Company's defense now, rather than after a finding of admissibility at trial, as at that point it will be too late to obtain the discovery required to test the basis for the Audit Committee's self-serving "non-fraud finding."

## III. MARVELL'S BOARD IS NOT A LEGAL ENTITY DISTINCT FROM MARVELL

Because the Audit Committee is a part of Marvell's Board of Directors and is populated by Marvell directors it is a part of the Company. *In re Bartoni-Corsi Produce*, 130 F.3d 857, 862 n.9 (9th Cir. 1997) ("[A] fictional entity such as a corporation can only act through its duly elected directors."); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (the "'cumulative knowledge'" of officers and directors "'will be imputed to the corporation'"); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 U.S. Dist. LEXIS 112449, at *36 (N.D. Cal. Aug. 10, 2012) (if allegations raise a claim against the "'directors of a company, then it is appropriately alleged for the company itself'").

Marvell's Audit Committee Charter (as revised September 23, 2015) makes this point clear as it states that: "The Committee shall be comprised of not less than three (3) members of the Board. Members of the Committee shall be appointed from time to time by the Board, and will serve at the discretion of the Board. Committee members shall serve until they are replaced, they resign or their successors are duly elected and qualified. The Board may remove any member from the Committee at any time with or without cause."[9] The Audit Committee is thus an arm of Marvell's Board of Directors and is legally viewed as part of the corporation. Under similar circumstances, courts have recognized that a committee of a Board is not an entity distinct form the corporation itself. *See Ellis v. Bradbury*, No. C-13-1266 MMC, 2013 U.S. Dist. LEXIS 127580, at *3 (N.D. Cal. Sept. 6, 2013) (the "standing committee" "cites to no California law providing that a 'committee' of a corporation

---

[9] http://investor.marvell.com/phoenix.zhtml?c=120802&p=irol-govCommittee &Committee=8402

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - 9 -

1 may appear in court as an entity distinct from the corporation, and the Court has located none"). Thus, the Company's actions here in repeatedly raising the findings of its own Audit Committee to seek advantage both in litigation with plaintiff and in an attempt to avoid any adverse action by the SEC (*see* Motion at 2 and Ex. 1 at SMRH_LUNA_0000093) clearly triggered waiver of any work product or privilege forming the basis for the corporation's Audit Committee's findings.

## IV. BECAUSE PLAINTIFF'S MOTION EXPRESSLY SEEKS ONLY A FINDING OF WAIVER AND THE COMPANY FAILED TO PRODUCE A PRIVILEGE LOG LOCAL RULE 37-2 IS INAPPLICABLE

The Audit Committee Opposition completely ignores the relief being sought by Plaintiff's motion. Plaintiff is not seeking to compel further responses to particular document requests but is seeking an order that the Company has waived any privilege or work product that may have at one time covered work performed by or on behalf of its Audit Committee that supports or refutes the assertion that the audit committee "***identified no fraudulent activity in the course of its investigation***." Counsel for the Audit Committee explicitly recognized this point when it failed to provide a privilege log, in contravention of this Court's Standing Order. Standing Order, ¶18. Thus, the Audit Committee was aware that instead of opting to file a motion challenging particular documents on a privilege log, Plaintiff's motion would seek to resolve the threshold issue of ***waiver***.[10] The parties agreed to this approach at least in part to accommodate counsel for the Audit Committee's request that he not be required to provide an extensive and time consuming privilege log as required by paragraph 18 of this Court's Standing Order which states that "[p]rivilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege."

---

[10] Plaintiff's Motion is not about whether interview memos and accounting work papers were at one time work product or privileged as the Audit Committee's opposition suggests. To the contrary, Plaintiff's Motion is about the ***waiver*** of the attorney work product and attorney-client privilege protections. *See*, *e.g.*, Motion at 1 (Statement of Issues to Be Decided); *id.* at 3 ("Regardless of the validity of Marvell's privilege assertion, the court need not reach this issue for the purposes of resolving this motion as any such privilege or work product claim has already been ***waived***."); *id.* at 5 ("Marvell's Audit Committee ***waived*** attorney-client privilege and work product protection as to the factual underpinnings of its investigation when the Audit Committee both voluntarily produced documents and made a detailed presentation about the conclusions of its investigation to the SEC."). Therefore, the Company's arguments as to whether or not these materials at one time may have been privileged or work product (*see* Audit Committee Opp. at 8-11) and whether Plaintiff has shown a "substantial need" for the requested materials (*id.* at 11-12) are irrelevant to the issue presented.

Standing Order, ¶18. The Company seemingly seeks to use the same "sword and shield" tactic to avoid resolution of this dispute that it has repeatedly utilized in defense of its underlying conduct.[11]

## V. PLAINTIFF IS NOT SEEKING THE MENTAL IMPRESSIONS OF LEGAL COUNSEL

As the Audit Committee concedes, it does not claim that the "facts obtained in witness interviews are themselves privileged." Audit Committee Opp. at 12 n.3. And to the extent that statements from Marvell employees interviewed by the Audit Committee during its investigation were recorded, transcribed or otherwise memorialized in some permanent form, Plaintiff simply contends that any work product protection that may have applied to those recitations of facts, was waived when the Company used the Audit Committee's findings as a defense to this case and when the Audit Committee made a detailed presentation to the SEC about the investigation results and findings including an assertion that no fraud occurred (which were partially based on the statements it received and reviewed from current and/or former Marvell employees and the accounting work performed by KPMG and Deloitte that specifically examined pull-in and extended payment term transactions).

Further, even in the unlikely event that a witness interview summary contained a legal impression from counsel, the Company has made no showing that it could not redact that information from interview summaries or transcriptions – thereby negating any issue as to whether the production of the fact-based information Plaintiff seeks at all impinges upon the safeguards of Fed. R. Evid. 502(a) that the Audit Committee cites to in its brief. *See* Audit Committee Opp. at 13; *see also Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 U.S. Dist. LEXIS 88411, at *10 (N.D. Cal. June 8, 2017) (redacted interview memoranda produced); *see also In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 176278, at *12-*13 (S.D.N.Y. Dec. 16, 2013) ("Weatherford (or Davis Polk) shall review the interview summaries produced, ***redacting only material that reflects an attorney's*** '"***explicit mental impressions, conclusions, opinions or legal theories***,'" keeping in mind that, to the extent that the

---

[11] Additionally, as the Company is aware, Dkt. No. 157-1, Exs. A and B succinctly provide the Court with the specific requests and objections the court is being asked to address.

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING
MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - 11 -

form of the summarization itself might allow inferences into the writer's thinking, such as by 'imply[ing] the attorney's questions,' those inferences are unlikely to 'reveal anything worthy of the description "legal theory."'").

The same is true for any documents created by Marvell's outside auditors or KPMG an accounting firm hired specifically by the Audit Committee as part of its investigation, to the extent those materials contain factual recitations, they should be produced – and if necessary the Company can redact any mental impressions, strategies or opinions of counsel that they may contain. Of course, accounting work papers relating to pull-in transactions and interview summaries are very unlikely to contain such mental impressions. Thus, the Audit Committee's argument regarding "proportionality" (*see* Audit Committee Opp. at 17-18) lacks merit.

## VI. CONCLUSION

For the above stated reasons, Plaintiff's motion should be granted.

DATED: September 6, 2017

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONAH H. GOLDSTEIN
SCOTT H. SAHAM
MATTHEW I. ALPERT
CARISSA J. DOLAN


      s/ Scott H. Saham
       SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING
MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - 12 -

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
4748 Wisconsin Avenue, N.W.
Washington, DC 20016
Telephone: 202/362-0041
202/362-2640 (fax)

Additional Counsel for Plaintiff

1304489_1

LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS CONCERNING
MARVELL'S AUDIT COMMITTEE INVESTIGATION - 3:15-cv-05447-WHA - 13 -

CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 6, 2017.

s/ Scott H. Saham
SCOTT H. SAHAM

ROBBINS GELLER RUDMAN
&  DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  scotts@rgrdlaw.com

1304489_1

# Mailing Information for a Case 3:15-cv-05447-WHA Luna et al v. Marvell Technology Group, Ltd. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew Isaac Alpert**
  malpert@rgrdlaw.com,FileRoomSD@rgrdlaw.com

- **Ian Edward Browning**
  ian@altolit.com

- **Alyssa Janiece Clover**
  alyssa.clover@skadden.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Carissa Jasmine Dolan**
  cdolan@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Diane M. Doolittle**
  dianedoolittle@quinnemanuel.com,sandramorones@quinnemanuel.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Jonah Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alyssa L Greenberg**
  alygreenberg@quinnemanuel.com

- **Joshua Garrett Hamilton**
  joshua.hamilton@lw.com,shirin.behrooz@lw.com,sandra.sudduth@lw.com,kathryn.bowman@lw.com

- **Nadim Gamal Hegazi**
  nhegazi@rgrdlaw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Avi Josefson**
  avi@blbglaw.com

- **Bryan Jacob Ketroser**
  bryan@altolit.com

- **Jason Frank Lake**
  jasonlake@quinnemanuel.com,valerieroddy@quinneemanuel.com,harryolivar@quinnemanuel.com,calendar@quinnemanuel.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **James Hyeoun Ju Moon**
  james.moon@lw.com

- **Harry Arthur Olivar , Jr**
  harryolivar@quinnemanuel.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lesley Frank Portnoy**
  lportnoy@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Valerie Suzanne Roddy**
  valerieroddy@quinnemanuel.com,calendar@quinnemanuel.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com

- **Jason David Russell**
  jrussell@skadden.com,nandi.berglund@skadden.com,dlmlclac@skadden.com,nandi-berglund-4699@ecf.pacerpro.com,ljohnsto@skadden.com,jon.powell@skadden.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,hectorm@rgrdlaw.com

- **Bahram Seyedin-Noor**
  bahram@altolit.com,gabriel@altolit.com,mark@altolit.com,bryan@altolit.com

- **Gerald H. Silk**
  jerry@blbglaw.com

- **Ryan Christopher Stevens**
  ryanstevens@quinnemanuel.com

- **John P. Stigi , III**
  jstigi@sheppardmullin.com,mvanterpool@sheppardmullin.com

- **Curtis Victor Trinko**
  ctrinko@gmail.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Patrick             V. Dahlstrom
Pomerantz LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
```