**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

DANIEL LUNA, individually and  )
on behalf of all others        )
similarly situated,            )
                               )
        Plaintiff,              )
                               )
  VS.                           )   **NO. C 15-05447 WHA**
                               )
MARVELL TECHNOLOGY GROUP,      )
LTD., et al.,                  )
                               )
        Defendants.             )
                               )

                      San Francisco, California
                      Thursday, September 21, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
            ROBBINS, GELLER, RUDMAN & DOWD LLP
            655 West Broadway - Suite 1900
            San Diego, California  92101
   **BY: SCOTT H. SAHAM, ATTORNEY AT LAW**

For Defendant Marvell Technology Group Ltd.:
            QUINN, EMANUEL, URQUHART & SULLIVAN LLP
            865 South Figueroa Street - 10th Floor
            Los Angeles, California  90017
   **BY: HARRY A. OLIVAR JR., ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

```
 1   APPEARANCES:   (CONTINUED)

 2   For The Audit Committee of the Board of Directors of Marvell
     Technology Group, Ltd.:
 3                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                             1901 Avenue of the Stars - Suite 1600
 4                           Los Angeles, California  90067
                       BY:   JOHN P. STIGI III, ATTORNEY AT LAW
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | **Thursday - September 21, 2017**                        **8:38 a.m.** |
| 2  | **P R O C E E D I N G S**                                            |
| 3  | ---o0o---                                                            |

     **THE CLERK:** Calling Civil Case Number 15-5447, Daniel Luna versus Marvell Technology Group.

Will counsel please step forward and state your appearances for the record.

     **MR. SAHAM:** Good morning, Your Honor. Scott Saham for the lead plaintiff.

     **MR. OLIVAR:** Good morning, Your Honor. Harry Olivar for Marvell.

     **MR. STIGI:** And good morning, Your Honor. John Stigi, Sheppard, Mullin, Richter & Hampton, for the Audit Committee.

     **THE COURT:** All right. Let me tell you what I see is the problem here and give you some guidance, but I am irritated that you have served up such a mishmash. I wanted to explain the problem.

First, you served a subpoena, which I have right here. You didn't file a privilege log. They then make a motion to compel, but instead of moving to compel in this motion for the things that are actually in the document request, you transformed it into six different other categories which don't track what's in your subpoena.

So then you say, "Well, Judge, it doesn't matter because we want a declaratory relief order saying that whenever you

1    have this special investigation report like this and then you
2    give it to the SEC, everything is released, everything is
3    waived, the privilege is waived."
4         Well, I think that's a very important issue, and I'm going
5    to give you some tentative thinking on that issue, but the
6    plaintiff did not do your job here.  You want me to go way out
7    on a limb and make this ruling, a sweeping ruling, without a
8    record to justify it, without a privilege log, without the
9    documents before me.
10        And it gets confusing in the briefing between findings
11   made by the Audit Committee, findings made by the law firm,
12   what was actually told -- what was presented to the SEC, what
13   was presented in the press release, and how those all -- all
14   those tie together.  And so I don't -- I am uncomfortable.
15        I could just deny everything.  I could just deny it
16   because this is not teed up very well.  This is -- I won't use
17   some of the adjectives I've been thinking about, but this is
18   just not a well-done motion.
19        Now, I'm going to tell you my general feeling on this.
20   The special investigation reports are suspect in my view.
21   They're done by outside lawyers and accountants who claim it's
22   independent but, in fact, they're exceedingly well paid by the
23   people they're doing it for so there's a bias built in there.
24        And everyone knows they're going to give it to the SEC, so
25   then they wind up summarizing it for the SEC.  Well, in my

1  general view, that is a waiver and if I had to rule on this
2  record, I'd probably say that, but I'm not going to say it yet.
3      So you need to figure -- tell me how you -- I want you to
4  give me a way to make this a better record with a privilege
5  log.  Where is the privilege log?
6      **MR. STIGI:**  Well, if I might, Your Honor.
7      **THE COURT:**  And if I understand your papers right, you
8  stipulated around my rule that says you've got to give me a
9  privilege log.
10     **MR. STIGI:**  Your Honor, if I might.
11     **THE COURT:**  Yeah, go ahead.
12     **MR. STIGI:**  From our perspective, we were trying to
13 work with opposing counsel to expedite this process, and
14 obviously Your Honor is not happy about that.
15     **THE COURT:**  You should have done it.  You should have
16 expedited through the night and stayed up, burned the midnight
17 oil, and done a privilege log.
18     **MR. SAHAM:**  Your Honor --
19     **MR. STIGI:**  Part -- and I acknowledge, Your Honor,
20 some of the confusion here.  The materials being requested at
21 this point is everything; right?  So that includes --
22     **THE COURT:**  What is "everything"?  I don't know what
23 you mean by "everything."
24     **MR. STIGI:**  That's precisely it.
25     **THE COURT:**  Well, see --

1           **MR. STIGI:**  And if I might, please, Your Honor.

2       We can perhaps meet and confer, and that's why we wrote

3   the letter trying to identify categories.  And it may well be

4   that if the categories being requested are fairly narrow, the

5   privilege log is easy; but if you're talking about every e-mail

6   I ever had with my associates during the investigation, of

7   course, that's going to take a lot longer.

8       We were trying, I think, to work together and in good

9   faith, and I understand that that has not made it easier,

10  rather more difficult, for Your Honor and we can work together

11  and try to figure this out.

12          **THE COURT:**  Well, here's the record that I would like

13  to see and probably what I would do:  I would like to see

14  here's what was said.  Here's the presentation that was made to

15  the SEC, including what was verbally said.  Like, you might

16  have to take the deposition of somebody to find out what was

17  verbally said.  And then here's the press release that the

18  Audit Committee made, and here are other statements that the

19  Audit Committee has made.

20      All right.  So now you have, let's say, 40 different

21  statements that are made.  Well, then I would trace those

22  individual statements back into the entire -- every single

23  e-mail, every single -- yeah, even the e-mails, every single

24  stitch of paper that was done, the work papers of the

25  accountants; and if it had to do with what was said to the SEC,

1  whammo, discoverable.

2  **MR. SAHAM:**  Your Honor, if I may, and I hear what
3  Your Honor is saying, but there's two categories of documents.
4  We have a December 29th discovery cutoff.  Everyone knows what
5  these documents are.  They're the interview memos of the 33
6  witnesses the Audit Committee spoke to, also discussed in
7  detail with the SEC; and there's the work papers that were
8  prepared, accounting work papers, regarding these pull-in
9  transactions by KPMG, which was the forensic accountant
10 consultant to the Audit Committee.

11     What this whole trial is going to be about, we have --
12 we'll have testimony from various executives at Marvell that
13 these pull-in transactions were fraudulent and misleading to
14 investors.  Their sole defense to that is that
15 Deloitte & Touche -- remember, PWC was the original auditor.
16 They resigned and a year went by and they got Deloitte & Touche
17 to come in and say the financials were okay, but
18 Deloitte & Touche didn't do their own work.  They relied almost
19 entirely on the findings of the Audit Committee, the witness
20 interviews, and the work, the forensic accounting work, done by
21 KPMG.

22     Those two categories of documents are clearly in the
23 record, Your Honor.  There's interview memos, factual interview
24 memos --

25         **THE COURT:**  That's not what your paperwork says.

1    **MR. SAHAM:**  It does, Your Honor.  The first two --
2    **THE COURT:**  Your paperwork has six different
3 categories that just sounds like blather.  It just sounds like
4 blather.
5    **MR. SAHAM:**  Your Honor --
6    **THE COURT:**  I can't figure out where in the world --
7 all right.  So let's be very precise.  We're talking about
8 interview memos.
9    **MR. SAHAM:**  Correct.
10    **THE COURT:**  You're not talking about e-mails.
11    **MR. SAHAM:**  We're talking -- no, Your Honor.  We're
12 talking about the interview memos --
13    **THE COURT:**  Interview memos and accounting work papers
14 done by KPMG.
15    **MR. SAHAM:**  Right.  Relating to the pull-in
16 transactions, the concession sales, the extended payment term
17 transactions.  That's exactly what everyone knows we're talking
18 about.
19    **THE COURT:**  Hold on.  That's not what you said in your
20 paperwork; and if you think that's what your paperwork made
21 clear, you're wrong.
22      All right.  But what counsel just said, that seems
23 reasonable.  Why don't you produce that?
24    **MR. STIGI:**  Well, Your Honor --
25    **THE COURT:**  If you want me to write a ruling, I'm

1  going to write a ruling that will go all over the country and
2  then you'll be living with it.  I'm going to hold that that's
3  waived.  You've got -- you just can't -- you just can't -- it's
4  like sword and shield.  You can't do that in America.
5              **MR. STIGI:**  Okay.  First of all, Your Honor, just for
6  the record, Deloitte did its own audit work.  It didn't rely on
7  KPMG.  But with that said, with that said, Your Honor, yes, as
8  part of Deloitte's undertaking the investigation --
9              **THE COURT:**  What about KPMG?  Anyone who had anything
10 to do with that special report is waived.
11             **MR. STIGI:**  If that's Your Honor's ruling.
12             **THE COURT:**  That's what I'm going to rule.
13             **MR. STIGI:**  If I may, with respect to the
14 sword-and-shield issue, Mr. Olivar will speak to that
15 because --
16             **THE COURT:**  No.  I'm listening to you right now.
17             **MR. STIGI:**  I'm happy to talk.
18     My role, I'm a stakeholder here.  I hold documents that
19 these folks want, and the defendants have a position on that.
20             **THE COURT:**  They don't want me to see them, they don't
21 want the jury to see them because they don't support the
22 findings as clearly as -- they maybe partially support them,
23 but they draw into question those findings, and you're going to
24 try to use those findings at trial.  That's just not fair.
25             **MR. STIGI:**  I'm not, and I'm quite --

1    **THE COURT:** You're not but he is.

2    **MR. OLIVAR:** No, Your Honor.

3    **MR. STIGI:** I will state -- if I might, Your Honor, I
4  will state right here in open court the documents that I was
5  responsible for a team creating support the findings
6  100 percent.

7    **THE COURT:** You're with which law firm?

8    **MR. STIGI:** Sheppard Mullin.

9    **THE COURT:** All right. You're the one that was the
10 special counsel.

11   **MR. STIGI:** We were independent counsel to the Audit
12 Committee, and the Audit Committee's findings were supported
13 100 percent by the documentation.

14   **THE COURT:** All right. Well, then --

15   **MR. STIGI:** I have no problem with that.

16   **THE COURT:** -- so you want everyone to see how great a
17 job you did; but if there's some interview memo in there that
18 draws it into question, then it ought to go to the jury
19 especially.

20   **MR. STIGI:** Again, my role is to protect the privilege
21 to the extent I can. If I'm ordered to produce it, I'll
22 produce it.

23     My point is, Your Honor, I'm not trying to keep anything
24 from anybody. I have an obligation, ethical professional
25 obligation, to protect the privilege that exists; and if I'm

1  told to waive it, it's waived.
2          **THE COURT:**  Let me hear what Marvell has to say.
3          **MR. OLIVAR:**  Your Honor, I don't know how much
4  patience Your Honor has to correct all Mr. Saham's statements,
5  but the statements about what this case is going to involve at
6  trial are completely wrong, as are statements about what
7  Deloitte did in its audit.  This is not a trial about the Audit
8  Committee's conclusions.
9      He made certain specific representations to the Court that
10 allowed the case to go forward.  He represented that in late
11 2014 and early 2015, Marvell's CEO intentionally misstated
12 revenues materially and that the pull-in transactions are not
13 real transactions and distorted their earnings.  He's going to
14 have to prove that that was the case.
15     There were misrepresentations made with scienter in 2015.
16         **THE COURT:**  You went to the SEC -- they went to the
17 SEC and they made a representation about the very same subject
18 matter.
19         **MR. OLIVAR:**  They made a presentation to the SEC about
20 its investigation.
21         **THE COURT:**  That's a waiver.  It's a waiver.
22         **MR. OLIVAR:**  He can talk to that.  He spoke to --
23         **THE COURT:**  Why isn't that a waiver?
24         **MR. OLIVAR:**  That's not our trial, Your Honor.
25         **THE COURT:**  Well, wait a minute.  It is the trial.  He

1   wants those documents to use them at trial.
2       **MR. OLIVAR:**  He may want them to use but we haven't
3   waived because we're going to present the Audit Committee's
4   conclusions as a defense.
5       **THE COURT:**  Well, let's say you're not going to
6   present them at trial.  You're not even going to mention them
7   let's say.  I don't believe that but let's say that you
8   honestly think that it will never come up about the Audit
9   Committee at trial.  Nevertheless, you went to the SEC and you
10  said, "A, B, C, D, E we did."  That's a waiver.
11      Now, I know there are other people out there who think
12  it's not a waiver.  I think it's a waiver and it should be a
13  waiver.  I think that's the way the rule ought to be construed,
14  and too bad if you went to the -- you know, when you say, "We
15  did an investigation and here's what we found A, B, C, D," and
16  you explained that to the SEC so they don't sue you and put you
17  in jail, that is a waiver.
18      **MR. STIGI:**  And if I might, Your Honor, we, without
19  having to come before Your Honor, we produced to plaintiffs the
20  presentation.  Every piece of paper that the SEC asked for, we
21  produced to them.
22      **THE COURT:**  All right.  That's the good part.  He
23  wants the bad part.
24      **MR. STIGI:**  No, no, no.  He wants the privilege part.
25      **THE COURT:**  Right.  The bad part.

1    **MR. STIGI:**  No, no.  Your Honor, no.  All due respect,
2  no.  He wants the privilege part.
3    **THE COURT:**  I'm saying it's waived.
4    **MR. STIGI:**  And I'm not going to produce the
5  privileged part unless I'm ordered to.  It's really that
6  simple.
7    **THE COURT:**  I'm going to order you to do it, but I
8  don't like -- I want you to know I don't like the way you
9  served this record up.  I think it was sloppy, and I'm going to
10 go back and look at what I've seen here based on this hearing
11 here and I still might deny this motion on account of
12 sloppiness in the presentation.
13    But this has helped me clarify what there is.  You're
14 talking interview memos only, not e-mails.  That's not what
15 your subpoena said.
16    And, in addition, you're talking --
17    **MR. SAHAM:**  Accounting work papers, Your Honor.
18    **THE COURT:**  -- accounting work papers from KPMG and
19 anyone else?
20    **MR. SAHAM:**  Yes, Your Honor.  They're asserting -- and
21 here's where I think you confused sloppiness with the
22 sword-and-shield tactic.  They objected.  They have four
23 auditors involved.  You know, two that were independent
24 auditors, one that resigned, one that came on after, and then
25 the two that worked.

1  **THE COURT:** I'm just talking about -- who was involved
2  with the special investigation?
3  **MR. SAHAM:** KPMG was -- did forensic accounting work.
4  They looked at these pull-in transactions; and then Deloitte
5  came in, relied on the work, the accounting work, that KPMG
6  did, as well as the interview memos, to come up with the
7  conclusion.
8  **THE COURT:** And what did Deloitte rely on it for?
9  **MR. SAHAM:** To offer an audit opinion that -- although
10 it was a year late, to allow them to file their financial
11 statements with the SEC.
12 **THE COURT:** Anything that Deloitte did, that's public,
13 isn't it?
14 **MR. SAHAM:** It should be, Your Honor.
15 **THE COURT:** That's absolutely not privileged.
16 **MR. SAHAM:** Deloitte received all these work papers
17 from KPMG that their privilege objection is preventing Deloitte
18 from providing. Everybody has them. Marvell has them. The
19 Audit Committee has them.
20 **THE COURT:** This is beyond the pale. Is that true?
21 **MR. STIGI:** No. No.
22 **MR. OLIVAR:** No. It's wrong.
23 **THE COURT:** Is Deloitte asserting a privilege here?
24 **MR. STIGI:** No.
25 **MR. SAHAM:** Marvell is asserting a privilege for

1  Deloitte.

2  **THE COURT:** Is Marvell asserting a privilege so that
3  Deloitte is not producing anything it got from KPMG?

4  **MR. OLIVAR:** No, Your Honor. Everything he said is
5  completely wrong, and we can go through it about why it's wrong
6  and how the documents show it's wrong, but I don't know that
7  Your Honor has the time. He's making things up now.

8  **THE COURT:** All right. I'm going to tell you what the
9  law is, at least in this courtroom, what the law is going to
10 be.

11    This is a public company; right?

12 **MR. SAHAM:** Correct, Your Honor.

13 **THE COURT:** All right. If this is -- so if Deloitte
14 as an independent public auditor comes in and does an audit and
15 gives an opinion in a lawsuit, every stitch of that paperwork
16 that they looked at is -- every judge in America will tell you
17 that's discoverable. No privilege, period. Nobody would
18 question that.

19 **MR. SAHAM:** And they also did readouts of the
20 interview memos, Your Honor. They didn't physically hand them
21 the interview memos but they read them to them. They did
22 readouts, and they discuss them at length in their -- in
23 Deloitte's work papers.

24    So to simplify, Your Honor --

25 **THE COURT:** Wait. Wait. You're interrupting the

1    judge.

2            **MR. SAHAM:**  Sorry.  My apologies.

3            **THE COURT:**  The second part is not as clear, not every
4    judge would agree with me on this, but at least in this case
5    the special investigation is done.  They come up with a report.
6    They go to the -- they have KPMG; and if they just keep it to
7    themselves and report to the Audit Committee and it never goes
8    beyond that, that is privileged all day long.  No question.

9            However, when you go to the SEC and you say, "We did a
10   report and here's what it says, and here's what we found, A, B,
11   C, D, and E," waiver.  Not even -- you don't even have to get
12   to the point about the press release where they did the same
13   thing telling the public trying to sway investors.  So it's a
14   waiver.

15           So I would say anything that related to one of the
16   statements that were made to the SEC and/or to the public is
17   waived, and you've got to produce the interview memos and
18   you've got to produce the work papers of KPMG that relate to
19   that.  That's my order.  Now, that's what I am going to order.
20   I'm just ordering it right now.

21           But I don't want to have to -- I want you to know how much
22   trouble -- we spent hours trying to figure out what in the
23   world your crazy motion was designed to get at because it was a
24   moving target.  This is not the way lead plaintiff counsel
25   ought to be performing.  You ought to do -- we are very busy

1  here.  I don't have time to do reverse engineering to figure
2  out what in the world your motion is all about.
3      So sorry I'm in a bad mood today, but I've got a lot to
4  do.
5      Do you understand what my ruling is, or do you want a
6  written order?  Do you need a written order?
7          **MR. STIGI:**  I would prefer a written order because,
8  again, it's an order about a privilege waiver and I think
9  that's an important thing.
10         **THE COURT:**  I'll do that.
11         **MR. STIGI:**  And I would appreciate that, Your Honor.
12         **THE COURT:**  I'm sympathetic to you.  I will do my best
13 to get it out soon.  Thank you.  Have a good day.
14         **MR. OLIVAR:**  Thank you.
15         **MR. SAHAM:**  Thank you, Your Honor.
16              (Proceedings adjourned at 8:55 a.m.)
17                         ---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Tuesday, September 26, 2017

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter