ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
            – and –
ELLEN GUSIKOFF STEWART (144892)
JONAH H. GOLDSTEIN (193777)
SCOTT H. SAHAM (188355)
MATTHEW I. ALPERT (238024)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jonahg@rgrdlaw.com
scotts@rgrdlaw.com
malpert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LUNA, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>MARVELL TECHNOLOGY GROUP, LTD., et al.,<br><br>                              Defendants. | Case No. 3:15-cv-05447-WHA<br><br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:        April 17, 2018<br>TIME:        9:00 a.m.<br>CTRM:      12, 19th Floor<br>JUDGE:     Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     LITIGATION HISTORY .........................................................................................4

III.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS
        REQUIREMENTS.....................................................................................................6

IV.     THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
        ACTION SETTLEMENTS .......................................................................................8

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE............................................................................................................10

        A.      The Settlement Enjoys a Presumption of Reasonableness Because It Is the
                Product of Arm's-Length Settlement Negotiations .................................10

        B.      The Settlement Amount Strongly Supports Approval ...........................11

        C.      The Strength of Lead Plaintiff's Case When Balanced Against the Risk,
                Expense, Complexity, and Likely Duration of Further Litigation Supports
                Approval of the Settlement ....................................................................12

                1.      The Risks of Proving Liability...................................................13

                2.      The Risks of Proving Loss Causation and Damages .................15

                3.      The Complexity, Expense, and Likely Duration of the Litigation
                        Justifies the Settlement ............................................................16

        D.      Lead Plaintiff Had Sufficient Information to Determine the Propriety of
                Settlement .............................................................................................17

        E.      The Risk that Class Certification Could Not Be Maintained Through Trial .........18

        F.      The Recommendations of Experienced Counsel After Extensive Litigation
                and Arm's-Length Settlement Negotiations Favor the Approval of the
                Settlement .............................................................................................18

        G.      Reaction of the Class Supports Approval of the Settlement....................19

VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................20

VII.    CONCLUSION........................................................................................................21

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - i -

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Arnold v. Fitflop USA, LLC*,
   No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 58800

5
   (S.D. Cal. Apr. 28, 2014) ...................................................................20

6

*Beecher v. Able*,

7
   575 F.2d 1010 (2d Cir. 1978) ............................................................20

8

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) .............................................20

9

*Bryant v. Avado Brands, Inc.*,

10
   100 F. Supp. 2d 1368 (M.D. Ga. 2000),

11
   *rev'd on other grounds and remanded sub nom.*
   *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ..........................13

12

*Carson v. Am. Brands*,

13
   450 U.S. 79 (1981) ...............................................................................9

14

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ...............................................................8

15

16

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...........................................................20

17

*Destefano v. Zynga, Inc.*,

18
   No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
   (N.D. Cal. Feb. 11, 2016) .....................................................................7

19

20

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...........................................................................13

21

*Ellis v. Naval Air Rework Facility*,

22
   87 F.R.D. 15 (N.D. Cal. 1980) ...........................................................10

23

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ...............................................................6

24

*Girsh v. Jepson*,

25
   521 F.2d 153 (3d Cir. 1975) ...............................................................12

26

*Glickenhaus & Co. v. Household Int'l, Inc.*,

27
   787 F.3d 408 (7th Cir. 2015) .............................................................17

28

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - ii -

1

2                                                                                                 **Page**

3

4     *Hanlon v. Chrysler Corp.*,
          150 F.3d 1011 (9th Cir. 1998) ...........................................................................8, 9, 19

5

6     *Harris v. Vector Mktg. Corp.*,
          No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878
          (N.D. Cal. Apr. 29, 2011) ...............................................................................................11

7

8     *In re Amgen Sec. Litig.*,
          No. CV 7-2536 PSG, 2016 U.S. Dist. LEXIS 148577
          (C.D. Cal. Oct. 25, 2016) ........................................................................... *passim*

9

10    *In re Apollo Grp., Inc. Sec. Litig.*,
          No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
          (D. Ariz. Aug. 4, 2008), *rev'd and remanded on other grounds*,
11        2010 U.S. App. LEXIS 14478 (9th Cir. 2010) .......................................................17

12
      *In re Bank of Am. Corp.*,
13        772 F.3d 125 (2d Cir. 2014).............................................................................................7

14    *In re BankAtlantic Bancorp, Sec. Litig.*,
          No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
15        (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v.*
          *BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012)...........................12, 17
16

17    *In re Chicken Antitrust Litig. Am. Poultry*,
          669 F.2d 228 (5th Cir. 1982) ....................................................................................20

18
      *In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
19        142 F.R.D. 588 (S.D.N.Y. 1992) .............................................................................20

20    *In re Heritage Bond Litig.*,
          No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
21        (C.D. Cal. June 10, 2005) ..........................................................................................20

22
      *In re Ikon Office Sols., Inc., Sec. Litig.*,
23        194 F.R.D. 166 (E.D. Pa. 2000).............................................................................13, 16

24    *In re Immune Response Sec. Litig.*,
          497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................14, 18
25

26    *In re Mego Fin. Corp. Sec. Litig.*,
          213 F.3d 454 (9th Cir. 2000) ..................................................................8, 12, 16, 17

27

28

**Page**

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
   (S.D. Cal. Dec. 21, 1998) ......................................................................................16

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................8, 18, 19, 20

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
   (N.D. Cal. June 16, 2009), *aff'd*,
   627 F.3d 376 (9th Cir. 2010) ................................................................................15

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................................8, 18

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) ................................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201
   (N.D. Cal. Nov. 26, 2007)........................................................................................9

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)......................................................................15

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
   (S.D.N.Y. Nov. 7, 2007) .......................................................................................12

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) .........................................................................12

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541
   (N.D. Cal. Aug. 2, 2011)..........................................................................................9

*Johansson-Dohrmann v. CBR Sys.*,
   No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863
   (S.D. Cal. July 24, 2013).......................................................................................12

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................................12

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - iv -

1

2                                                                                   **Page**

3

4   *Linney v. Cellular Alaska P'ship,*
         No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
5        (N.D. Cal. July 18, 1997), *aff'd,*
         151 F.3d 1234 (9th Cir. 1998) ................................................................10

6   *Low v. Trump University, LLC,*
         No. 17-55635, 2018 WL 718916
7        (9th Cir. Feb. 6, 2018) .............................................................................6

8   *Mullane v. Cent. Hanover Bank & Tr. Co.,*
         339 U.S. 306 (1950) .................................................................................6
9

10   *MWS Wire Indus. v. Cal. Fine Wire Co.,*
         797 F.2d 799 (9th Cir. 1986) ....................................................................8
11

12   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
         221 F.R.D. 523 (C.D. Cal. 2004) .....................................................9, 12, 18
13

14   *Nguyen v. Radient Pharms. Corp.,*
         No. SACV-11-00406 DOC, 2014 WL 1802293
15       (C.D. Cal. May 6, 2014) ....................................................................15, 20

16   *Officers for Justice v. Civil Serv. Comm'n,*
         688 F.2d 615 (9th Cir. 1982) ....................................................... *passim*
17

18   *Republic Nat'l Life Ins. Co. v. Beasley,*
         73 F.R.D. 658 (S.D.N.Y. 1977) ..............................................................12

19   *Reynolds v. Beneficial Nat'l Bank,*
         288 F.3d 277 (7th Cir. 2002) ..................................................................17
20

21   *Robbins v. Koger Props.,*
         116 F.3d 1441 (11th Cir. 1997) ...............................................................12

22   *Rodriguez v. W. Publ'g Corp.,*
         563 F.3d 948 (9th Cir. 2009) .............................................................10, 18
23

24   *Satchell v. Fed. Express Corp.,*
         No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
25       (N.D. Cal. Apr. 13, 2007) ........................................................................11

26   *Smith v. Dominion Bridge Corp.,*
         No. 96-7580, 2007 U.S. Dist. LEXIS 26903
27       (E.D. Pa. Apr. 11, 2007) ..........................................................................14

28

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          **- v**

Page

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ............................................................................9

*Util. Reform Project v. Bonneville Power Admin.,*
   869 F.2d 437 (9th Cir. 1989) ...........................................................................8

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ...........................................................................8

*White v. NFL,*
   822 F. Supp. 1389 (D. Minn. 1993) ...............................................................20

*Williams v. First Nat'l Bank,*
   216 U.S. 582 (1910) ..........................................................................................8

*Woo v. Home Loan Grp., L.P.,*
   No. 07-CV-202 H(POR), 2008 WL 3925854
   (S.D. Cal. Aug. 25, 2008) .................................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b) ................................................................................................................4
   §78t(a) ................................................................................................................4
   §78u-4(a)(7) .......................................................................................................7

Federal Rules of Civil Procedure
   Rule 1 .................................................................................................................8
   Rule 23 .......................................................................................................6, 7, 20
   Rule 23(b)(3) .....................................................................................................6
   Rule 23(c)(1) ...................................................................................................18
   Rule 23(c)(2)(B) ...............................................................................................6
   Rule 23(e)(1) .....................................................................................................6

**SECONDARY AUTHORITY**

Stefan Boettrich & Svetlana Starykh, *Recent Trends*
*in Securities Class Action Litigation: 2017 Full-Year Review*
(NERA Jan. 2018) ...............................................................................................11

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA   - vi -

TO:      ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 17, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable William Alsup, United States District Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Plumbers and Pipefitters National Pension Fund ("Lead Plaintiff" or "Plumbers") will respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the [Proposed] Order Approving Plan of Allocation and the [Proposed] Judgment. Lead Plaintiff's motion is based on the following Memorandum in support thereof; the Declaration of Scott H. Saham in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Saham Decl."); the Declaration of Toni Inscoe Filed on Behalf of Plumbers and Pipefitters National Pension Fund in Support of Motion for Final Approval of the Settlement and Award of Attorneys' Fees and Expenses ("Inscoe Decl."); the Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, Requests for Exclusion Received to Date, Interim Claims Processing, and Estimate of Administration Fees and Expenses ("Sylvester Decl."); the Stipulation of Settlement, dated December 19, 2017 (ECF No. 220) ("Stipulation" or "Settlement"); all other pleadings and matters of record; and such additional evidence and testimony as may be presented before or at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should grant final approval to the proposed class action settlement and the Plan of Allocation.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff submits this memorandum in support of its motion for final approval of the Settlement of this action for $72,500,000 in cash (plus interest) and for approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation, which was preliminarily approved by the Court on

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA      - 1 -

December 21, 2017.[1]  ECF No. 222.  The Settlement is the result of hard-fought litigation over a two-year period, and arm's-length settlement negotiations with the substantial assistance of Magistrate Judge Joseph C. Spero.  Lead Plaintiff and its counsel believe that the $72.5 million Settlement, which represents between 24% and 50% of the best estimate of recoverable damages, is an outstanding resolution of this complex litigation under any measure.  *See generally* Saham Decl.[2]  Lead Plaintiff, which was actively involved in the Litigation, has approved the Settlement.  *See* Inscoe Decl., ¶5.

This case has been zealously prosecuted by Lead Counsel from its commencement through settlement, against determined opposition.  From the outset, Defendants, who are represented by some of the most experienced and formidable defense lawyers in the country, asserted strong defenses, adamantly denied liability and were firm in their belief that Lead Plaintiff could not prevail on the claims asserted.  In fact, rulings during the course of the Litigation dismissed two of three of Lead Plaintiff's legal theories, two of the three individual defendants, and shortened the Class Period by a full fiscal quarter, or approximately 25%.  Saham Decl., ¶7.

As set forth in more detail in the Saham Declaration, the Settlement was achieved only after Lead Counsel, *inter alia*: (a) conducted a thorough pre-filing investigation, including, through its investigators, conducting numerous investigative witness interviews of former employees of Marvell Technology Group, Ltd. ("Marvell" or the "Company"); (b) successfully overcame, in part, Defendants' repeated, comprehensive motions to dismiss Lead Plaintiff's claims; (c) propounded extensive discovery upon Defendants and non-parties concerning the allegations upheld by the Court, including requests for the production of documents, interrogatories, requests for admissions and non-party subpoenas; (d) followed up on that discovery through numerous meet-and-confers and a motion to compel the production of documents; (e) reviewed and analyzed the electronic equivalent of over two million pages of documents produced by Defendants and multiple non-parties; (f) fully briefed and argued Lead Plaintiff's motion for class certification, and obtained

---

[1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

[2]   The Court is respectfully referred to the Saham Declaration for a complete overview of Lead Plaintiff's claims, the risks presented by continued litigation, the procedural and factual history of the Litigation, as well as the settlement negotiations.

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - 2 -

1    certification of the Class; (g) took or defended 13 depositions; (h) retained and consulted with

2    experts in the fields of accounting and damages; (i) began preparing for the March 5, 2018 trial of

3    the action; and (j) prepared for and attended an in-person settlement conference with Magistrate

4    Judge Spero.

5          Lead Plaintiff and its counsel believe that the $72.5 million Settlement represents a highly

6    favorable result for the Class and fully takes into consideration the procedural posture of the case and

7    risks of continued litigation.  This conclusion is based on all the circumstances present here, including

8    the substantial risks, expense, and uncertainties in continuing the action through completion of fact

9    and expert discovery, summary judgment motion(s), trial, and probable appeal; the relative strengths

10   and weaknesses of the claims and defenses asserted; a complete analysis of the evidence obtained and

11   the legal and factual issues presented; past experience in litigating securities class actions similar to

12   the present action; and the serious disputes between the parties concerning the merits and damages.  If

13   not for this Settlement, the case would have continued to be fiercely contested with the ultimate

14   outcome uncertain.  Defendants demonstrated a commitment to defend this case and are represented

15   by well-respected and highly capable counsel from Quinn, Emanuel, Urquhart & Sullivan, LLP

16   ("Quinn Emanuel") and Skadden Arps, Slate, Meagher & Flom, LLP ("Skadden Arps").

17         While the deadline for filing objections, March 27, 2018, has not yet passed, Class Members

18   appear to agree with Lead Counsel's conclusion.  Pursuant to the Court's Order Preliminarily

19   Approving Settlement and Providing for Notice ("Notice Order") (ECF No. 222), to date, over

20   38,000 copies of the Notice of Proposed Settlement of Class Action ("Notice") and Proof of Claim

21   and Release ("Proof of Claim" and, together with the Notice, the "Notice Package") have been sent

22   to potential Class Members and nominees.  *See* Sylvester Decl., ¶11.  A Summary Notice was also

23   published in *The Wall Street Journal* and transmitted over *Business Wire* on January 16, 2018.  *Id.*,

24   ¶15.  Copies of the Stipulation, Notice Package, and Notice Order were also placed on a case

25   specific settlement website, identified in the Notice Package and Summary Notice, on January 5,

26   2018.  *Id.*, ¶14.  The Notice informed potential Class Members of the terms of the Settlement, their

27   right to object or opt-out of the Settlement and the procedure for doing so, the Plan of Allocation,

28   and counsel's request for an award of attorneys' fees and expenses.  To date, not a single Class

1  Member has filed an objection to any aspect of the Settlement, Plan of Allocation, or counsel's

2  request for an award of attorneys' fees and expenses.[3]

3          For all of the reasons discussed herein and in the Saham Declaration, it is respectfully

4  submitted that the Settlement is fair, adequate and reasonable and therefore should be finally

5  approved by the Court.  Moreover, the Plan of Allocation was developed in consultation with Lead

6  Plaintiff's damages expert, reflects a rational and equitable method of allocating the Net Settlement

7  Fund among Authorized Claimants, and is tailored to account for fluctuations in the price of Marvell

8  common stock during the Class Period.  As a result, the Plan of Allocation should be approved.

9  **II.      LITIGATION HISTORY**

10         The following is a brief history of the Litigation.  The initial complaint in this action was

11  filed on September 11, 2015, in the United States District Court for the Southern District of New

12  York.  On November 18, 2015, the case was transferred to the United States District Court for the

13  Northern District of California (the "Court").  On February 8, 2016, the Court appointed Lead

14  Plaintiff, and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), was appointed

15  Lead Counsel.  ECF No. 53.

16         Lead Plaintiff filed the Consolidated Class Action Complaint for Violations of the Federal

17  Securities Laws on March 18, 2016.  ECF No. 55.  The complaint alleged violations of §10(b) of the

18  Securities Exchange Act of 1934 (the "Exchange Act") by Defendants and former defendants

19  Michael Rashkin and Sukhi Nagesh (the "Former Defendants"), and §20(a) of the Exchange Act by

20  Sehat Sutardja ("Sutardja") and the Former Defendants.  Lead Plaintiff alleged that Defendants and

21  the Former Defendants made materially false and misleading statements and/or failed to disclose

22  adverse information regarding Marvell's business, operations, and prospects, including, among other

23  things, that Marvell reported revenue and earnings during the Class Period that were misleading as a

24  result of undisclosed pull-in sales.  Lead Plaintiff further alleged that this conduct caused the price of

25  Marvell common stock to be artificially inflated.  Defendants have consistently denied these

26  allegations and any wrongdoing.  Following briefing on Defendants' and the Former Defendants'

27  ─────────────────

28  [3]    In accordance with the Notice Order, any objections will be addressed by Lead Counsel on or
before April 13, 2018.

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA      - 4 -

1   motions to dismiss and oral argument, the Court, on October 12, 2016, granted the motions to
2   dismiss with leave to amend.  ECF No. 98.

3          Lead Plaintiff filed the Consolidated Amended Class Action Complaint for Violations of the
4   Federal Securities Laws (the "Complaint") on November 28, 2016.  ECF No. 104.

5          Defendants and the Former Defendants moved to dismiss the Complaint, which the Court
6   granted in part and denied in part.  ECF No. 138.  More specifically, the Court denied the motions of
7   Marvell and Sutardja, but granted the motions of the Former Defendants.  Thereafter, on May 31,
8   2017, Defendants filed their answers, which denied all claims in the Complaint and asserted certain
9   defenses thereto.  ECF Nos. 144, 145.

10         Thereafter, Lead Plaintiff and Defendants engaged in extensive discovery over the short
11  period of time allotted by the Court.  Lead Plaintiff pursued documents from Defendants and third
12  parties, resulting in the production of over two million pages of documents.  The parties also
13  litigated a discovery dispute involving privilege relating to Marvell's Audit Committee
14  Investigation.  Lead Plaintiff deposed 10 current or former Marvell employees and/or accountants,
15  and, at the time this Settlement was reached, was preparing for five additional fact witness
16  depositions scheduled for the following week.  The parties had also exchanged extensive written
17  discovery.  Saham Decl., ¶¶50-76.

18         On August 2, 2017, Lead Plaintiff moved to certify the Class, to appoint Plumbers as class
19  representative, and to appoint Robbins Geller as class counsel.  ECF No. 160.  Briefing on the
20  motion concluded on September 14, 2017, and the Court heard oral argument on October 26, 2017.
21  In connection with class certification, the parties had engaged in significant class discovery,
22  including the depositions of a representative from Lead Plaintiff and its investment manager.  Lead
23  Plaintiff's economic expert was also deposed after he prepared and submitted a report on market
24  efficiency.  The Court granted the motion for class certification in part on October 27, 2017.  ECF
25  No. 202.

26         On December 12, 2017, the parties engaged in an in-person settlement conference before
27  Magistrate Judge Spero, pursuant to an order of the Court.  ECF No. 155.  The settlement conference
28  was preceded by submission of settlement conference statements and exhibits by each party.  The

1   parties engaged in arm's-length negotiations during the settlement conference, and reached an

2   agreement-in-principle to resolve the Litigation for $72,500,000 on the terms set forth in the

3   Stipulation, subject to Court approval.  A preliminary approval hearing was held on December 21,

4   2017, after which the Court entered the Notice Order.  ECF No. 222.

5          The Notice Order, among other things, appointed Gilardi & Co. LLC as the Claims

6   Administrator "to supervise and administer the notice procedure as well as the processing of

7   claims . . . ."   Notice Order, ¶4.   As set forth in the Notice, the costs of class notice and

8   administration are deducted from the Settlement Fund.  Sylvester Decl., Ex. A (Notice) at 2.  To

9   date, the Claims Administrator has invoiced and been paid from the Settlement Fund $15,576.55 and

10  in addition has incurred $102,134.51 in as-yet unbilled fees and expenses.  *Id.*, ¶19.  The Claims

11  Administrator currently estimates that the total fees and expenses to administer the Settlement,

12  including the amounts above paid and as-yet unbilled, through the initial distribution will be

13  approximately $400,000.  *Id.*

14  **III.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE**
    **PROCESS REQUIREMENTS**

15
          Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class
16
    action settlement, "'must direct notice in a reasonable manner to all class members who would be
17
    bound by the proposal.'"  *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).[4]  In addition to the
18
    requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class
19
    members the right to notice of certification or settlement.  *See id.*   Generally, "[f]or any class
20
    certified under Rule 23(b)(3), the court must direct to class members the best notice that is
21
    practicable under the circumstances, including individual notice to all members who can be
22
    identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  A notice of settlement satisfies
23
    due process when it is "reasonably calculated, under all the circumstances, to apprise interested
24
    parties of the pendency of the action and afford them an opportunity to present their objections."
25
    *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Low v. Trump*
26
    *University, LLC*, No. 17-55635, 2018 WL 718916, at *5 (9th Cir. Feb. 6, 2018) ("'The yardstick
27

28  ───────────────────────
    [4]    Citations are omitted throughout unless otherwise indicated.

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA        - 6 -

1   against which we measure the sufficiency of notices in class action proceedings is one of

2   reasonableness.'") (quoting *In re Bank of Am. Corp.*, 772 F.3d 125, 132 (2d Cir. 2014)). Here, the

3   Notice, in plain, easily-understood language, advises potential Class Members of the essential terms

4   of the Settlement, sets forth the procedure and deadline for submitting objections to the Settlement

5   and requests for exclusion from the Class, identifies contacts for additional information, and

6   provides specifics regarding the date, time, and place of the Settlement Hearing. The Notice also

7   contains information regarding Lead Counsel's fee and expense application and the Plan of

8   Allocation. Thus, the Notice provides the necessary information for Class Members to make an

9   informed decision regarding the Settlement and their rights with respect to it.

10        Furthermore, the Notice, which was approved by the Court in the Notice Order, includes all

11   of the information required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),

12   which requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be

13   distributed to the parties to the action, determined in the aggregate and on an average per share

14   basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be

15   recoverable if the plaintiff prevailed on each claim alleged under this title, a statement from each

16   settling party concerning the issue or issues on which the parties disagree"; (3) "a statement

17   indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs],

18   the amount of fees and costs that will be sought (including the amount of such fees and costs

19   determined on an average per share basis), and a brief explanation supporting the fees and costs

20   sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel

21   for the plaintiff class who will be reasonably available to answer questions from class members";

22   and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15

23   U.S.C. §78u-4(a)(7).

24        The Notice Order also approved Lead Plaintiff's proposed notice plan. Notice Order, ¶¶5-8.

25   Lead Plaintiff has satisfied all of the elements of the notice plan approved by the Court. *See*

26   *generally* the Sylvester Decl. The notice program implemented in this Litigation constitutes the best

27   notice practicable under the circumstances and satisfies the requirements of due process, Federal

28   Rule of Civil Procedure 23, and the PSLRA. *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-cv-04007-

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA   - 7 -

1   JSC, 2016 U.S. Dist. LEXIS 17196, at *23 (N.D. Cal. Feb. 11, 2016) (finding that individual notice

2   mailed to class members combined with summary publication constituted "the best form of notice

3   available under the circumstances").

4  **IV.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
ACTION SETTLEMENTS**

5

6        It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the

7   preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

8   625 (9th Cir. 1982); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007)

9   ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in

10  class action law suits."). Class action suits readily lend themselves to compromise because of the

11  difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is

12  beyond question that "the public has an overriding interest in securing 'the just, speedy, and

13  inexpensive determination of every action.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,

14  460 F.3d 1217, 1227 (9th Cir. 2006); Fed. R. Civ. P. 1. It is also beyond question that "there is an

15  overriding public interest in settling and quieting litigation," and this is "particularly true in class

16  action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util.*

17  *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[5]

18        In deciding whether to approve a proposed settlement of a securities class action under Rule

19  23(e), the court must first find that the proposed settlement is "fair, adequate and reasonable." *In re*

20  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150

21  F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit has provided factors which may be considered

22  in evaluating the fairness of a class action settlement:

23        Although Rule 23(e) is silent respecting the standard by which a proposed settlement
        is to be evaluated, the universally applied standard is whether the settlement is

24        fundamentally fair, adequate and reasonable. . . . The district court's ultimate
        determination will necessarily involve a balancing of several factors which may

25        include, among others, some or all of the following: the strength of plaintiffs' case;
        the risk, expense, complexity, and likely duration of further litigation; the risk of

26  ─────────────────────

27  [5]   The law consistently favors the compromise of disputed class action claims. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus. v. Cal.*

28  *Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA   - 8 -

maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Woo v. Home Loan Grp., L.P.*, No. 07-CV-202 H(POR), 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008). Courts have also considered "the role taken by the lead plaintiff in [the settlement] process, a factor somewhat unique to the PSLRA." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007). "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

Courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved. *See, e.g.*, *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."). Therefore, courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results. "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'" *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon*, 150 F.3d at 1026-27).

When examined under the applicable criteria, this Settlement is a highly favorable result for the Class. Lead Counsel believes that there are serious questions as to whether a more favorable

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - 9 -

1   monetary result could be attained after summary judgment, trial, and the inevitable post-trial motions

2   and appeals.  *See* Saham Decl., ¶¶87-96.  The Settlement achieves a substantial and certain recovery

3   for the Class where if the action were to proceed to trial, the Class faced the real risk of a smaller

4   recovery or no recovery at all.  As discussed below, an analysis of the relevant factors demonstrates

5   that the Settlement merits this Court's final approval.

6   **V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
           ADEQUATE**

7

8        **A.      The Settlement Enjoys a Presumption of Reasonableness Because It Is
                  the Product of Arm's-Length Settlement Negotiations**

9        The Settlement, which was extensively negotiated between the parties with the substantial

10   assistance of Magistrate Judge Spero, provides a substantial and certain cash benefit to the Class in

11   the amount of $72.5 million.  The Ninth Circuit "put[s] a good deal of stock in the product of an

12   arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez*

13   *v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the Settlement enjoys a presumption of

14   fairness because it is the product of extensive arm's-length negotiations conducted by experienced

15   and capable counsel with a firm understanding of the strengths and weaknesses of their respective

16   client's positions.[6]

17        The settlement negotiations were at all times hard-fought and at arm's length.  During these

18   negotiations, Lead Counsel zealously advanced Lead Plaintiff's positions and was fully prepared to

19   continue to litigate and try the case rather than accept a settlement that was not in the best interest of

20   the Class.  The parties participated in a settlement conference with Magistrate Judge Spero on

21   December 12, 2017, that involved an extensive analysis of the Class' claims and the defenses that

22   would be asserted by Defendants.  Saham Decl., ¶99.  Prior to the settlement conference, both sides

23   provided to Magistrate Judge Spero comprehensive briefing that identified and analyzed key

24   evidence.  *Id.*  With the assistance of Magistrate Judge Spero, the parties spent a full day discussing

25

26   ---

[6]   *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16
27   (N.D. Cal. July 18, 1997) ("the fact that the settlement agreement was reached in arm's length
     negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is
     fair"), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18
28   (N.D. Cal. 1980).

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA         - 10 -

1    the merits and weaknesses of their respective positions.  At the conclusion of the settlement

2    conference, the parties agreed to the Magistrate's proposal to settle the Litigation for $72.5 million in

3    cash.  *Id.*  Courts have recognized that "[t]he assistance of an experienced mediator in the settlement

4    process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-

5    2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector*

6    *Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25-*26 (N.D. Cal. Apr. 29,

7    2011).  Here, Magistrate Judge Spero played a very active role in bringing about this Settlement.

8            The agreement-in-principle was followed by extensive negotiations between the parties

9    regarding the detailed terms of the Settlement, including the scope of the releases, the timing of the

10   funding of the Settlement, and the form and content of the Notice to be sent to the Class.  These facts

11   establish that the Settlement is the result of hard fought arm's-length negotiations and "not the

12   product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for*

13   *Justice*, 688 F.2d at 625.

14           **B.      The Settlement Amount Strongly Supports Approval**

15           The Settlement is certainly an excellent result for the Class.  In fact, based on a

16   comprehensive event study, Lead Plaintiff's damages expert's best estimate of recoverable damages

17   was $296.8 million prior to disaggregation of dismissed claims.  *See* Saham Decl., ¶92.  After a

18   disaggregation analysis was conducted, it was reasonably anticipated that estimated damages, after

19   accounting for other firm-specific causes of the stock price declines, such as the Carnegie Mellon

20   University ("CMU") litigation reserve, could be in the $150 million range.  *Id.*  The $72.5 million

21   Settlement therefore represents approximately 24% to 50% of the best estimate of potential damages

22   caused by the alleged misrepresentations.  *Id.*, ¶7.  This is well above the median percentage of 2.6%

23   for securities class action settlements in 2017.  *See* Stefan Boettrich & Svetlana Starykh, *Recent*

24   *Trends in Securities Class Action Litigation:  2017 Full-Year Review*, at 38, Fig. 29 (NERA Jan.

25   2018).

26           This Settlement also represents a highly favorable recovery in light of the fact that even if

27   Lead Plaintiff successfully advanced the remaining claims to trial, the reaction of a jury to such

28   complex expert testimony is highly unpredictable, and Lead Counsel recognizes the possibility that a

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - 11 -

1   jury could be swayed by experts for the Defendants, and find there were no damages or only a

2   fraction of the amount of damages asserted by Lead Plaintiff.  *See, e.g.*, *In re Warner Commc'ns Sec.*

3   *Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually

4   impossible to predict with any certainty which testimony would be credited, and ultimately, which

5   damages would be found to have been caused by actionable, rather than the myriad nonactionable

6   factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  *See In re Veeco*

7   *Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *30 (S.D.N.Y.

8   Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction to the

9   complex testimony of experts, a reaction which at best is uncertain.").[7]

10       **C.**    **The Strength of Lead Plaintiff's Case When Balanced Against the**
              **Risk, Expense, Complexity, and Likely Duration of Further Litigation**

11                 **Supports Approval of the Settlement**

12           In determining whether the Settlement is fair, reasonable, and adequate, the Court should

13   balance against the continuing risks of litigation, the benefits afforded to the Class, and the

14   immediacy and certainty of a substantial recovery.  *See Officers for Justice*, 688 F.2d at 625; *Girsh v.*

15   *Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Johansson-Dohrmann v. CBR Sys.*, No. 12-cv-1115-

16   MMA (BGS), 2013 U.S. Dist. LEXIS 103863, at *11-*12 (S.D. Cal. July 24, 2013) (citing *Mego*

17   *Fin.*, 213 F.3d at 458).  In other words,

18         "[t]he Court shall consider the vagaries of litigation and compare the significance of
      immediate recovery by way of the compromise to the mere possibility of relief in the

19         future, after protracted and expensive litigation.  In this respect, 'It has been held
      proper to take the bird in hand instead of a prospective flock in the bush.'"

20   *Nat'l Rural*, 221 F.R.D. at 526.

21           In the context of approving class action settlements, courts attempting to balance these

22   factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."

23   *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*

24   *Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977).  This is even more so today in this post-PSLRA

25

26   [7]   *See also In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist.
LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (court granted defendants' judgment as a matter of law on

27   the basis of loss causation, overturning jury verdict and award in plaintiff's favor), *aff'd sub nom.*
*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props.*,

28   116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA    - 12

1  environment amid defendants' constant attempts to push the envelope and contours of the PSLRA.

2  *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions

3  have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  As one court

4  noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-

5  circuited by the heightened pleading standard."  *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368,

6  1377 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d

7  1161 (11th Cir. 2001).

8  　　　　To prove liability under the Exchange Act, Lead Plaintiff must "show that (1) Defendants

9  were responsible for allowing materially false or misleading representations to enter the market, (2)

10  Defendants acted with scienter, (3) Plaintiffs' losses were caused by Defendants' misrepresentations,

11  and (4) Class Representative and the class members suffered damages." *In re Amgen Sec. Litig.*, No.

12  CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *6 (C.D. Cal. Oct. 25, 2016) (citing

13  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  While Lead Plaintiff and its counsel

14  believe that the claims have substantial merit, they recognize that Lead Plaintiff faced numerous

15  risks and uncertainties and were well aware that many other similar actions lose on dispositive

16  motions, at trial, or on appeal.  The Settlement recognizes the risks of complex litigation involving

17  difficult legal and factual issues.  As discussed herein and in the Saham Declaration, the risks of

18  continued litigation when weighed against the substantial and certain recovery for the Class confirms

19  the reasonableness of the Settlement.

20  　　　　　　　　　**1.　　　　The Risks of Proving Liability**

21  　　　　Lead Plaintiff believes that based on the evidence unearthed to date, including witness

22  interviews, the review of over two million pages of documents produced by Defendants and several

23  non-parties, and over a dozen depositions, it had a good case as to liability and would offer

24  compelling evidence that Defendants failed to disclose material facts regarding Marvell's business,

25  operations and prospects, particularly that Marvell reported revenue and earnings during the Class

26  Period that were misleading as a result of undisclosed pull-in and/or concession sales.  Saham Decl.,

27  ¶10.  Lead Plaintiff believes that it would offer compelling evidence at trial of Marvell's undisclosed

28  use of pull-ins, side agreements, and other concessions, and that Defendants knowingly (or at least

1   recklessly) created a misleading impression to the Company's investors during the Class Period.  *Id.*

2   Lead Plaintiff also believes its expert's damages analysis would persuasively demonstrate that

3   Defendants' conduct, which was revealed to the market toward the end of the Class Period, caused

4   injury to Class Members.  *Id.*

5         Nevertheless, Lead Plaintiff faced significant risks on novel and difficult factual and legal

6   questions from the outset of the case.  In fact, the Court's rulings on the motions to dismiss and the

7   motion for class certification substantially narrowed the case.  How a jury (or the Court at summary

8   judgment) would respond to the evidence that there was no restatement of Marvell's financial

9   statements and that the Company's auditor attested to the GAAP-compliance of the Company's

10  financial statements was uncertain and presented a substantial risk that the case could either be

11  dismissed at summary judgment or lost at trial or on appeal.

12        Another difficult issue going forward would be Lead Plaintiff's ability to prove scienter, *i.e.*,

13  that Defendants acted with knowledge of or with recklessness as to the alleged falsity of their

14  statements and omissions.  A defendant's state of mind in a securities case is often the most difficult

15  element of proof and one which is rarely supported by direct evidence such as an admission.  *Amgen*,

16  2016 U.S. Dist. LEXIS 148577, at *7; *see also Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007

17  U.S. Dist. LEXIS 26903, at *17 (E.D. Pa. Apr. 11, 2007) ("Since stockholders normally have 'little

18  more than circumstantial and accretive evidence to establish the requisite scienter,' proving scienter

19  is an 'uncertain and difficult necessity for plaintiffs.'"); *In re Immune Response Sec. Litig.*, 497 F.

20  Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to

21  establish at trial").  Thus, it was quite possible that Lead Plaintiff would procure documentary and

22  testimonial evidence from all Defendants and others with knowledge about the relevant facts, yet not

23  be able to adduce sufficient evidence to satisfy its burden of proof on this issue at trial.

24        While Lead Plaintiff aggressively pursued discovery and believes that it obtained sufficient

25  evidence to support its claims, there was no assurance that Lead Plaintiff would survive Defendants'

26  summary judgment motions.  Even assuming Lead Plaintiff survived the motion(s) for summary

27  judgment, presenting these complex issues to a jury posed significant risks.  Lead Plaintiff could not

28  be certain that a jury would see through the complexity of the underlying facts to the heart of the

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA         - 14 -

1  alleged fraud.  Moreover, the risks of establishing liability posed by complex issues with conflicting

2  testimony, including from experts, and other evidence would be exacerbated by the risks inherent in

3  all shareholder litigation, including the unpredictability of a lengthy and complex jury trial, the risk

4  that witnesses could be unavailable or jurors could react to the evidence in unforeseen ways, the risk

5  that a jury would find that some or all of the alleged misrepresentations were not material, and the

6  risk that the jury could find that Defendants believed in the appropriateness of their actions at the

7  time.

8          **2.**        **The Risks of Proving Loss Causation and Damages**

9        Even if Lead Plaintiff was successful in establishing liability on the alleged

10  misrepresentations, it faced substantial risks in proving loss causation and damages.  *See In re Tyco*

11  *Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation [is] complex and

12  difficult.  Moreover, even if the jury agreed to impose liability, the trial would likely involve a

13  confusing 'battle of the experts' over damages.").  Expert testimony rests on many subjective

14  assertions that a jury could reject as speculative or unreliable.  The reaction of a jury to battling

15  expert testimony is highly unpredictable.  *See, e.g.*, *Amgen*, 2016 U.S. Dist. LEXIS 148577, at *7

16  ("in a 'battle of experts,' the outcome cannot be guaranteed"); *Nguyen v. Radient Pharms. Corp.*,

17  No. SACV-11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving

18  settlement in securities case where "[p]roving and calculating damages required a complex analysis,

19  requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and

20  "[t]he outcome of that analysis is inherently difficult to predict and risky"); *see also In re Oracle*

21  *Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995, at *40-*49 (N.D. Cal. June 16,

22  2009) (granting defendants' motion for summary judgment for failure to demonstrate a fact on the

23  element of loss causation), *aff'd*, 627 F.3d 376 (9th Cir. 2010).

24        Given the dismissal of two of the three legal theories originally asserted by Lead Plaintiff and

25  the fact that the Court shortened the Class Period by one fiscal quarter in its order certifying the

26  Class, Lead Plaintiff faced unique issues relating to the proof of loss causation and damages.  Saham

27  Decl., ¶90.  At class certification, Defendants' expert had argued both that a disaggregation analysis

28  of the CMU litigation reserve may not be possible under the facts and circumstances of this case and

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA     - 15 -

1    that at minimum it would substantially reduce overall damages.  *Id.*  Thus, Lead Plaintiff and the

2    Class faced a real obstacle in proving loss causation and the portion of damages attributable to the

3    remaining claims.  *Id.*[8]

4          After careful consideration of all of these risks, the Settlement is in the best interests of the

5    Class.  Although Lead Counsel believes that the case is meritorious, its experience has taught it that

6    such risks can render the outcome of a trial extremely uncertain.  *See In re Mfrs. Life Ins. Co.*

7    *Premium Litig.*, No. MDL 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998)

8    ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would

9    yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough

10   uncertainty in the mix to support settling the dispute rather than risking no recovery in future

11   proceedings").

12         **3.**    **The Complexity, Expense, and Likely Duration of the**
          **Litigation Justifies the Settlement**

13         The immediacy and certainty of a recovery is another factor for the Court to balance in

14   determining whether the Settlement is fair, adequate, and reasonable.  *See Mego Fin.*, 213 F.3d at

15   459; *Officers for Justice*, 688 F.2d at 626.

16         As noted above, Defendants have demonstrated a commitment to vigorously defend this case

17   and are represented by well-respected and highly capable counsel from Quinn Emanuel and Skadden

18   Arps.  If not for this Settlement, the expense and time of continued litigation would have been

19   substantial.  As the court recognized in *Ikon*:

20         In the absence of a settlement, this matter will likely extend for . . . years longer with
      significant financial expenditures by both defendants and plaintiffs.  This is partly

21         due to the inherently complicated nature of large class actions alleging securities
      fraud: there are literally thousands of shareholders, and any trial on these claims

22         would rely heavily on the development of a paper trial [sic] through numerous public
      and private documents.

23

24   194 F.R.D. at 179.

25   _____

26   [8]   At the class certification hearing, the Court warned Lead Counsel of the consequences if it failed
to disaggregate:  "[I]t will be an unhappy day for you if you come in here with a damage report that

27   ascribes almost no drop to everything else that went wrong and . . . all of the drop to . . . the things
that you have in this case."  ECF No. 203 (October 26, 2017 Hearing Tr.) at 40:20-23; Saham Decl.,

28   ¶90.

1        As the securities claims advanced by Lead Plaintiff involve complex legal and factual issues,

2    extensive additional expert discovery and testimony would be necessary.  After completion of

3    discovery, Defendants' motion(s) for summary judgment would have to be briefed and argued, and

4    the case would have to be prepared for the trial, which was set to begin on March 5, 2018.  The trial

5    itself would have been long, expensive, and uncertain and no matter the outcome, appeals would be

6    virtually assured.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir.

7    2015); *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT (LEAD), 2008 U.S. Dist.

8    LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd and remanded on other grounds*, 2010 U.S. App.

9    LEXIS 14478 (9th Cir. 2010); *BankAtlantic*, 2011 U.S. Dist. LEXIS 48057.  This would add

10   considerably to the expense and duration of the action.

11       There exists no doubt that the Settlement will spare the litigants the significant delay, risk,

12   and expense of continued litigation.  The appellate process could deny the Class any recovery for

13   years, which would further reduce its value.  The $72,500,000 Settlement Amount, at this juncture, is

14   in an immediate and substantial cash recovery, without these considerable risks.  *See Reynolds v.*

15   *Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a

16   great deal more than a dollar ten years from now.").

17       **D.**   **Lead Plaintiff Had Sufficient Information to Determine the Propriety**
           **of Settlement**

18

19       The Settlement comes shortly before the end of the discovery process, dispositive

20   proceedings and trial; therefore, both the knowledge of Lead Counsel and the proceedings

21   themselves have reached a stage where an intelligent evaluation of the strengths and weaknesses of

22   Lead Plaintiff's case and the propriety of settlement could be made.  *See Officers for Justice*, 688

23   F.2d at 625; *Mego Fin.*, 213 F.3d at 458.  As discussed above and in the Saham Declaration, Lead

24   Counsel conducted an extensive investigation of the facts alleged; interviewed (with the assistance of

25   private investigators) numerous witnesses, including former Marvell employees; consulted with and

26   engaged experts on a number of issues, including accounting and damages; fully briefed Defendants'

27   multiple motions to dismiss; and fully briefed and argued Lead Plaintiff's motion for class

28   certification and was well along in their preparation for the March 5, 2018 trial.  Saham Decl., ¶¶85-

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA    - 17 -

96.   In addition, Lead Plaintiff demanded, obtained, and reviewed over two million pages of documents from Defendants and non-parties and took or defended 13 depositions. *Id.*, ¶¶50-76. The parties also participated in extensive negotiations, including an all-day settlement conference where the parties' claims and defenses were fully vetted. *Id.*, ¶¶99-100. Prior to the settlement conference, the parties submitted to Magistrate Judge Spero detailed briefing which further highlighted the factual and legal issues in dispute. *Id.*  As a result, Lead Counsel was able to assess the strengths and weaknesses of the claims asserted and resolve the Litigation on a highly favorable basis for the Class.  *See Amgen*, 2016 U.S. Dist. LEXIS 148577, at *10 ("The more discovery that has been completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'").

### E.   The Risk that Class Certification Could Not Be Maintained Through Trial

Even though the Court granted class certification, Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits.  Based on further discovery completed after the Court ruled on certification, Defendants could have moved to decertify the Class or to shorten the Class Period further.  *See, e.g.*, *Immune Response*, 497 F. Supp. 2d at 1172 (finding risk that defendants would attempt to shorten the class period based on evidence produced during discovery supported settlement).  This factor weighs in favor of approval.

### F.   The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement

As the Ninth Circuit observed in *Rodriquez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  563 F.3d at 965.  Courts have recognized that "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *Nat'l Rural*, 221 F.R.D. at 528.  As courts have recognized, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *Omnivision*, 559 F. Supp. 2d at 1043.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Pac. Enters.*, 47 F.3d at 378.  Lead Counsel, having

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA          - 18 -

carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did prevail against Defendants at trial, has concluded that the Settlement is a highly favorable result for the Class under the circumstances.  Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country.  *See* www.rgrdlaw.com.  Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043; *Amgen*, 2016 U.S. Dist. LEXIS 148577, at *12.

### G.      Reaction of the Class Supports Approval of the Settlement

In evaluating the fairness, reasonableness and adequacy of a settlement, courts consider the reaction of the Class.  *Amgen*, 2016 U.S. Dist. LEXIS 148577, at *12.  Pursuant to this Court's Notice Order, the Court-approved Notice and Proof of Claim were mailed to potential Class Members who could be identified with reasonable effort.[9]  In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire* on January 16, 2018 (*id.*, ¶15), and the Stipulation, Notice Package, and Notice Order were posted to a website dedicated to the Settlement (www.MarvellSecuritiesClassAction.com) on January 5, 2018.  *Id.*, ¶14.  The Notice advised the Class of the terms of the Settlement, the Plan of Allocation, and counsel's request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections and opting out of the Class.  To date, more than 38,000 Notice Packages have been mailed to potential Class Members and nominees.  While the objection deadline – March 27, 2018 – has not yet passed, to date, not a single Class Member has filed an objection to the Settlement, the Plan of Allocation, or counsel's request for an award of attorneys' fees and expenses.[10]

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *Hanlon*,

---

[9]   *See* Sylvester Decl., ¶¶4-11.

[10]   In accordance with the Notice Order, any objections will be addressed by Lead Counsel on or before April 13, 2018.

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA        - 19 -

1   150 F.3d at 1027; *see also Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W (KSC), 2014 U.S. Dist.

2   LEXIS 58800, at *20-*21 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement

3   "presents the most compelling argument favoring settlement").  Of course, "[t]he fact that some class

4   members object to the Settlement does not by itself prevent the court from approving the

5   agreement."  *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).

6       Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and

7   adequate, and therefore deserves this Court's final approval.

8   **VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

9       Lead Plaintiff also seeks approval of the Plan of Allocation.  The Plan of Allocation is set

10   forth in full in the Notice mailed to potential Class Members.

11      Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is

12   governed by the same standards of review applicable to the settlement as a whole – the plan must be

13   fair and reasonable.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Amgen*,

14   2016 U.S. Dist. LEXIS 148577, at *20.  District courts enjoy "broad supervisory powers over the

15   administration of class-action settlements to allocate the proceeds among the claiming class

16   members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken*

17   *Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only

18   have a reasonable, rational basis, particularly if recommended by "experienced and competent" class

19   counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender*

20   *Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992); *see also Nguyen*, 2014 WL 1802293, at *5.

21      The Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund

22   among all Class Members who submit an acceptable Proof of Claim.  The Plan of Allocation was

23   developed by Lead Counsel with the assistance of its damages expert and is "grounded in a formula

24   that will compensate class members for the losses related to their" purchases of Marvell common

25   stock.  *Amgen*, 2016 U.S. Dist. LEXIS 148577, at *22.[11]  Individual claimants' recoveries will

26

---

27   [11]   *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds
     to class members based on the extent of their injuries or the strength of their claims on the merits.");

28   *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *38 (C.D. Cal.
     June 10, 2005) (Concluding as fair, a plan of allocation which "'makes interclass distinctions based

1   depend upon when during the Class Period they bought Marvell stock, and whether and when they

2   sold their shares.  Eligible claimants will recover their proportional "pro rata" amount of the Net

3   Settlement Fund based on their "Recognized Loss," as set forth in the Plan of Allocation.  The

4   Claims Administrator will calculate claimants' Recognized Losses using the transactional

5   information provided by claimants in their claim forms.  Because most securities are held in "street

6   name" by the brokers that buy them on behalf of clients, neither the Claims Administrator nor

7   counsel for the parties have Class Members' transactional data.  As a result, the Plan of Allocation

8   will result in a fair distribution of the available proceeds among Class Members who submit valid

9   claims and therefore should be approved.  There have been no objections to the Plan of Allocation

10  filed by Class Members, it is fair and reasonable, and it should be approved by the Court.

11  **VII.    CONCLUSION**

12        For all the reasons set forth above, in the Saham Declaration, and the entire record, the

13  Settlement and Plan of Allocation warrant this Court's final approval.

14  DATED:  February 27, 2018          Respectfully submitted,

15                           ROBBINS GELLER RUDMAN
                           & DOWD LLP

16                           ELLEN GUSIKOFF STEWART
                         JONAH H. GOLDSTEIN

17                           SCOTT H. SAHAM
                         MATTHEW I. ALPERT

18                           CARISSA J. DOLAN

19

20                                 s/ Scott H. Saham
                             SCOTT H. SAHAM

21

22                           655 West Broadway, Suite 1900
                         San Diego, CA  92101

23                           Telephone:  619/231-1058
                         619/231-7423 (fax)

24

25

26

27

28  upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the
timing of purchases of the securities at issue.'").

1361508_1

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA   - 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff


O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
202/362-2640 (fax)

Additional Counsel for Plaintiff

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION AND MEM OF PTS & AUTHS - 3:15-cv-05447-WHA        - 22 -

1

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 27, 2018.

s/ Scott H. Saham
SCOTT H. SAHAM

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ScottS@rgrdlaw.com

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:15-cv-05447-WHA Luna et al v. Marvell Technology Group, Ltd. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew Isaac Alpert**
  malpert@rgrdlaw.com,FileRoomSD@rgrdlaw.com

- **Ian Edward Browning**
  ian@altolit.com

- **Alyssa Janiece Clover**
  alyssa.clover@skadden.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Carissa Jasmine Dolan**
  cdolan@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Diane M. Doolittle**
  dianedoolittle@quinnemanuel.com,sandramorones@quinnemanuel.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Jonah Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alyssa L. Greenberg**
  alygreenberg@quinnemanuel.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joshua Garrett Hamilton**
  joshua.hamilton@lw.com,shirin.behrooz@lw.com,sandra.sudduth@lw.com,kathryn.bowman@lw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Avi Josefson**
  avi@blbglaw.com

- **Bryan Jacob Ketroser**
  bryan@altolit.com

- **Jason Frank Lake**
  jasonlake@quinnemanuel.com,valerieroddy@quinneemanuel.com,harryolivar@quinnemanuel.com,calendar@quinnemanuel.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **Virginia Faye Milstead**
  virginia.milstead@skadden.com

- **James Hyeoun Ju Moon**
  james.moon@lw.com,james-moon-0323@ecf.pacerpro.com

- **Harry Arthur Olivar , Jr**
  harryolivar@quinnemanuel.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lesley Frank Portnoy**
  lportnoy@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,bmurray@glancylaw.com

- **Valerie Suzanne Roddy**
  valerieroddy@quinnemanuel.com,calendar@quinnemanuel.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com

- **Jason David Russell**
  jrussell@skadden.com,nandi.berglund@skadden.com,dlmlclac@skadden.com,nandi-berglund-
  4699@ecf.pacerpro.com,ljohnsto@skadden.com,jon.powell@skadden.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,hectorm@rgrdlaw.com

- **Bahram Seyedin-Noor**
  bahram@altolit.com,gabriel@altolit.com,mark@altolit.com,bryan@altolit.com

- **Gerald H. Silk**
  jerry@blbglaw.com

- **Ryan Christopher Stevens**
  ryanstevens@quinnemanuel.com

- **John P. Stigi , III**
  jstigi@sheppardmullin.com,mvanterpool@sheppardmullin.com

- **Curtis Victor Trinko**
  ctrinko@gmail.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)