ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
        – and –
ELLEN GUSIKOFF STEWART (144892)
JONAH H. GOLDSTEIN (193777)
SCOTT H. SAHAM (188355)
MATTHEW I. ALPERT (238024)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jonahg@rgrdlaw.com
scotts@rgrdlaw.com
malpert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LUNA, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>       vs.<br><br>MARVELL TECHNOLOGY GROUP, LTD., et al.,<br><br>                                   Defendants. | Case No. 3:15-cv-05447-WHA<br><br>**(Consolidated)**<br><br>CLASS ACTION<br><br>NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:       April 17, 2018<br>TIME:        9:00 a.m.<br>CTRM:      12, 19th Floor<br>JUDGE:     Hon. William Alsup |

1369812_1

1

**TABLE OF CONTENTS**

2
**Page**

3   I.      PRELIMINARY STATEMENT ........................................................................2

4   II.     AWARD OF ATTORNEYS' FEES .............................................................5

5           A.      A Reasonable Percentage of the Fund Recovered Is the Appropriate
                    Method for Awarding Attorneys' Fees in Common Fund Cases ...........5
6
7           B.      The Percentage Fee Supported by the Lead Plaintiff Is Entitled to a
                    Presumption of Reasonableness................................................................7

8           C.      A Percentage Fee of 22% Is Reasonable in This Case ..........................8

9                   1.      The Result Achieved..................................................................8

10                  2.      The Risks of the Litigation and the Novelty and Difficulty of the
                            Questions Presented..................................................................10
11
12                  3.      The Skill Required and the Quality and Efficiency of the Work..............12

13                  4.      The Contingent Nature of the Fee and the Financial Burden
                            Carried by Lead Counsel ..........................................................13
14                  5.      A 22% Fee Award Is Well Within the Market Rate in Similar
                            Complex, Contingent Litigation ..............................................15
15
            D.      Reaction of the Class Supports Approval of the Attorneys' Fees Requested........16
16
            E.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis ........17
17
    III.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
18          NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................18

19  IV.     CONCLUSION...........................................................................................20
20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

Page

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...................................................................................15

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd*, 899 F.2d 21 (11th Cir. 1990).............................................................................9

*Blum v. Stenson*,
   465 U.S. 886 (1984)................................................................................................6, 15

*Booth v. Strategic Realty Trust, Inc.*,
   No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 140723
   (N.D. Cal. Oct. 15, 2015).............................................................................................6

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) .....................................................................................6

*Buccellato v. AT&T Operations, Inc.*,
   No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699
   (N.D. Cal. June 30, 2011) ..........................................................................................18

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .....................................................................................6

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885).....................................................................................................6

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) .....................................................................................11

*City of Pontiac v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517
   (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...................................................................................8

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds*,
   625 F.2d 49 (5th Cir. 1980) .......................................................................................11

*De Mira v. Heartland Emp't Serv.*,
   No. 12-CV-04092 LHK, 2014 U.S. Dist. LEXIS 33685
   (N.D. Cal. Mar. 13, 2014)............................................................................................8

1

2                                                                           **Page**

3

4    *Destefano v. Zynga, Inc.*,
        No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
5        (N.D. Cal. Feb. 11, 2016)............................................................................... *passim*

6    *Glickenhaus & Co. v. Household Int'l, Inc.*,
        787 F.3d 408 (7th Cir. 2015) .................................................................................14
7
     *Goldberger v. Integrated Res., Inc.*,
8        209 F.3d 43 (2d Cir. 2000)......................................................................................7

9    *Goldstein v. MCI WorldCom*,
        340 F.3d 238 (5th Cir. 2003) .................................................................................10
10
     *Gottlieb v. Barry*,
11       43 F.3d 474 (10th Cir. 1994) ...................................................................................6

12   *Harman v. Lyphomed, Inc.*,
        945 F.2d 969 (7th Cir. 1991) ...................................................................................6
13
     *Harris v. Marhoefer*,
14       24 F.3d 16 (9th Cir. 1994) .....................................................................................19

15   *Hensley v. Eckerhart*,
        461 U.S. 424 (1983)................................................................................................8
16
     *In re Alstom SA Sec. Litig.*,
17       741 F. Supp. 2d 469 (S.D.N.Y. 2010)...................................................................14
18
     *In re Amgen Sec. Litig.*,
19       No. CV 7-2536 PSG, 2016 U.S. Dist. LEXIS 148577
         (C.D. Cal. Oct. 25, 2016) ...........................................................................5, 14, 16
20
     *In re Apple Comput. Sec. Litig.*,
21       No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
         (N.D. Cal. Sept. 6, 1991) .......................................................................................15
22
     *In re BankAtlantic Bancorp, Sec. Litig.*,
23       No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
         (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012)............................15
24
     *In re Brocade Sec. Litig.*,
25       No. C 05-02042-CRB, slip op.
         (N.D. Cal. Jan. 26, 2009)........................................................................................18
26

27

28

1

2                                                                                   **Page**

3

4   *In re Cendant Corp. Litig.*,
        264 F.3d 201 (3d Cir. 2001).........................................................................8

5   *In re Diamond Foods, Inc.*,
        No. C 11-05386 WHA, 2014 U.S. Dist. LEXIS 3252
6       (N.D. Cal. Jan. 10, 2014) ......................................................................5, 16

7   *In re ECOtality, Inc. Sec. Litig.*,
        No. 13-cv-03791-SC, 2015 U.S. Dist. LEXIS 114804
8       (N.D. Cal. Aug. 28, 2015) ...........................................................................6

9   *In re Global Crossing Sec. & ERISA Litig.*,
        225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................8
10

11  *In re HealthSouth Corp. Sec. Litig.*,
        No. CV-03-BE-1500-S, 2010 U.S. Dist. LEXIS 146529
12      (N.D. Ala. July 20, 2010).............................................................................8

13  *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
        No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627
14      (C.D. Cal. June 10, 2005) ..........................................................................16

15  *In re JDS Uniphase Corp. Sec. Litig.*,
        No. C-02-1486 CW (EDL), 2007 WL 4788556
16      (N.D. Cal. Nov. 27, 2007) .........................................................................14

17  *In re King Res. Co. Sec. Litig.*,
        420 F. Supp. 610 (D. Colo. 1976)..............................................................10
18

19  *In re M.D.C. Holdings Sec. Litig.*,
        No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
20      (S.D. Cal. Aug. 30, 1990) ..........................................................................15

21  *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) .....................................................................17
22

23  *In re MGM Mirage Sec. Litig.*,
        No. 2:09-cv-01558-GMN-VCF, slip op.
24      (D. Nev. Mar. 1, 2016)...........................................................................5, 16

25  *In re Network Assocs. Sec. Litig.*,
        76 F. Supp. 2d 1017 (N.D. Cal. 1999) .........................................................7
26

27  *In re Omnivision Techs.*,
        559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................8, 18, 19
28

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - iv -

1

2                                                                              **Page**

3

*In re Online DVD-Rental Antitrust Litig.*,
4      779 F.3d 934 (9th Cir. 2015) ..................................................................18

5

*In re Optical Disk Drive Prods. Antitrust Litig.*,
6      No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515
       (N.D. Cal. Dec. 19, 2016) ........................................................................19

7

*In re Oracle Corp. Sec. Litig.*,
8      No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
       (N.D. Cal. June 16, 2009), *aff'd*,
9      627 F.3d 376 (9th Cir. 2010) ....................................................................13

10

*In re Pfizer Sec. Litig.*,
11     No. 4-CV-9866-LTS-HBP, 2014 U.S. Dist. LEXIS 92951
       (S.D.N.Y. July 8, 2014) ...........................................................................14

12

*In re Rite Aid Corp. Sec. Litig.*,
13     146 F. Supp. 2d 706 (E.D. Pa. 2001) .......................................................13

14     *In re Veritas Software Corp. Sec. Litig.*,
       No. C-03-0283 MMC, 2005 U.S. Dist. LEXIS 30880
15     (N.D. Cal. Nov. 15, 2005)........................................................................18

16     *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
       19 F.3d 1291 (9th Cir. 1994) ........................................................ *passim*
17

18     *In re Xcel Energy, Inc.*,
       364 F. Supp. 2d 980 (D. Minn. 2005)......................................................14
19

*Kirchoff v. Flynn*,
20     786 F.2d 320 (7th Cir. 1986) .....................................................................7

21

*Local 703, I.B. of T. Grocery & Food Emps.*
22     *Welfare Fund v. Regions Fin. Corp.*,
       762 F.3d 1248 (11th Cir. 2014) .................................................................7

23

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
24     No. 2:10-CV-00302 MRP, slip op.
       (C.D. Cal. Dec. 5, 2013) ..........................................................................18

25

*Maley v. Del Global Techs. Corp.*,
26     186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................13

27

28

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA        - v

1

2                                                                                         **Page**

3

4      *Miller v. Woodmoor Corp.*,
            No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
5           (D. Colo. Sept. 28, 1978) ...................................................................................11

6      *Missouri v. Jenkins*,
            491 U.S. 274 (1989)...........................................................................................15
7
       *Morrison v. Nat'l Austl. Bank Ltd.*,
8           561 U.S. 247 (2010)...........................................................................................14

9      *Paul, Johnson, Alston & Hunt v. Graulty*,
            886 F.2d 268 (9th Cir. 1989) ....................................................................4, 6, 7, 8
10
       *Powers v. Eichen*,
11          229 F.3d 1249 (9th Cir. 2000) ...............................................................................8

12     *Robbins v. Koger Props.*,
            116 F.3d 1441 (11th Cir. 1997) ...........................................................................15
13
       *Six (6) Mexican Workers v. Ariz. Citrus Growers*,
14          904 F.2d 1301 (9th Cir. 1990) ...............................................................................6

15     *Swedish Hosp. Corp. v. Shalala*,
            1 F.3d 1261 (D.C. Cir. 1993) ..................................................................................6
16
       *Thurber v. Mattel, Inc.*,
17          No. cv-99-10368-MRP, slip op.
            (C.D. Cal. Oct. 1, 2003) ........................................................................................16
18
       *Torrisi v. Tucson Elec. Power Co.*,
19          8 F.3d 1370 (9th Cir. 1993) ................................................................................6, 8

20     *Trustees v. Greenough*,
            105 U.S. 527 (1882)................................................................................................6
21
       *Van Wingerden v. Cadiz, Inc.*,
22          No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS 18800
            (C.D. Cal. Feb. 8, 2017) ........................................................................................13
23
       *Vincent v. Hughes Air West, Inc.*,
24          557 F.2d 759 (9th Cir. 1977) ..................................................................................5

25     *Vizcaino v. Microsoft Corp.*,
            290 F.3d 1043 (9th Cir. 2002) ....................................................................... *passim*
26

27

28

1

2                                                                                      **Page**

3
**STATUTES, RULES AND REGULATIONS**
4
15 U.S.C.
5       §78u-4(a)(6) .........................................................................................................7
6
**SECONDARY AUTHORITIES**
7
Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
8    *Securities Class Action Settlements: 2016 Review and Analysis*
     (Cornerstone Research 2017)..............................................................................3
9
Report of the Third Circuit Task Force,
10   *Court Awarded Attorney Fees*,
        108 F.R.D. 237 (Oct. 8, 1985) ...........................................................................7
11
12   Stefan Boettrich & Svetlana Starykh, *Recent Trends in*
     *Securities Class Action Litigation*: *2017 Full-Year Review*
13   (NERA Jan. 2018)...........................................................................9, 10, 16, 20
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   TO:    ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

2        PLEASE TAKE NOTICE that pursuant to an order of this Court dated December 21, 2017,

3   on April 17, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of

4   the Honorable William Alsup, United States District Judge, at the United States District Court for the

5   Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Lead

6   Counsel will respectfully move for entry of the [Proposed] Order Awarding Attorneys' Fees and

7   Expenses.

8        This motion is based on the following Memorandum in support thereof; the Declaration of

9   Scott H. Saham in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement

10  and Approval of Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and

11  Expenses ("Saham Decl."); the Declaration of Scott H. Saham Filed on Behalf of Robbins Geller

12  Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses

13  ("Robbins Geller Decl."); the Declaration of Toni Inscoe Filed on Behalf of Plumbers and Pipefitters

14  National Pension Fund in Support of Motion for Final Approval of the Settlement and Award of

15  Attorneys' Fees and Expenses ("Inscoe Decl."); the Declaration of Carole K. Sylvester Regarding

16  Notice Dissemination, Publication, Requests for Exclusion Received to Date, Interim Claims

17  Processing, and Estimate of Administration Fees and Expenses ("Sylvester Decl."); the Stipulation

18  of Settlement dated December 19, 2017 (ECF No. 220) ("Stipulation" or "Settlement")[1]; all other

19  pleadings and matters of record; and such additional evidence or argument as may be presented

20  before or at the hearing.

### STATEMENT OF ISSUES TO BE DECIDED

22       Whether the Court should approve Lead Counsel's motion for an award of attorneys' fees

23  and expenses.

---

[1]    Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation.

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA        - 1 -

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      PRELIMINARY STATEMENT**

3            Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel" or "Robbins Geller")

4    has succeeded in recovering $72.5 million in cash for the benefit of the Class.  This immediate,

5    certain and substantial recovery was achieved through Lead Counsel's skill, work, tenacity and

6    effective advocacy.  As compensation for its efforts in achieving this outstanding result, Lead

7    Counsel respectfully applies for an award of attorneys' fees of 22% of the Settlement Amount, plus

8    litigation expenses and charges reasonably and necessarily incurred to prosecute this Litigation in the

9    amount of $496,656.65, plus interest on both amounts at the same rate as that earned on the

10   Settlement Fund.  The fee request is supported by the Lead Plaintiff, an institutional investor which

11   was actively involved in the prosecution and resolution of the Litigation.  *See* Inscoe Decl., ¶6.

12           Lead Counsel obtained this recovery under an extremely accelerated pre-trial schedule which

13   allowed only eight months for the completion of all discovery (fact and expert), as well as trial

14   preparation, a period far shorter than typically seen in complex cases of this magnitude.  After

15   virtually completing pre-trial discovery and substantially preparing this case for trial, Lead Counsel

16   obtained $72.5 million for the Class.  This result is even more extraordinary given the procedural

17   posture of the case.  Judge Whyte dismissed two of the three legal theories and this Court dismissed

18   two of the three individual defendants and shortened the Class Period by nearly 25%.  Defendants

19   credibly argued that as a result of the dismissal of two of the three legal theories, Lead Plaintiff

20   would be unable to disaggregate the cause of the stock price decline at issue.  Given these

21   arguments, proof of loss causation and damages at trial created a substantial risk to any recovery for

22   the Class.  When this risk is combined with the lack of an accounting restatement, the recovery is

23   quite remarkable.

24           The efforts of Lead Counsel, which included reviewing over two million pages of documents,

25   obtaining key admissions during the depositions of 10 defense witnesses, including two chief

26   financial officers, preparing expert reports, preparing pre-trial motions and jury instructions and a

27   detailed evidentiary outline for trial, ultimately resulted in this significant settlement as it was clear

28

1   to the Defendants that Lead Counsel was fully prepared to try this case to a jury on March 5, 2018,

2   or approximately two months from the date that this Settlement was reached.

3       As detailed in the accompanying Saham Declaration and memorandum in support of the

4   Settlement, the efforts of Lead Counsel resulted in an extraordinary recovery of between 24% and

5   50% of the best estimate of recoverable damages or at least 10 times the median recovery in PSLRA

6   cases.  Lead Plaintiff's damages expert's best estimate of overall damages after adjusting for the

7   Court's ruling shortening the Class Period by one fiscal quarter, but before accounting for any

8   necessary disaggregation of the CMU litigation reserve or other firm-specific causes of Marvell's

9   stock price decline at the end of the Class Period, was $296.8 million.  Thus, the $72.5 million

10  recovery is equivalent to 24.4% of Lead Plaintiff's best estimate of aggregate damages before

11  disaggregation.  Although a disaggregation analysis had yet to be proffered by Lead Plaintiff,

12  Defendants' expert had argued both that such an analysis may not be possible under the facts and

13  circumstances of this case and that, at a minimum, it would substantially reduce overall damages.

14  ECF No. 180-2 (Gompers Report).  At the class certification hearing, the Court concurred, stating

15  that "it will be an unhappy day for you if you come in here with a damage report that ascribes almost

16  no drop to everything else that went wrong and . . . all of the drop to . . . the things that you have in

17  this case."  ECF No. 203 at 40.  Thus, after a disaggregation analysis was completed and proffered

18  by Lead Plaintiff's damages expert, it was expected that estimated aggregate damages, after

19  accounting for other firm-specific causes of the three declines at issue, including the CMU litigation

20  reserve, could be in the $150 million range.  Saham Decl., ¶92.

21      Accordingly, the $72.5 million settlement is estimated by Lead Plaintiff's damages expert to

22  be in the range of 24%-50% of his best estimate of aggregate damages.  In contrast, Defendants

23  repeatedly asserted that a disaggregation analysis was not possible given Judge Whyte's dismissal of

24  the previously alleged claims regarding the CMU litigation reserve.  In any event, under any

25  analysis, the $72.5 million recovery far exceeds the median or bench mark recovery in PSLRA cases

26  of only 2.5%.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action*

27  *Settlements:  2016 Review and Analysis*, at 11, Fig. 10 (Cornerstone Research 2017), available at

28  https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA   - 3 -

1   Review-and-Analysis (noting that according to a recent Cornerstone Research Study, the median

2   recovery of estimated damages for §10(b) claims that settled between 1996 and 2016 was 2.5%).

3       Lead Counsel faced these risks by devoting the necessary resources to successfully litigate

4   this action, which was extremely hard-fought and arduous, as evidenced by the more than 13,400

5   hours that Lead Counsel dedicated to its prosecution. *See* Ex. B to the Robbins Geller Decl. for a

6   breakdown of the hours by category that Robbins Geller professionals devoted to the Litigation.

7   Among many other things, Lead Counsel:  (i) conducted a thorough pre-filing investigation; (ii)

8   successfully overcame, in part, Defendants' numerous motions to dismiss Lead Plaintiff's claims;

9   (iii) propounded extensive discovery upon Defendants and non-parties concerning the allegations

10  upheld by the Court, including requests for the production of documents, interrogatories, requests for

11  admission and non-party subpoenas; (iv) conducted numerous meet-and-confers and moved to

12  compel discovery; (v) reviewed and analyzed the electronic equivalent of over two million pages of

13  documents produced by Defendants and third parties; (vi) briefed and obtained class certification

14  over Defendants' vigorous opposition; (vii) took or defended 13 depositions; (viii) retained and

15  consulted with experts in the fields of accounting and damages; (ix) began preparing for the March

16  5, 2018 trial of the action; and (x) prepared for and attended an in-person settlement conference with

17  Magistrate Judge Spero. Saham Decl., ¶¶5, 33-85.[2]  Lead Counsel undertook this representation on a

18  contingent fee basis, and no payment has been made to Lead Counsel to date for its services or for

19  the significant litigation expenses required to bring this case to a successful conclusion.

20      It is against this backdrop that the undersigned Lead Counsel – with the express endorsement

21  of Lead Plaintiff[3] – respectfully requests an award of attorneys' fees of 22% of the Settlement

22  Amount.  The requested fee is less than the Ninth Circuit's 25% "benchmark" fee in similar actions,

23  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989), and recent trial court

---

24  [2]   Submitted herewith in support of final approval of the proposed Settlement is the Notice of
25  Motion and Motion for Final Approval of Class Action Settlement and Approval of Plan of
    Allocation and Memorandum of Points and Authorities in Support Thereof ("Settlement Brief").  In
26  addition, the Court is respectfully referred to the Saham Declaration for a more detailed description
    of the history of the Litigation, the claims asserted, the investigation undertaken, the Settlement
27  negotiation, and the substantial litigation risks undertaken.

28  [3]   *See* Inscoe Decl., ¶6.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA        - 4 -

1    decisions in this Circuit and nationwide.  *See, e.g.*, *In re Amgen Sec. Litig.*, No. CV 7-2536 PSG

2    (PLAx), 2016 U.S. Dist. LEXIS 148577, at *25 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95

3    million settlement, plus expenses); *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-VCF,

4    slip op. at 1 (D. Nev. Mar. 1, 2016), *aff'd*, No. 16-15534, ECF No. 63-1 (9th Cir. Sept. 15, 2017)

5    (awarding 25% of $75 million settlement, plus expenses).  *See also* Exhibit A hereto.  The fee is also

6    less, in absolute dollar terms, than the fee awarded by this Court in *In re Diamond Foods, Inc.*, No. C

7    11-05386 WHA, 2014 U.S. Dist. LEXIS 3252, at *13 (N.D. Cal. Jan. 10, 2014), a case in which

8    there was an accounting restatement and counsel had not been required to prepare for trial while

9    simultaneously conducting fact and expert discovery.  Moreover, the settlement consideration in

10   *Diamond Foods* was primarily non-cash, and settled at a far earlier litigation stage than this one.

11        For the reasons set forth herein, as well as in the Settlement Brief and Saham Declaration,

12   Lead Counsel respectfully requests that the Court approve its application for attorneys' fees and

13   litigation expenses.

14   **II.    AWARD OF ATTORNEYS' FEES**

15        **A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
             Method for Awarding Attorneys' Fees in Common Fund Cases**
16

17        For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks a

18   reasonable percentage of the fund recovered as attorneys' fees.  The percentage method of awarding

19   fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases

20   in this Circuit and throughout the United States.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

21   1047 (9th Cir. 2002).

22        It has long been recognized that "a private plaintiff, or his attorney, whose efforts create,

23   discover, increase or preserve a fund to which others also have a claim is entitled to recover from the

24   fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.*, 557

25   F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that

26   "those who benefit from the creation of the fund should share the wealth with the lawyers whose

27   skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300

28   (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is firmly rooted in

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA         - 5 -

1   American case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking*

2   *Co. v. Pettus*, 113 U.S. 116 (1885).[4]

3          The Supreme Court recognized in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), that under

4   the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on

5   the class."  While the district court has discretion to award fees in common fund cases based on

6   either the so-called lodestar/multiplier method or the percentage-of-the-fund method (*WPPSS*, 19

7   F.3d at 1296), the Ninth Circuit has expressly and consistently approved the use of the percentage

8   method in common fund cases.  *Paul, Johnson*, 886 F.2d at 272; *Six (6) Mexican Workers v. Ariz.*

9   *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

10  1370, 1376-77 (9th Cir. 1993); *Vizcaino*, 290 F.3d at 1050 ("the primary basis of the fee award

11  remains the percentage method"); *see Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-04921-JST,

12  2015 U.S. Dist. LEXIS 140723, at *23 (N.D. Cal. Oct. 15, 2015) ("'Because the benefit to the class

13  is easily quantified in common-fund settlements,' the Ninth Circuit permits district courts 'to award

14  attorneys a percentage of the common fund in lieu of the often more time-consuming task of

15  calculating the lodestar.'"); *In re ECOtality, Inc. Sec. Litig.*, No. 13-cv-03791-SC, 2015 U.S. Dist.

16  LEXIS 114804, at *11-*12 (N.D. Cal. Aug. 28, 2015).  And the supporting authority for the

17  percentage method in other circuits is overwhelming.[5]

18

---

19  [4]   In *Paul, Johnson*, the Ninth Circuit explained the principle underlying percentage fee awards in
20  common fund cases:

     > Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*,
21   > 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is
     > allowed an ***extra*** reward, beyond that which he has arranged with his client, so that
22   > he might share the wealth of those upon whom he has conferred a benefit.  The
     > amount of such a reward is that which is deemed "reasonable" under the
23   > circumstances.

24  886 F.2d at 271 (emphasis in original).  Citations are omitted throughout unless otherwise indicated.

25  [5]   Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys'
     fees in common fund cases.  Indeed, two circuits have mandated use of the percentage method in
26  common fund cases.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I*
     *Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  And circuit courts and
27  commentators in four additional circuits have expressly approved the use of the percentage method.
     *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454
28  (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a
     percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969,

---

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 6 -

1    Since *Paul, Johnson* and its progeny, district courts in the Ninth Circuit have predominantly

2    used the percentage method in awarding fees in common fund representative actions.  The rationale

3    for compensating counsel in common fund cases on a percentage basis is sound.  First, it is

4    consistent with the practice in the private marketplace of contingent fee attorneys being customarily

5    compensated by a percentage of the recovery.  Second, it more closely aligns the lawyers' interest in

6    being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the

7    shortest amount of time.[6]  Finally, a percentage fee is contemplated by the text of the PSLRA, which

8    states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class

9    shall not exceed a reasonable percentage of the amount" recovered.  15 U.S.C. §78u-4(a)(6).

10   **B.      The Percentage Fee Supported by the Lead Plaintiff Is Entitled to a
             Presumption of Reasonableness**

11       In enacting the PSLRA, Congress intended to encourage investors with substantial financial

12   stakes in the litigation (like Lead Plaintiff here) to serve as lead plaintiffs and play an active role in

13   supervising and directing the litigation, including selecting and monitoring class counsel.  *See Local*

14   *703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260

15   (11th Cir. 2014); *see also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal.

16   1999).  Congress believed that institutions with significant financial stakes in the outcome of

17   securities class actions would be in the best position to monitor the ongoing prosecution of the

18   litigation, select counsel and to assess the reasonableness of counsel's fee request.  Accordingly, fees

19   negotiated between a properly selected PSLRA lead plaintiff and its counsel should be accorded a

20

21   975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the
     Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

22   [6]   As the court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), stated:

23           The contingent fee uses private incentives rather than careful monitoring to
24       align the interests of lawyer and client. The lawyer gains only to the extent his client
         gains. . . .  The unscrupulous lawyer paid by the hour may be willing to settle for a
25       lower recovery coupled with a payment for more hours. Contingent fees eliminate
         this incentive and also ensure a reasonable proportion between the recovery and the
26       fees assessed to defendants. . . .

27           At the same time as it automatically aligns interests of lawyer and client,
         rewards exceptional success, and penalizes failure, the contingent fee automatically
28       handles compensation for the uncertainty of litigation.

1    presumption of reasonableness.  *See In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S,

2    2010 U.S. Dist. LEXIS 146529, at *9-*10 (N.D. Ala. July 20, 2010) ("This involvement of

3    sophisticated lead plaintiffs, such as those in this case, in negotiating and thus exercising control

4    over fees represents one of the biggest reforms enacted by Congress in [the] PSLRA.").[7]  Here, the

5    institutional Lead Plaintiff supports the requested fee.  *See* Inscoe Decl., ¶6.  Accordingly, the

6    requested fee is entitled to a presumption of reasonableness.

7    ### C.    A Percentage Fee of 22% Is Reasonable in This Case

8         In *Paul, Johnson*, 886 F.2d at 272, the Ninth Circuit established 25% of a common fund as

9    the "benchmark" award for attorneys' fees.  *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25%

10   benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same).  The guiding principle

11   in this Circuit is that a fee award be "'reasonable under the circumstances.'"  *WPPSS*, 19 F.3d at

12   1296 (emphasis omitted).  "The Ninth Circuit has approved a number of factors which may be

13   relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the

14   skill required and the quality of work; (4) the contingent nature of the fee and the financial burden

15   carried by the plaintiffs; and (5) awards made in similar cases."  *De Mira v. Heartland Emp't Serv.*,

16   No. 12-CV-04092 LHK, 2014 U.S. Dist. LEXIS 33685, at *3-*4 (N.D. Cal. Mar. 13, 2014);

17   *Vizcaino*, 290 F.3d at 1048; *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

18   Each factor supports the 22% fee award that Lead Counsel requests in this case.

19   ### 1.    The Result Achieved

20        Courts have consistently recognized that the result achieved is a major factor to be

21   considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical

22   factor is the degree of success obtained"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016

23

---

24   [7]    *See also City of Pontiac v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist.
     LEXIS 64517, at *12 (S.D.N.Y. May 9, 2014) ("A settlement reached 'under the supervision and

25   with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater
     presumption of reasonableness.'"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir.

26   2015).  Such a presumption helps "ensure that the lead plaintiff, not the court, functions as the
     class's primary agent vis-à-vis its lawyers."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir.

27   2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class
     action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer

28   agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable.").

U.S. Dist. LEXIS 17196, at *57-*58 (N.D. Cal. Feb. 11, 2016) ("The overall result and benefit to the class from the litigation is the most important factor in granting a fee award."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Here, a substantial and certain recovery of $72.5 million in cash has been obtained through the efforts of Lead Counsel in the face of substantial risk and determined opposition and, significantly, without the assistance of any regulatory or governmental agency.  The magnitude of this Settlement is, in fact, remarkable considering that two of the three individual defendants were dismissed from the case, two of Lead Plaintiff's three theories of liability were dismissed, and Defendants had mounted a vigorous challenge to class certification, seeking to further narrow the case by attempting to rebut the presumption of reliance.  The Court shortened Lead Plaintiff's asserted Class Period by one fiscal quarter, or approximately 25%, further limiting the Class' potential recovery.  Assuming that Lead Counsel was able to prevail on every viable claim at trial, the $72.5 million Settlement represents between 24% and 50% of the best estimate of classwide damages.  Saham Decl., ¶¶7, 92.  After adjusting for the Court's ruling shortening the Class Period by one fiscal quarter, but before accounting for any necessary disaggregation of the CMU litigation reserve or other firm-specific cause, Lead Plaintiff's damages expert's best estimate of overall damages was $296.8 million.  Saham Decl., ¶92.  The $72.5 million Settlement represents approximately 24% of that amount, far exceeding the median ratio of settlement to investor loss of 2.6% for cases with investor losses between $200 and $399 million reached between 1996-2017.  2017 NERA Study at 37, Fig. 28.  A yet to be proffered disaggregation analysis could have further reduced recoverable damages to the $150 million range.  The $72.5 million recovery is also significantly higher than the $7.33 million median settlement value in securities cases over the last three years and more than eight times the median settlement between 2008 and 2017.  *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: *2017 Full-Year Review* at 30, Fig. 23 (NERA Jan. 2018) ("2017 NERA Study").  The $72.5 million Settlement is an outstanding result in this case.

This factor overwhelmingly supports the requested 22% fee.  Despite challenging obstacles to recovery, Lead Counsel secured a substantial and certain benefit for the Class such that Class Members will receive compensation for their losses in Marvell common stock now, avoiding the expense, delay and uncertainty of continued litigation.

**2.      The Risks of the Litigation and the Novelty and Difficulty of the Questions Presented**

Numerous cases have recognized that risk as well as the novelty and difficulty of the issues presented are important factors in determining a fee award.  *E.g.*, *Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.  *Id.* at 1300.  As the court aptly observed in *In re King Res. Co. Sec. Litig.*:

> The litigation also involved unique and substantial issues of law in the technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages. . . .
>
> *        *        *
>
> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation.  The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

420 F. Supp. 610, 632, 636-37 (D. Colo. 1976); *see also Zynga*, 2016 U.S. Dist. LEXIS 17196, at *60 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

Substantial risks and uncertainties in this type of litigation, and in this case in particular, made it far from certain that a recovery, let alone $72.5 million in cash, would ultimately be obtained.  *See* Saham Decl., ¶¶86-96; Settlement Brief at V.C. at 12-15.  The application of the PSLRA to this Litigation posed significant risks to Lead Plaintiff from the outset, especially with Defendants' motions to dismiss.  In fact, after Congress passed the PSLRA, courts in this Circuit and across the country have increasingly dismissed cases at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's heightened pleading standards.  *See* 2017 NERA Study at 22, Fig. 17.  The risk of no recovery (and hence no fee) is high and has increased significantly.  *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 241 (5th Cir. 2003) (affirming

1   dismissal of securities fraud action against defendants Bernard Ebbers and WorldCom even though

2   Ebbers was later convicted criminally).[8]

3        Lead Plaintiff and Lead Counsel faced significant risks on novel and difficult factual and

4   legal questions from the outset.  In fact, the risks posed by the PSLRA materialized in this case.  The

5   Court substantially narrowed the case based on unique factual and legal questions presented by

6   Defendants in two separate motions to dismiss, which amplified the risks as the case moved forward

7   toward summary judgment, trial and any appeal.  Defendants challenged the factual and legal

8   elements of Lead Plaintiff's pull-in claims and had articulated numerous defenses to Lead Plaintiff's

9   allegations, such as the lack of an accounting restatement and Deloitte's failure to find a material

10  revenue recognition violation.  Saham Decl., ¶89.  How a jury (or the Court at summary judgment)

11  would respond to these arguments was far from certain and presented a substantial risk that the case

12  would either be dismissed at summary judgment or lost entirely at trial.

13       Moreover, significant issues regarding loss causation and damages remained to be

14  adjudicated.  *Id.*, ¶90.  The elimination of two of the three legal theories originally asserted and the

15  shortened Class Period resulted in unique issues relating to the proof of loss causation and damages.

16  *Id.*  As a result of the dismissal of the CMU litigation reserve allegations, the amount of damages

17  attributable to this dismissed claim was still unadjudicated.  *Id.*, ¶91.  Also unresolved was the

18  possible apportionment of liability to the dismissed defendants and non-defendant Dai.  *Id.*, ¶93.  If

19  Lead Plaintiff could not prove that Defendants "knowingly" violated the securities laws, Defendants

20  would likely argue that the dismissed defendants and Dai were proportionately liable for the Class'

21  damages, reducing the level of damages that Lead Plaintiff could seek from Defendants.  *Id.*

22       On top of these risks, Defendants have adamantly denied liability, and asserted affirmative

23  defenses to Lead Plaintiff's claims.  *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir.

24

---

25  [8]   Even before the passage of the PSLRA, courts had noted that securities litigation "by its very
    nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D.
26  Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980); *see also Miller v. Woodmoor
    Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-*12 (D. Colo. Sept. 28, 1978) ("The
27  benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty
    of the case. . . . Despite years of litigation, the area of securities law has gained little predictability.
28  There are few 'routine' or 'simple' securities actions.").

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 11 -

1    2004) (upholding the district court's finding of risk based on defendant's belief that it had a strong

2    case on the merits).  There is no question that absent settlement, Lead Counsel in this case faced the

3    substantial risk of no recovery.  This factor further supports the requested fee.

4                    **3.        The Skill Required and the Quality and Efficiency of the Work**

5            The "'prosecution and management of a complex national class action requires unique legal

6    skills and abilities.'"  *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *58-*59.  These unique skills were

7    called upon here and support the requested fee.  From the outset, Lead Counsel engaged in a

8    concerted effort to obtain the maximum recovery for the Class.  This case required a determined

9    investigation and the skill to respond to a host of legal and factual defenses raised by Defendants.

10   Lead Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA and

11   Defendants' efforts to limit discovery, it would develop evidence to support a convincing case.

12   Indeed, Lead Counsel's expert examination of witnesses at deposition as well as its efforts in

13   reviewing, synthesizing and presenting a strong evidentiary-based settlement conference statement

14   contributed significantly to the result achieved.  Moreover, given the short period of time between

15   resolution of the motion to dismiss and trial, Lead Counsel was required to prepare for trial while

16   simultaneously conducting pre-trial discovery and to this end dedicated two partners, Scott Saham

17   and Jonah Goldstein, who previously served as Assistant United States Attorneys, and who both

18   have substantial trial experience, to the case nearly full-time.  *See* Saham Decl., ¶97 and Exs. A and

19   H of Robbins Geller Decl.

20           Lead Counsel is a nationally recognized leader in the fields of securities class actions and

21   complex litigation.  *See* Exhibit H to Robbins Geller Decl.  The recovery obtained for the Class is

22   the direct result of Lead Counsel's expertise and the significant efforts of its highly skilled and

23   specialized attorneys.  *See* www.rgrdlaw.com.  Lead Counsel's reputation for zealously carrying a

24   meritorious case through to the trial and appellate levels, as well as its demonstrable ability to

25   vigorously develop the evidence in this Litigation, enabled it to negotiate the favorable recovery for

26   the benefit of the Class.  Unlike those cases where plaintiffs' counsel are able to "free ride" on the

27   work of others (such as the SEC, DOJ or other governmental agency), here Lead Counsel itself

28   developed and prosecuted the case against Defendants.  Courts have regularly recognized that the

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA        - 12 -

efforts of plaintiffs' counsel in achieving a favorable settlement should be accorded greater weight when achieved without the benefit of a governmental investigation.[9]

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *59.  Here, Lead Counsel was opposed by very skilled and highly respected counsel from Quinn, Emanuel, Urquhart & Sullivan, LLP and Skadden, Arps, Slate, Meagher & Flom, LLP, law firms with well-deserved reputations for vigorous advocacy defending complex civil cases.  In the face of this formidable opposition, Lead Counsel was still able to develop its case so as to persuade Defendants to settle for a substantial sum.  This factor supports the requested fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299.  Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of non-payment in common fund cases." *Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS 18800, at *35 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  For example, in *In re*

---

[9]   *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in awarding 25% of a $193 million settlement fund, the court noted the skill and efficiency of plaintiffs' counsel and outstanding results "in a litigation that was far ahead of public agencies like the [SEC] and the United States Department of Justice, which long after the institution of this litigation awakened to the concerns that plaintiffs' counsel first identified"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action . . . . Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by themselves, expending substantial time and effort.").

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA                - 13

1    *Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16,

2    2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Lead Counsel prosecuted, the court granted

3    summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over

4    $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately

5    $40 million.  In another PSLRA case, after a lengthy trial involving securities claims against JDS

6    Uniphase Corporation, the jury reached a verdict in defendants' favor.  *See In re JDS Uniphase*

7    *Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007); *see also*

8    *In re Pfizer Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 U.S. Dist. LEXIS 92951 (S.D.N.Y. July 8,

9    2014) (dismissing ten-year-old litigation on a *Daubert* ruling just before trial, after class prevailed on

10   summary judgment).

11       Similarly, even the most promising multi-hundred million dollar case can be eviscerated by a

12   sudden change in the law after years of litigation.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp.

13   2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs'

14   damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court

15   precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).  As the court in *Xcel*

16   recognized, "[p]recedent is replete with situations in which attorneys representing a class have

17   devoted substantial resources in terms of time and advanced costs yet have lost the case despite their

18   advocacy."  *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Plaintiffs who

19   defeat summary judgment and succeed at trial may even find their judgment overturned on appeal or

20   on a post-trial motion.  "[S]ettlement eliminates the risk that the jury might award less than the

21   amount of the settlement or nothing at all to the class."  *Amgen*, 2016 U.S. Dist. LEXIS 148577, at

22   *7-*8.[10]

23   _____

24   [10]   The risk of a successful verdict being reversed on appeal is not merely academic as a securities class action tried by Robbins Geller attorneys obtained a verdict in favor of the plaintiff class seven years after the case was filed, had judgment entered 11 years after the case was filed, and then had a

25   major portion of the verdict reversed 13 years after the case was filed.  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015).  The case was finally settled on the day a second

26   trial was scheduled to begin – 14 years after the case was filed – ultimately bringing a successful resolution of the case to class members.  Clearly, prevailing at trial often does not result in an

27   immediate cash payment to the victimized class members: any appeal would create the risk of reversal, in which case the Class would receive nothing after having prevailed at trial.  *See also JDS*

28   *Uniphase*, 2007 WL 4788556 (after a lengthy trial, jury returned a verdict against plaintiffs and the

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 14 -

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously and successfully prosecute this action for the Class' benefit.  *See* Exhibits A-C to Robbins Geller Decl.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5. A 22% Fee Award Is Well Within the Market Rate in Similar Complex, Contingent Litigation

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for services in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989); *see also Vizcaino*, 290 F.3d at 1050 ("[I]n most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").  If this were a non-representative action, the customary fee arrangement would be contingent on a percentage basis and in the range of 30% to 40% of the recovery.  *See Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

---

action was dismissed).  Further, a successful jury verdict does not eliminate the risk to the class.  *See In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporation); *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law on the basis of loss causation and overturning jury verdict and award in plaintiff's favor), *aff'd*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 15 -

1    Courts look to fees awarded in comparable cases to determine if the requested fee is

2    reasonable. *Vizcaino*, 290 F.3d at 1050 n.4.  The requested 22% fee is reasonable when compared to

3    recent fees awarded within the Ninth Circuit in other comparable complex cases:  *See, e.g.*, *Amgen*,

4    2016 U.S. Dist. LEXIS 148577, at *25 (awarding 25% fee plus expenses in $95 million settlement);

5    *Thurber v. Mattel, Inc.*, No. cv-99-10368-MRP (CWx), slip op. at 2 (C.D. Cal. Oct. 1, 2003)

6    (awarding fee equal to 27% of $122 million recovery, plus expenses); *MGM*, slip op. at 1 (awarding

7    fees of 25% of $75 million recovery, plus expenses); *Vizcaino*, 290 F.3d at 1050 (awarding 28% fee

8    of $96.8 million settlement).

9    The requested fee is also less than the median fee award for securities cases based on a recent

10   analysis of fee awards conducted by NERA.  Using data from securities class actions from 1996

11   through 2011, the study found that for settlements between $25 million and $100 million, where this

12   Settlement falls, the median fee award was 26.8% of the settlement amount.  And for settlements

13   reached between 2012 and 2017 in the same range of recovery, the median fee award was 25%.  *See*

14   2017 NERA Study at 42, Fig. 33.  This factor supports the requested fee.

15   In *Diamond Foods*, another recent securities class action, this Court awarded a fee of $17.33

16   million which was equal to 14% of the $123.8 million primarily non-cash settlement.  Here, the 22%

17   fee sought would actually result in a fee nearly $1.4 million less than that awarded in *Diamond*

18   *Foods*.  Moreover, unlike in *Diamond Foods*, Lead Counsel here litigated this case to within two

19   months of trial, was not aided by a restatement of the company's financial statements, and obtained

20   an all cash $72.5 million recovery that was between 24% and 50% of the best estimate of overall

21   damages.  In contrast, the *Diamond Foods* recovery was primarily non-cash and settled at an earlier

22   stage of the proceedings.  Given that both the risk assumed in taking this difficult case to the brink of

23   trial and the result obtained positively distinguish this case from *Diamond Foods*, the requested fee

24   is warranted.

25   **D.      Reaction of the Class Supports Approval of the Attorneys' Fees
             Requested**

26

27   Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

28   consider the reaction of the class when deciding whether to award the requested fee.  *In re Heritage*

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 16 -

1   *Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS

2   13627, at *48 (C.D. Cal. June 10, 2005) ("The presence or absence of objections . . . is also a factor

3   in determining the proper fee award.").

4          To date, over 38,000 copies of the Notice of Proposed Settlement of Class Action ("Notice")

5   and the Proof of Claim and Release form ("Proof of Claim" and, together with the Notice, the

6   "Notice Package") were mailed to potential Class Members and nominees.  *See* Sylvester Decl., ¶11.

7   The Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*

8   on January 16, 2018.  *Id.*, ¶15.  In addition, the Stipulation, the Notice Package and Order

9   Preliminarily Approving Settlement and Providing for Notice (ECF No. 222) ("Notice Order") were

10  posted to a website dedicated to the Settlement (www.MarvellSecuritiesClassAction.com) (*id.*, ¶14).

11  Class Members were informed in the Notice that Lead Counsel would move the Court for an award

12  of attorneys' fees of no more than 22% of the Settlement Amount and for expenses in an amount not

13  to exceed $625,000, plus interest thereon.  Sylvester Decl., Ex. A (Notice) at 2, 7.  Class Members

14  were also advised of their right to object to the fee and expense request, and that such objections are

15  required to be filed with the Court no later than March 27, 2018.  As of the date of this

16  memorandum, no Class Members have objected to counsel's fee and expense request or to the

17  Settlement.  The lack of objection is compelling evidence that the requested fees and expenses are

18  reasonable.  *See, e.g.*, *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *47 ("By any standard, the lack of

19  objection of the Class Members favors approval of the Settlement.").  Moreover, a small number of

20  objections do not stand in the way of approval of a reasonable fee.  *See In re Mego Fin. Corp. Sec.*

21  *Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).[11]

22          **E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check**
                    **Analysis**

23          Although Lead Counsel seeks approval of a fee based on a percentage of the recovery, "[a]s a

24  final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks

25  as a percentage with what their hourly bills would amount to under the lodestar analysis."

26

27  _____

    [11]   If any objections are received, Lead Counsel will address them in a reply brief to be filed on or

28  before April 13, 2018, in accordance with the Court's Notice Order.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 17 -

1   *Omnivision*, 559 F. Supp. 2d at 1048.  In *Vizcaino*, the Ninth Circuit noted that an analysis of the

2   "lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is

3   widely recognized that the lodestar method creates incentives for counsel to expend more hours than

4   may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method

5   does not reward early settlement."   290 F.3d at 1050 n.5.   "The lodestar method requires

6   'multiplying the number of hours the prevailing party reasonably expended on the litigation (as

7   supported by adequate documentation) by a reasonable hourly rate for the region and for the

8   experience of the lawyer.'"   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir.

9   2015).

10          Here, Lead Counsel spent 13,442.10 hours of attorney and paraprofessional time prosecuting

11  this action on the Class' behalf.   Robbins Geller Decl., Exs. A-B.   The resulting lodestar is

12  $6,801,240.50, representing a multiplier of 2.34 for the $15,950,000 requested fee.   *Id.*   Lead

13  Counsel's fee request is certainly reasonable.   In fact, the Ninth Circuit in *Vizcaino* approved a 28%

14  fee that resulted in a 3.65 multiplier.  290 F.3d at 1051-54 (finding multipliers ranged as high as 19.6

15  though most run from 1.0-4.0); *see also Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK,

16  2011 U.S. Dist. LEXIS 85699, at *3-*4 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3);

17  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP (MANx), slip op. at 31-

18  32 (C.D. Cal. Dec. 5, 2013) (awarding $85 million fee representing 2.11 multiplier); *In re Brocade*

19  *Sec. Litig.*, No. C 05-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) (3.5 multiplier); *In re*

20  *Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 U.S. Dist. LEXIS 30880, at *42-*43

21  (N.D. Cal. Nov. 15, 2005) (4.0 multiplier).   The lodestar cross-check supports the requested fee.

22  **III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
     **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**
23
           Lead Counsel also requests $496,656.65 in litigation expenses incurred prosecuting the case.
24
     These expenses are categorized in the Robbins Geller Declaration (Exhibit C) submitted to the Court
25
     herewith.[12]
26

27  ─────────────────
     [12]   The Notice informed Class Members that Lead Counsel would seek expenses not to exceed
28  $625,000 in connection with prosecution of the Litigation.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA          - 18 -

1   The appropriate analysis to apply in deciding which expenses are compensable in a common

2 fund case of this type is whether the particular costs are of the type typically billed by attorneys to

3 paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may

4 recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be

5 charged to a fee paying client.'").  Therefore, it is proper to pay reasonable expenses even though

6 they are greater than taxable costs.  *Id.*; *see also Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys

7 may recover their reasonable expenses that would typically be billed to paying clients in non-

8 contingency matters.").  Since the categories of expenses for which counsel seek payment here are

9 the type of expenses routinely charged to hourly clients and were required to prosecute this

10 Litigation, they should be paid out of the common fund.  *See In re Optical Disk Drive Prods.*

11 *Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515, at *62-*63 (N.D. Cal.

12 Dec. 19, 2016) ("Attorneys who create a common fund for the benefit of a class are entitled to be

13 reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted

14 expenses are reasonable, necessary and directly related to the prosecution of the action.").

15   The largest component of Lead Counsel's expenses is the cost of their experts, who provided

16 valuable assistance, expert reports, and economic analyses.  *See* Robbins Geller Decl., ¶7(e).  As

17 discussed in the Saham Declaration and the Robbins Geller Declaration, each of these experts

18 expended significant time on the case analyzing the facts, drafting detailed reports, assisting in the

19 response to discovery requests and, with respect to Lead Plaintiff's market efficiency expert,

20 preparing and sitting for a deposition.  In addition, Lead Counsel incurred expenses in connection

21 with services performed by an outside investigation firm which assisted Lead Counsel in locating,

22 identifying and interviewing relevant witnesses.  *Id.*

23   Other expenses include the costs of computerized research.  *Id.*, ¶7(g).  These are the charges

24 for computerized factual and legal research services, including LexisNexis, Westlaw, Transunion

25 Acquisition Corp., Thomson Financial, and PACER.  It is standard practice for attorneys to use these

26 services to assist them in researching legal and factual issues.  These services allowed counsel to do

27 online legal research, access Marvell's SEC filings, perform media searches on Marvell, and obtain

28 analysts' reports on Marvell.

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA  - 19 -

1   Lead Counsel was also required to travel in connection with this Litigation and thus incurred

2   the related costs of meals, lodging, and transportation.   This primarily included travel to San

3   Francisco and surrounding areas for court hearings, depositions, meetings and the settlement

4   conference with Magistrate Judge Spero.   Other expenses that were necessarily incurred in

5   prosecuting this Litigation include expenses for photocopying, filing fees, postage and delivery.

6   As a cross-check on the reasonableness of these expenses, they are less than 1% of the

7   Settlement Amount.  This is certainly reasonable when compared to the 2.3% median that NERA

8   found in its 2017 study for cases that settled between 2012 and 2017 in the $25 million to

9   $100 million range. *See* 2017 NERA Study at 42, Fig. 33.

10   There have been no objections by Class Members to this expense request.

11   **IV.   CONCLUSION**

12   Lead Counsel's efforts on behalf of the Class resulted in an outstanding result under any

13   measure.  Based on the foregoing and upon the entire record herein, Lead Counsel respectfully

14   requests that the Court award attorneys' fees in the amount of 22% of the Settlement Amount, plus

15   expenses in the amount of $496,656.65, plus interest on both amounts earned at the same rate and for

16   the same period as that earned on the Settlement Fund until paid.

17   DATED:  February 27, 2018                    Respectfully submitted,

18                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
19                                               ELLEN GUSIKOFF STEWART
                                                 JONAH H. GOLDSTEIN
20                                               SCOTT H. SAHAM
                                                 MATTHEW I. ALPERT
21                                               CARISSA J. DOLAN

22

23                                                    s/ Scott H. Saham
                                               _____
24                                                  SCOTT H. SAHAM

25                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
26                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)

27

28

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA                  - 20 -

1

2  ROBBINS GELLER RUDMAN
     & DOWD LLP
3  SHAWN A. WILLIAMS
   JASON C. DAVIS
4  Post Montgomery Center
   One Montgomery Street, Suite 1800
5  San Francisco, CA  94104
   Telephone:  415/288-4545
6  415/288-4534 (fax)

7  Lead Counsel for Plaintiff

8  O'DONOGHUE & O'DONOGHUE LLP
   LOUIS P. MALONE
9  5301 Wisconsin Avenue, N.W., Suite 800
   Washington, DC  20015
10 Telephone:  202/362-0041
   202/362-2640 (fax)

11

12 Additional Counsel for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1369812_1

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES & EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES THEREOF - 3:15-cv-05447-WHA      - 21 -

1

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2018, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on February 27, 2018.

                                                  s/ Scott H. Saham
                                                  SCOTT H. SAHAM

                                                  ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                  655 West Broadway, Suite 1900
                                                  San Diego, CA  92101-8498
                                                  Telephone:  619/231-1058
                                                  619/231-7423 (fax)

                                                  E-mail:  ScottS@rgrdlaw.com

# Mailing Information for a Case 3:15-cv-05447-WHA Luna et al v. Marvell Technology Group, Ltd. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew Isaac Alpert**
  malpert@rgrdlaw.com,FileRoomSD@rgrdlaw.com

- **Ian Edward Browning**
  ian@altolit.com

- **Alyssa Janiece Clover**
  alyssa.clover@skadden.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Carissa Jasmine Dolan**
  cdolan@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Diane M. Doolittle**
  dianedoolittle@quinnemanuel.com,sandramorones@quinnemanuel.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Jonah Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alyssa L. Greenberg**
  alygreenberg@quinnemanuel.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joshua Garrett Hamilton**
  joshua.hamilton@lw.com,shirin.behrooz@lw.com,sandra.sudduth@lw.com,kathryn.bowman@lw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Avi Josefson**
  avi@blbglaw.com

- **Bryan Jacob Ketroser**
  bryan@altolit.com

- **Jason Frank Lake**
  jasonlake@quinnemanuel.com,valerieroddy@quinneemanuel.com,harryolivar@quinnemanuel.com,calendar@quinnemanuel.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **Virginia Faye Milstead**
  virginia.milstead@skadden.com

- **James Hyeoun Ju Moon**
  james.moon@lw.com,james-moon-0323@ecf.pacerpro.com

- **Harry Arthur Olivar , Jr**
  harryolivar@quinnemanuel.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lesley Frank Portnoy**
  lportnoy@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,bmurray@glancylaw.com

- **Valerie Suzanne Roddy**
  valerieroddy@quinnemanuel.com,calendar@quinnemanuel.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com

- **Jason David Russell**
  jrussell@skadden.com,nandi.berglund@skadden.com,dlmlclac@skadden.com,nandi-berglund-4699@ecf.pacerpro.com,ljohnsto@skadden.com,jon.powell@skadden.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,hectorm@rgrdlaw.com

- **Bahram Seyedin-Noor**
  bahram@altolit.com,gabriel@altolit.com,mark@altolit.com,bryan@altolit.com

- **Gerald H. Silk**
  jerry@blbglaw.com

- **Ryan Christopher Stevens**
  ryanstevens@quinnemanuel.com

- **John P. Stigi , III**
  jstigi@sheppardmullin.com,mvanterpool@sheppardmullin.com

- **Curtis Victor Trinko**
  ctrinko@gmail.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)