IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARVELL TECHNOLOGY GROUP, *et al.*,<br><br>Defendants.<br>_____ / | No. C 15-05447 WHA<br><br>(Consolidated)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND EXPENSES** |

**INTRODUCTION**

In this shareholder class action, lead plaintiff moves for final approval of a proposed settlement agreement. Lead counsel also move for attorney's fees and reimbursement of litigation expenses. Defendants do not oppose. For the reasons explained below, the motion for final approval of class settlement is **GRANTED**. Lead counsel's motion for attorney's fees and expenses is **GRANTED IN PART**.

**STATEMENT**

Prior orders set forth the detailed background of this case (Dkt. Nos. 138, 202). In brief, lead plaintiff Plumbers and Pipefitters National Pension Fund asserted class claims against defendants Marvell Technology Group, Ltd. and its former CEO Sehat Sutardja for violations of

the Securities and Exchange Act based on allegedly fraudulent pull-in sales which caused the price of Marvell common stock to be artificially inflated.

Lead plaintiff filed a consolidated complaint in March 2016, asserting claims against defendants for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Orders granted in part and denied in part defendants' motions to dismiss. A subsequent order certified the following class:

> All persons and entities who purchased or otherwise acquired the common stock of Marvell Technology Group, Ltd. ("Marvell" or the "Company") during the period from February 19, 2015 through December 7, 2015, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are investors who sold all of their shares prior to September 11, 2015, and Defendants, present or former executive officers of Marvell and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)).

A December 2017 order granted lead plaintiff's motion for preliminary approval of a proposed class settlement. The order also approved, as to form and content, a notice concerning the class settlement agreement and final approval hearing (Dkt. Nos. 57, 138, 202, 222).

The claims administrator sent the class notice to 135 potential class members at addresses obtained from the transfer agent for Marvell and sent notices and cover letters requesting cooperation in forwarding the notices to 4,943 brokerages, custodial banks, and other institutions. The administrator also sent electronic copies of the notice to 409 registered electronic filers qualified to submit electronic claims. In addition, the administrator transmitted the notice over the *Business Wire* and caused it to be published in *The Wall Street Journal* and by the Depository Trust Company on the DTS Legal Notice System.

Following this initial mailing to nominal holders, the claims administrator received 17,230 names and addresses of potential class members to whom it has since sent notices. In addition, 15 institutions requested that the claims administrator send a total of 15,345 notices for the institutions to forward directly to their clients. The administrator sent additional communications to those nominees who failed to provide any class member contacts or confirm that they have none to report.

Based on SEC filings obtained by lead counsel, the claims administrator states that 68 institutional investors represent over 90% of the shares purchased during the class period. The

administrator sent notice to each of these 68 investors or to a financial institution known to file claims in securities settlements on behalf of the investor.

To date, the claims administrator has mailed 38,513 notices to potential class members and nominees. Of these, 382 could not be delivered. The claims administrator has since obtained updated addresses for 124 of the undeliverable notices.

As of April 12, the claims administrator had received 1,363 claims from potential class members, with a number of additional claims expected as the May 7 claims deadline approaches. The administrator received no objections to the proposed class settlement or requested attorney's fees and received only four requests to opt out of the class.

This order now considers lead plaintiff's motion for final approval of the proposed class settlement. Lead counsel also move for $15,950,000 in attorney's fees (comprising 22% of the total settlement fund) and seek reimbursement of $496,656.65 in litigation expenses. This order follows briefing from lead plaintiff and lead counsel, as well as oral argument at the fairness hearing.

**ANALYSIS**

**1. FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT.**

Under FRCP 23(e), court approval is required for any settlement agreement that will bind absent class members. When a proposed settlement agreement is presented, the court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal, and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. FRCP 23(e)(1)–(2).

**A. Adequacy of Notice.**

The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). It must also describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980). The undersigned judge previously approved the

form, content, and planned distribution of the class notice (Dkt. No. 222). As described above, the claims administrator has fulfilled the notice plan. This order accordingly finds that notice to class members was adequate.

### B. Fairness, Reasonableness, and Adequacy of Proposed Settlement.

The instant settlement agreement is fair, reasonable, and adequate. Our court of appeals has set forth various factors that a court must balance when making this determination:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). These factors, however, are not exclusive, and a court must consider whether the settlement "taken as a whole" is fair to absent class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The amount of the $72.5 million settlement is reasonable. Lead plaintiff's damages expert estimated damages at $296.8 million prior to disaggregation of the dismissed claims. After disaggregation, estimated damages were in the $150 million range. The recovered settlement is accordingly 24% to 50% of the estimated potential damages in this case.

Prosecuting these claims through trial and subsequent appeals would involve risk, expense, and delay to any potential recovery. At both summary judgment and trial the risks include lead plaintiff's ability to (1) prove scienter and (2) show that Marvell's use of pull-ins gave rise to an actionable claim despite the lack of an accounting restatement and an attestation from the Company's auditor that Marvell's financial statements were GAAP-compliant. The amount that lead plaintiff could recover at trial is also uncertain. Two of the three legal theories originally asserted by lead plaintiff have since been dismissed. Defendants sharply dispute lead plaintiff's ability to prove loss causation and the portion of damages attributable to lead plaintiff's remaining claims. Against these risks, the $72.5 million settlement fund offers an immediate and certain award for the class.

The parties reached the class settlement after substantial motion practice. Lead plaintiff reviewed over two million pages of documents produced by defendants and third parties. The

4

parties engaged in written discovery and lead plaintiff took 10 depositions and defended three depositions. The stage of the litigation and the extent of discovery conducted indicate that lead plaintiff has enough information and familiarity with the case to make an informed decision.

The absence of objections from class members further supports the reasonableness and fairness of the settlement terms. The claims administrator mailed more than 38,000 notices of the proposed settlement and has yet to receive a single objection. Lead plaintiff also supports the settlement.

The plan of allocation of settlement proceeds is also fair and reasonable. Class members who submit an acceptable proof of claim will recover settlement funds depending on when during the class period they bought Marvell stock and whether or when they sold their shares. The claims administrator will calculate the claimant's recognized loss from this transactional information and claimants will recover a pro rata share of the settlement fund based on that loss.

Accordingly, final approval of the proposed class settlement and plan of allocation is **GRANTED**.

**2.  MOTION FOR ATTORNEY'S FEES AND EXPENSES.**

**A.  Attorney's fees.**

Lead counsel seek attorney's fees of $15,950,000 with accrued interest. A district court must ensure that attorney's fees are "fair, adequate, and reasonable," even if the parties have entered into a settlement agreement that provides for those fees. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). In determining such fees, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Lead counsel request that attorney's fees be calculated under the percentage-of-the-fund method. Lead counsel ask for $15,950,000, or 22% of the settlement fund. This is below the 25% benchmark set forth by our court of appeals. *Hanlon*, 150 F.3d at 1029. It is not sufficient, however, to arbitrarily apply a percentage. Rather, the district court must show why the ultimate award is appropriate based on the facts of the case.

The undersigned finds application of the lodestar method is appropriate under the circumstances. This permits an examination of lead counsel's lodestar figure and also allows for an adjustment by an appropriate multiplier "reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011).

Lead counsel spent 13,442.10 hours on this case, resulting in a lodestar of $6,801,240.50. This order finds that the billing rates for lead counsel, as well as the hours expended on the litigation, are reasonable. Accepting this lodestar figure, the $15,950,000 requested fee represents a multiplier of 2.34. This multiplier is too high. For the reasons below, a multiplier of 2.0, and a resulting award of $13,602,481, is appropriate.

The adequate settlement award obtained by lead counsel represents between 24% and 50% of lead plaintiff's estimated classwide damages. No summary judgment motion was filed and the case did not go to trial. Nonetheless, since this action began in 2015, lead counsel spent more than 13,000 hours litigating the case without compensation and with some risk of no fees. Because counsel worked on a contingent-fee basis despite risks of litigation, this weighs in favor of awarding more than the lodestar. So does the skill required and the quality of work performed by lead counsel in this case. Accordingly, lead counsel's motion for attorney's fees is **GRANTED IN PART**. This order awards $13,602,481 in attorney's fees to lead counsel.

### B. Expenses.

Lead counsel also seek to recover from the settlement fund $496,656.65 in litigation expenses. The largest component of these expenses is the cost of lead counsel's experts and investigators. The second largest component is the cost of transportation, hotels and meals. Lead counsel also seeks reimbursement for, among other things, filing costs, photocopies, transcript services, and online legal and financial research. These expenses were a reasonable and necessary part of the litigation, and are of a type customarily billed to a fee-paying client. No class member objected to recovery of these costs. The motion for reimbursement of these costs is **GRANTED**

**CONCLUSION**

Accordingly, it is hereby ordered as follows:

1. The notice of settlement, as well as the manner in which it was sent to class members, fairly and adequately described the proposed class settlement, the manner in which class members could object to or participate in the settlement, and the manner in which class members could opt out of the class; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to class members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. A full and fair opportunity has been afforded to class members to participate in the proceedings convened to determine whether the proposed class settlement should be given final approval. Accordingly, the undersigned hereby determines that all class members who did not exclude themselves from the settlement by filing a timely request for exclusion are bound by this settlement order.

2. The undersigned also finds that the proposed class settlement is fair, reasonable, and adequate as to the class, lead plaintiff, and defendants; that it is the product of good faith, arms-length negotiations between the parties; and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The settlement is therefore approved.

3. Having considered lead counsel's motion for attorney's fees and reimbursement of expenses, the undersigned hereby awards lead counsel attorney's fees of $13,602,481 with interest accrued. Half of this amount shall be paid after the "effective date" as defined in the stipulation of settlement dated December 19, 2017. The other half shall be paid when lead counsel certify that all funds have been properly distributed and the file can be completely closed.

4. Lead counsel shall also receive $496,656.65 as reimbursement for their litigation expenses, to be paid from the settlement fund.

5. By **MAY 11** the parties shall submit a final class list (with names and cities) setting forth the class members bound by the class settlement.

**IT IS SO ORDERED.**

Dated: April 20, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE